# AMENDED AND RESTATED PROMISSORY NOTE

$750,000.00                                                                                                    July 12, 2006
                                                                                                        Jackson, Mississippi

FOR VALUE RECEIVED, **WAREHOUSE 86, LLC** ("Borrower") promises to pay to the order of **STUART M. IRBY** ("Lender") at P.O. Box 1819, Jackson, Mississippi 39205-1819 or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Seven Hundred Fifty Thousand and no/100 Dollars ($750,000.00), together with interest on the unpaid principal balance from the date hereof, at the rate set forth herein.

**Interest Rate.** This Note shall bear interest from date hereof until maturity as follows:

   a.   If payment is made on this Note between the date hereof and March 11, 2007, the interest rate shall be 23% per annum on the outstanding balance of this Note.

   b.   If payment is made on this Note between March 12, 2007 and July 11, 2007, the interest rate shall be 24% per annum on the outstanding balance of this Note.

   c.   If payment is made on this Note after July 12, 2007, the interest rate shall be 25% per annum on the outstanding balance of this Note.

Accrued but unpaid interest shall compound annually.

**Payments.** There are no scheduled payment of principal or interest; however, all payments made hereunder shall be applied first to the accrued and unpaid fees and charges, if any, then to interest, and then to the outstanding principal balance.

**Maturity.** The entire unpaid principal balance, together with all accrued but unpaid interest thereon and all other charges as may become payable hereunder, shall be due and payable in full on July 12, 2008 (the "Maturity Date"), if not sooner paid or accelerated in accordance herewith.

**No Usury.** It is the intention of Borrower and Lender to comply with all usury laws. Interest charged hereunder, however such interest may be characterized or computed, shall not exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable to this Note. If a court determines that the Lender has received interest hereunder in excess of the highest legal rate applicable, the Lender shall promptly refund such excess interest to the Borrower or apply such amount as a prepayment of principal, as the Lender may choose.

- 1 -


EXHIBIT "A"

**Collateral.** This Note is secured by that certain Security Agreement dated July 1, 2006, entered into between Borrower and Lender, as the same may be amended from time to time, (the "Security Agreement") and is entitled to the benefit of all provisions thereof including, without limitation, those relating to security, which grant Lender a first priority security interest in certain personal property and other collateral described in the Security Agreement. The terms, conditions, and other provisions set forth in the Security Agreement are incorporated herein by reference and made a part hereof.

**Default.** This Note shall be in default if any payment due or performance required under this Note or any instrument securing this Note is not paid or performed when due and such payment or performance is not made within ten (10) days of the date notice of such nonpayment or nonperformance is given to Borrower. Upon default by the Borrower, this Note shall become immediately due and payable at the option of the Lender and the Lender or any successor holder may exercise any and all rights and remedies provided for or allowed by the Security Agreement, or any other loan document, or provided for or allowed at law or in equity. Borrower and all guarantors hereby agree to pay on demand all collections costs, including attorneys fees and court costs, as may be reasonably incurred by Lender in the course of attempts to collect any amounts which may be due hereunder and which have not been paid when due strictly in accordance with the terms of this Note and all such amounts shall accrue interest at the rate specified above from the incurred by Lender. All amounts received in payment of this Note shall be first applied to any expenses due from Borrower hereunder, then to accrued interest and finally to the reduction of principal.

**Prepayment Privilege.** This Note may be prepaid in whole or in part at any time and from time to time without fee, premium or penalty. Prepayments shall be applied first to the payment of interest accrued but unpaid on the outstanding principal balance of this Note and the residue thereof, if any, shall be applied to the payment of principal due hereunder in inverse order of their maturity. No partial prepayment shall postpone the due date of any installment of principal or interest due hereunder.

**Waiver of Presentment, Etc..** Presentment, notice, notice of demand, notice for payment, protest and notice of protest, and dishonor are hereby waived by the Borrower.

**No Assignment by Borrower.** The Borrower may not assign its rights and obligations hereunder without prior written consent of the Lender, which consent the Lender may withhold in its discretion.

**Assignment or Transfer by Lender**. The Lender may assign or transfer this Note, either absolute or as collateral security, without the consent of the Borrower. In such event, the transferee shall become the holder of the Note and may exercise all rights of the Lender upon notice to the Borrower.

**Successors and Assigns**. Whenever in this Note reference is made to the Borrower or the Lender, such reference shall be deemed to include, as applicable, a reference to each one's permitted successors and assigns, including any subsequent holder of this Note.

**Binding Effect and Benefits**. This Note shall be binding upon and shall inure to the benefit of the parties and to each party's permitted successors and assigns, heirs, beneficiaries and personal representatives. The Borrower's successors and assigns shall include, without limitation, a receiver, trustee or debtor in possession of or for the Borrower.

**Guaranty**. This Note is guaranteed in full by the Continuing Guaranties executed by Eric Eilertsen, Paul Thomas St. James, Joy Diane St. James, and Ernest K. Strahan, III (collectively the "Guarantors") and dated July 1, 2006.

**Governing Law and Severability**. This Note shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of Mississippi. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

**Jurisdiction**. Borrower hereby waives any right Borrower may have under any applicable law to a trial by jury with respect to any suit or legal action which may be commenced by or against Lender concerning the interpretation, construction, validity, enforcement or performance of this Note, or any other agreement or instrument executed in connection with this Note. In the event any such suit or legal action is commenced by Lender, Borrower hereby expressly agrees, consents and submits to the personal jurisdiction of any state or federal court sitting in Hinds County, Mississippi with respect to such suit or legal action, and Borrower also expressly consents and submits to and agrees that venue in any such suit or legal action is proper in said court and county and Borrower hereby expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue in said court and county. The jurisdiction and venue of the courts consented and submitted to and agreed upon in this paragraph are not exclusive but are cumulative and in addition to the jurisdiction and venue of any other court under any applicable law or in equity.

This Amended and Restated Promissory Note is an amendment, modification, renewal and extension, but not an extinguishment or novation, of that certain Promissory Note dated July 1, 2006, executed by the Borrowers and payable to the order of the Lender, in the original principal amount of $750,000.00.

- 3 -

This Amended and Restated Promissory Note is entitled to the benefits of the Security Agreement dated as of July 1, 2006, by and between the Borrower and Lender, and the Continuing Guaranties entered into in connection therewith on July 1, 2006.

IN WITNESS WHEREOF, the Borrower has signed and delivered this Amended and Restated Promissory Note on the date set forth above.

**BORROWER:**

**WAREHOUSE 86, LLC**

BY: _____ CEO
Eric Eilertsen, CEO

Consented to on this the 10 day of July, 2006, by the **GUARANTORS:**

_____
Eric Eilertsen

_____
Paul Thomas St. James

_____
Joy Diane St. James

_____
Ernest K. Strahan, III

## SECURITY AGREEMENT

THIS SECURITY Agreement is made and entered into on this the 1st day of July, 2006, by and between WAREHOUSE 86, LLC, an Arizona limited liability company ("Borrower") in favor of STUART M. IRBY ("Lender").

FOR AND IN CONSIDERATION of the mutual covenants and agreements contained herein, in order to induce the Lender to extend credit to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and Lender agree as follows:

### SECTION 1. Recitals.

(a) The Borrower is indebted to the Lender pursuant to the terms of a Promissory Note ("Note") dated July 1, 2006, ("Indebtedness") which is due and payable July 1, 2008.

(b) To secure the prompt payment of the Indebtedness, the performance of the Borrower's obligations under the Note and this Agreement, and as a condition precedent to the Lender's extension of credit to the Borrower, the Borrower has agreed to execute and deliver a security agreement in favor of Lender providing for the pledge and grant of a security interest in favor of Lender in the collateral specified herein.

(c) All terms used in this Agreement which are defined in Article 9 of the Uniform Commercial Code (the "Code") currently in effect in the State of Mississippi and which are not otherwise defined herein shall have the same meanings herein as set forth in the Code.

### SECTION 2. Pledge and Grant of Security Interest.
As collateral security for all the Obligations of the Borrower (as defined in Section 3 hereof), the Borrower hereby pledges and grants to the Lender a continuing security interest in the following assets (the "Collateral"):

a. All now owned or existing or hereafter acquired:
   (i) Accounts;
   (ii) Equipment;
   (iii) General Intangibles;
   (iv) Chattel Paper;
   (v) Instruments;
   (vi) Documents;
   (vii) Cash;
   (viii) Inventory;
   (ix) All other goods and personal property, including without limitation whether tangible or intangible, including without limitation, furniture, furnishings, supplies, fixtures, equipment, commercial tort claims, and supporting obligations;
b. All books and records pertaining to any of the Collateral; and
c. All products and Proceeds of all or any of the Collateral described in clauses a.(i) through a.(x) hereof.

When used in this Agreement, the following terms shall have the following meanings:

"Accounts" shall mean all "accounts" (as defined in the UCC) and right to payment of a monetary obligation, including without limitation, all accounts receivable, rents, royalties, payments, issues, fees, rentals, percentage rents, rent adjustments, profits, revenues, income, other benefits and security deposits arising from or due or to become due under the tenant leases, or from the Premises, however evidenced.

"Chattel Paper" shall mean any "chattel paper" (as defined in the UCC).

"Documents" shall mean all "documents" (as defined in the UCC) or other receipts covering, evidencing or representing goods.

"Equipment" shall mean all "equipment" (as defined in the UCC) and, in any event, including all furniture, furnishings, security systems, lighting, air conditioning, heating, telephone and telecommunications systems, satellite dishes, data processing and computer equipment with software and peripheral equipment, and other equipment of every kind and nature, together with all additions and accessions thereto, replacements therefor, and all parts therefor, all substitutes for any of the foregoing, and all manuals, drawings, instructions, warranties and rights with respect thereto.

"General Intangibles" shall mean all "general intangibles" (as defined in the UCC) and, in any event, including all right, title and interest which such person may now or hereafter have in or under any contract, including without limitation, all purchase contracts and easements, options, rights of first refusal, rental contracts, lease agreements, development agreements, management contracts, joint venture agreements, franchise agreements, security deposits, commercial tort claims, rights to indemnification, condemnation proceeds, and other contracts and rights relating to the Borrower's business, together with all Proceeds and products thereof, all copyrights, trademarks, patents, and all applications therefor and reissues, extensions or renewals thereof, rights in intellectual property, interests in partnerships, joint ventures and other business associations, licenses, permits used or useful in the operation and maintenance of the premises, trade secrets, proprietary or confidential information, goodwill (including the goodwill associated with any trademark or trademark license), all rights and claims in or under insurance policies (including insurance for fire, damage, loss and casualty, whether covering personal property, real property, tangible rights or intangible rights, all liability, life, key man and business interruption insurance, and all unearned premiums or rights to refund of any nature), choses in action, deposit, checking and other bank accounts, rights to receive tax refunds and other payments, rights to receive money from Persons holding membership interests in the Grantor, including without limitation, money to be paid to the Grantor pursuant to a capital call, rights of indemnification, and other papers and documents.

"Instruments" shall mean all "instruments" (as defined in the UCC) and, in any event including instruments of credit evidencing, representing, arising from or existing in respect of, relating to, securing or otherwise supporting the payment of any leases, rental payments or any Accounts.

"Inventory" shall mean all of Borrower's inventory whether now existing and/or hereafter created, acquired, manufactured or produced, including all goods, equipment, machinery, merchandise and other personal property held for sale or lease by the Borrower in the ordinary course of the Borrower's business, including all parts and materials necessary to produce such inventory.

"Proceeds" shall mean all proceeds of, and all other profits, rentals or receipts, in whatever form, arising from the collection, sale, lease, exchange, assignment, licensing or other disposition of, or realization upon, the Collateral, and, in any event, including all claims against third parties for loss of, damage to or destruction of, or for proceeds payable under, or unearned premiums with respect to, policies of insurance in respect of, any Collateral, and any condemnation or requisition payments with respect to any Collateral and any property acquired with cash proceeds.

SECTION 3. Security for Obligations. The security interest created hereby in the Collateral constitutes continuing collateral security for all the following obligations, whether now existing and/or hereafter incurred (the "Obligations"):

(a)   The prompt payment by the Borrower, as and when due and payable, of all amounts from time to time owing by Borrower to Lender under or on account of the Indebtedness, the Note or any document or instrument thereunder, and any renewals or extensions thereof including any costs or expenses incident to the collection of the amounts due thereunder and the enforcement of the security interest created hereby;

(b)   All future advances of funds made by the Lender for taxes, insurance, maintenance, and preservation of the Collateral, together with interest at the rate set forth in the Note;

(c)   All other funds advanced to or for account of the Borrower, and all other present or future indebtedness of the Borrower to Lender and any renewals or extensions thereof;

(d) The due performance and observance by the Borrower of all other obligations from time to time existing in respect of the Indebtedness, the Note or any document or instrument thereunder, the Obligations hereunder, and any other debts, obligations and liabilities, including obligations existing pursuant to other agreements collateralizing the Note and collateralizing such other debts, obligations and liabilities.

**SECTION 4. Representations and Warranties.** The Borrower represents and warrants to the Lender as follows:

(a) All representations and warranties made by the Borrower in any document or instrument related hereto are true and correct.

(b) Except for the security interest created herein, the Borrower is and will be at all times the legal and beneficial owner of the Collateral free and clear of any lien, security interest or other encumbrance, and the Borrower shall defend the Collateral and its proceeds and products against all claims of any person claiming the Collateral or any interest therein adverse to the Lender.

(c) At the time any Account Receivable becomes subject to the security interest in favor of the Lender, such Account Receivable shall be a good and valid account representing an undisputed, *bona fide* indebtedness incurred by the debtor named therein for goods and merchandise delivered or to be delivered to such debtor; there shall be no setoff or counterclaims against such account; there shall be no agreement by the Borrower to materially reduce the amount due unless such has been disclosed to the Lender; and the Borrower shall be the lawful owner of the account and shall have the right to pledge the account and to create the security interest in the account as set forth herein.

(d) The Borrower may legally pledge and create in favor of the Lender a security interest in the Collateral, and no additional authorization or approval is required for the pledge and creation of the security interest in the Collateral.

(e) This Agreement creates a valid security interest in favor of the Lender in the Collateral, and no additional action is necessary or desirable to perfect or otherwise protect such security interest other than appropriate filings under the Uniform Commercial Code, which filings are being made concurrently with the execution of this Agreement.

(f) The Borrower's primary place of business, primary executive office and the place where the Borrower keeps its records concerning the Collateral are located at 6055 Primacy Parkway, STE 115, Memphis, Tennessee. Unless otherwise disclosed in writing to Lender, the Collateral shall be maintained in such county.

(g) The Collateral shall be located at 3401 W. Buckeye Road, Phoenix, Arizona, 85009; 108 Haydon Street, Indianola, Mississippi 39751 and such other locations at which the Borrower stores the Collateral.

(h) Unless disclosed in writing to Lender, the Collateral shall not be attached to any real estate as a fixture or a part of such real estate.

(i) The Borrower has no knowledge of any fact which would materially impair the value of the Collateral, unless such fact has been disclosed in writing to Lender.

(j) The Borrower has no undisclosed or contingent liability not reflected on Borrower's financial statements or otherwise disclosed in writing to Lender.

**SECTION 5. Covenants as to Collateral.** So long as any of the Obligations shall remain outstanding, the Borrower will, unless the Lender otherwise consents in writing:

(a) give the Lender at least thirty (30) days prior written notice of any change in the location of its primary place of business, primary executive office, or the office where it keeps its records concerning the Collateral;

— 3 —

(b) keep adequate records concerning the Collateral and permit the Lender or its agents or representatives to examine and make copies from such records at any reasonable time;

(c) notify the Lender, in writing, of any change in location of the Collateral.

(d) at the Borrower's expense, defend the Lender's right, title and special property and security interest in and to the Collateral against the claims of any person;

(e) promptly execute and deliver all further instruments and documents and take all further action that may be reasonably necessary and that the Lender may request in order to (i) perfect and protect the security interest created or purported to be created hereby, (ii) enable the Lender to exercise and enforce its rights and remedies hereunder in respect to the Collateral, or (iii) otherwise effect the purposes of this Agreement and the Note;

(f) not sell, assign, exchange or otherwise dispose of the Inventory or Equipment or any interest therein except in the ordinary course of its business, or sell, assign, exchange or otherwise dispose of any Account Receivable except for payment of the amount due thereunder;

(g) not without approval of Lender create or allow to exist any lien, security interest or other charge or encumbrance upon or with respect to any Collateral except for the pledge and the security interest created in this Agreement;

(h) keep the Collateral insured against loss or damage by fire or other hazards in an amount equal to at least the full cash value of the Collateral. Such insurance shall be written on policies issued by companies acceptable to Lender and, if requested by Lender, such policies shall be deposited with Lender. Borrower hereby assigns the proceeds of any policies to Lender and shall notify the insurance company of such assignment. If Borrower fails to insure Collateral, Lender may obtain such insurance and add the cost to the Indebtedness and the amount secured.

(i) not intentionally take or fail to take any action which would in any manner impair the value of or enforce ability of the Lender's security interest in the Collateral.

(j) keep the Collateral in good condition and repair and pay all costs of repairs and maintenance thereof, and shall pay and discharge all levies and taxes imposed on the Collateral. If Borrower fails to pay such amounts, Lender may pay such amounts and add the cost to the amount secured.

(k) pay all costs of filing financing, continuation and termination statements with respect to the security interest created hereby.

**SECTION 6. Collection of Accounts Receivable.** Until the Lender requests that any or all debtors on any or all Accounts Receivable of the Borrower be notified of the Lender's security interest, the Borrower shall continue to collect the Accounts Receivable. So long as the Borrower is not in default under the Note or hereunder, the Borrower may collect the proceeds of Accounts Receivable and may use such proceeds for all legal purposes. At any time the Borrower is in default, all amounts collected under the Accounts Receivable shall be held by Borrower in trust for the benefit of Lender and shall be segregated from Borrower's other assets. Upon the Borrower's default, the Borrower shall, at the request of the Lender, notify each account debtor of the security interest of the Lender in such account and instruct the account debtor to make its payment directly to the Lender, without any liability on the part of the account debtor to inquire further as to the existence of Default by the Borrower. If the Borrower refuses to comply with this Paragraph, the Lender may take such action on behalf of Borrower. Any such proceeds shall be applied as set forth in Section 10.

**SECTION 7. Power to Sell or Collect Collateral.** Upon the occurrence of any Event of Default and at any time thereafter (until such default is cured or all amounts owed to the Lender have been paid in full), the Lender shall have, in addition to all other rights and remedies, the remedies of a secured party under the Uniform Commercial Code of Mississippi including, without limitation, the right to take possession of the Collateral, and for that purpose the Lender may, so far as the Borrower can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the Collateral therefrom. Unless the Collateral is perishable or threatens to decline speedily in value or is of

-4-

a type customarily sold on a recognized market, the Lender shall give to the Borrower at least five (5) days' prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made. The Lender may purchase the Collateral at any such sale. With respect to the portions of the Collateral consisting of Accounts Receivable, Instruments, or the like, the Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize upon the Collateral as the Lender may determine, whether or not liabilities or Collateral are then due. For the purpose of realizing the Lender's rights in the Collateral, the Lender may receive, open and dispose of mail addressed to the Borrower and endorse notes, checks, drafts, money orders, documents of title or other evidences of payment, shipment or storage or any form of Collateral on behalf of and in the name of the Borrower.

SECTION 8. **Additional Provisions Concerning Collateral.**

(a) The Borrower hereby authorizes the Lender to file, without the signature of the Borrower, where permitted by law, financing and continuation statements and amendments thereto relating to the Collateral.

(b) The Borrower hereby irrevocably appoints the Lender as the Borrower's true and lawful attorney-in-fact and proxy with full authority in the place and stead of the Borrower and in the name of the Borrower, to take any action and to execute any instrument which the Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation, to receive, endorse and collect all instruments made payable to the Borrower representing any payment in respect to the Collateral or any part thereof and to give full discharge for the same.

(c) If the Borrower fails to perform any agreement or obligation contained or referenced herein, the Lender may perform or cause performance of such agreement or obligation and the reasonable expenses of the Lender incurred in connection therewith shall be payable by the Borrower and may add the cost to the Indebtedness and amount secured.

(d) Other than the exercise of reasonable care to assure the safe custody of the Collateral while held hereunder, the Lender shall have no duty or liability to preserve the Borrower's rights pertaining thereto and shall be relieved of all responsibility for the Collateral upon surrendering or tendering surrender of the Collateral to the Borrower. The Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Lender accords its own property.

SECTION 9. **Default.** The occurrence of any of the following actions or omissions shall be an Event of Default:

(a) If the Borrower has made any material misstatement or misrepresentation or has omitted or failed to disclose any material fact in connection with the Note or this Agreement;

(b) If the Borrower fails to pay any amount due or perform any obligation under the Note or under this Agreement when such payment or performance is due;

(c) The appointment of a receiver for any part of the property or of the assets of Borrower, the assignment of the Borrower's property or assets for the benefit of creditors, or the commencement of any bankruptcy or insolvency proceedings by or against the Borrower;

(d) Upon the termination of the legal existence of or capacity of the Borrower to act or own its Property.

SECTION 10. **Remedies.** If any Event of Default occurs and is continuing, all sums secured hereby shall immediately become due and payable at the option of the Lender.

(a) In addition to all other rights and remedies provided for herein or otherwise available to it, the Lender shall have all rights and remedies of a secured party under the Uniform Commercial Code as then in effect in the State of Mississippi and may foreclose upon the Collateral.

(b) If the Lender exercises its right to transfer or sell all or any part of the Collateral, the Borrower will, at the Borrower's expense and upon request by the Lender, (I) execute and deliver all such instruments and documents, and

do or cause to be done all such other acts and things as may be necessary or, in the reasonable opinion of the Lender, advisable to sell and transfer the Collateral, and (ii) do or cause to be done all such other reasonable acts and things as may be necessary to make such sale of such Collateral valid and binding and in compliance with applicable law. The Borrower acknowledges that a breach of any of the covenants contained herein may cause irreparable injury to the Lender, that the Lender shall have no adequate remedy at law in respect of such breach and, as a consequence, the covenants of the Borrower contained herein shall be specifically enforceable against the Borrower. The Borrower hereby waives, to the extend such waiver is enforceable under law, and shall not assert, any defenses against any action for specific performance of such covenants, except for a defense that no Event of Default has occurred.

(c)     The Borrower recognizes that if the Lender elects to make a private sale of any or all of the Collateral to a restricted group of purchasers, the sale may be at prices and on terms less favorable to the seller than the prices and terms which might have been obtained at a public sale. Notwithstanding the foregoing, the Borrower agrees that such a private sale shall be deemed to have been made in a commercially reasonable manner and that the Lender shall have no obligation to delay the sale of any of the Collateral for a period of time necessary to permit the Borrower to make a public sale.

(d)     Any cash received by the Lender in respect of any sale of, collection from or other realization upon all or any part of the Collateral shall be applied against the Obligations, after all of the Lender's expenses incurred as a result of the sale, collection or realization have been satisfied.

(e)     If the proceeds of any such sale, collection or realization are insufficient to pay all amounts to which the Lender is legally entitled, the Borrower shall be liable for the deficiency, together with interest thereon at the rate specified in the Note, together with the reasonable costs of collection and the reasonable fees of any attorneys employed by the Lender to collect such deficiency.

(f)     The Lender or any affiliate or related party may purchase the Collateral at any public or private sale made hereunder upon such terms and conditions as are satisfactory to the Lender.

**SECTION 11. Indemnity and Expenses.**

(a)     The Borrower agrees to indemnity the Lender from and against any and all claims, losses and liabilities growing out of or resulting from this Agreement, including, without limitation, the enforcement of this Agreement.

(b)     Upon demand, the Borrower will pay to the Lender the amount of any reasonable costs and expenses, including the fees and disbursements of the Lender's counsel which the Lender may incur in connection with (i) the administration of this Agreement; (ii) the custody, preservation, use or operation of or the sale of, collection from or other realization upon any Collateral; (iii) the exercise or enforcement of any of the rights of the Lender hereunder; and/or (iv) the failure by the Borrower to perform or observe any of the provisions hereof.

**SECTION 12.    Notices, Etc.**  All notices and other communications provided for hereunder shall be in writing and shall be given as follows:

If to Borrower:        Warehouse 86, LLC
                       P.O. Box 17361
                       6055 Primacy Parkway, STE 115
                       Memphis Tennessee 38187

If to Lender:          Stuart M. Irby
                       P.O. Box 1819
                       815 S. State Street
                       Jackson, Mississippi 39205-1819

Notice shall be sent by personal delivery, facsimile, certified mail, or nationally recognized carrier. Notice shall be effective upon receipt or attempted but refused delivery.

-6-

### SECTION 13. Miscellaneous.

(a) This Agreement or any provision herein may be amended or terminated only by a written instrument signed by the parties.

(b) Reporting Requirements. The Borrower will furnish and submit to the Lender as soon as available and, in any event within 90 days after the end of its fiscal year, an annual financial statement. Borrower will also furnish and submit to the Lender the following:

  (1) Monthly financial statements and profit and loss statements generated and prepared by the management of the Borrower and certified by an officer of the Borrower as to accuracy. The monthly financial statements and profit and loss statements shall be submitted to the Bank by the 15th day of the month subsequent to the end of the quarter to be covered by the financial statement. The financial statement and profit and loss statements provided to the Bank shall contain at a minimum a balance sheet and income statement.

  (2) Such other financial information as the Lender may reasonably request.

(c) If the Lender delays, fails to exercise, or waives a Default or breach of any of the covenants and agreements contained herein which are required to be performed by the Borrower, such waiver shall be in writing and shall not be construed as a waiver of any such rights in any succeeding instance or any succeeding Default or breach of the same or other covenant herein in exercising any right hereunder. The rights and remedies of the Lender provided herein and in the other documents executed in connection herewith are cumulative and are in addition to and not exclusive of any rights or remedies provided by law. The rights of the Lender under any document executed in connection herewith against any party thereto are not conditional or contingent on any attempt by the Lender to exercise any of its rights under any other document against such party or against any other person.

(d) It is the intent of the parties that each provision of this Agreement be interpreted in such manner as to be effective and enforceable. However, if any provision is found to be illegal, invalid, or unenforceable, it is the intent of the parties that the remainder of this Agreement not be affected thereby and that this Agreement otherwise remain in full force and effect.

(e) This Agreement shall remain in full force and effect until the final payment in full or release of the Obligations. This Agreement shall be binding upon and inure to the benefit of the Parties and each one's permitted successors and assigns, heirs, beneficiaries, and personal representatives.

(f) The Lender may assign or otherwise transfer the Note and may assign or otherwise transfer its rights under any other document executed in connection herewith. The assignee or transferee shall thereupon become vested with all of the benefits granted to the Lender herein or otherwise.

(g) The Borrower may not assign its rights or obligations hereunder without the prior written consent of the Lender, which consent the Lender may withhold in its discretion.

(h) Upon final payment and satisfaction in full of the Obligations, this Agreement and the security interest created hereby shall cease and terminate. All rights to the Collateral shall revert to the Borrower, and the Lender shall terminate any financing statement and other filings.

(i) If the Lender retains an attorney to enforce its rights hereunder, the Lender shall be entitled to recover from the Borrower reasonable attorney's fees and other costs of collection and enforcement of Lender's rights hereunder, whether or not suit is filed.

(j) This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Mississippi.

IN WITNESS WHEREOF, the Borrower and the Lender have signed this Agreement on the date set forth above.

**LENDER:**

STUART M. IRBY

_____

**BORROWER:**

WAREHOUSE 86, LLC, an Arizona limited liability company

By: _____
ERIC EILERTSON, CEO

## CONTINUING GUARANTY

In consideration of STUART M IRBY ("Lender"), giving or extending credit to WAREHOUSE 86, LLC, an Arizona limited liability company ("Debtor"), Eric Eilertsen, Paul Thomas St. James, Joy Diane St. James and Ernest K. Stranhan, III ("Guarantors") hereby give this Continuing Guaranty to the Lender, its transferees, or assigns, for the payment in full, together with all interest, attorney fees, other fees and charges of whatsoever nature and kind under that certain Promissory Note dated July 1, 2006 ("Indebtedness") to the Lender to the amount of Seven Hundred Fifty Thousand and no/100 Dollars ($750,000.00) whether due or to become due, now existing or hereafter arising.

The Lender may, one or more times, in its judgment, grant extensions, take and give up securities, grant releases and discharges, make changes of any sort whatsoever in the terms of its contract or manner of doing business with the Debtor and with other parties and securities in relation thereto, without notice to the Guarantors, such notice being hereby specifically waived. The Lender may also apply all moneys received from the Debtor and others or from securities as the Lender may determine, without in any way altering, affecting, limiting or lessening the liability of the Guarantors under this Continuing Guaranty; all without any notice to or consent from the Guarantors.

The Lender shall not be bound to exhaust its recourse against the Debtor or other persons or upon the securities it may hold before being entitled to payment from the Guarantors of the amount hereby guaranteed. The Guarantors bind and obligate themselves and their successors, assigns, jointly and severally, with the Debtor, for the payment of the Indebtedness precisely as if the Indebtedness had been contracted and was due or owing by the Guarantors, hereby agreeing to, and holding the Guarantors, their successors, heirs and assigns, by all terms and conditions contained in any note or notes signed by the Debtor, making the Guarantors a party thereto, hereby waiving notice of any such Indebtedness and of demand, presentment, protest or notice of demand or non-payment and of notice of any act to establish the liability of any party on any commercial or other paper, indebtedness or obligation covered by this Continuing Guaranty. The Guarantors further waive all notice and agree that upon default by Borrower, to pay upon demand at any time to the Lender, its transferees or assigns, the full amount of the Indebtedness to the amount of this Guaranty, together with interest, fees and charges, as above set forth.

It is understood and agreed that this Continuing Guaranty is executed by more than one individual and that each individual shall be bound by all of the provisions of this Continuing Guaranty and for the payment of the amount stated above, together with interest, fees and charges, in a prorata amount equal to his or her ownership interest in the Debtor.

This Continuing Guaranty does not supersede nor cancel any pre-existing Continuing Guaranty or Guaranties given by the Guarantors on behalf of the Debtor, but to the contrary shall be in addition thereto.

This Continuing Guaranty is absolute and complete, and acceptance and notice of acceptance thereof by the Lender are hereby expressly waived. This Continuing Guaranty shall continue in force until written notice of its discontinuance shall be served upon the Lender, but such discontinuance shall not affect the Guarantors' liability on any debts and/or obligations of the Debtor then existing nor the liability of any other party liable thereunder.

This Continuing Guaranty shall be governed by and construed and enforced in accordance with the laws of the State of Mississippi.

IN WITNESS WHEREOF, the Guarantors have executed this Continuing Guaranty on this the 22nd day of June, 2006.

| WITNESS | GUARANTORS |
|---|---|
| _____ | _____ |
| WITNESS | ERIC EILERTSEN |
| _____ | _____ |
| WITNESS | PAUL THOMAS ST. JAMES |
| _____ | _____ |
| WITNESS | JOY DIANE ST. JAMES |
| _____ | _____ |
| WITNESS | ERNEST K. STRAHAN, III |