IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WAREHOUSE 86, LLC | ) | CASE NO. 08-03423-EE |
| | ) | Chapter 11 |
| Debtor | ) | |
| _____ | ) | |

**DEBTOR'S MOTION FOR AUTHORITY TO SELL ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
OUTSIDE OF THE ORDINARY COURSE OF BUSINESS AND ASSUMING AND
ASSIGNING CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS
PURSUANT TO 11 U.S.C. §§ 105, 363, and 365**

Warehouse 86, LLC, the Debtor and debtor-in-possession herein ("Debtor"), by its attorneys, files this *Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 U.S.C. §§ 105, 363 and 365* (the "Motion"), and states as follows:

**Introduction**

1. On November 4, 2008 (the "Petition Date"), Debtor filed its Voluntary Petition under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code"). Debtor operates an on-line auction business from its offices in Flowood, Mississippi and Memphis, Tennessee, as well as from leased warehouse facilities in Ogden, Utah and Memphis, Tennessee. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business and manages its properties and assets as Debtor in possession.

2. No official committee of unsecured creditors has been appointed in this case.

**Jurisdiction and Venue**

3. This Court has jurisdiction over this matter pursuant to 28 U. S. C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§105, 361, 363, 365, 1107, as well as various orders of reference, and also Bankruptcy Rules 6004 and 2002. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N) and (O).

**Background**

4. Debtor is an on-line or internet auction business. While having a promising future, Debtor has suffered several significant setbacks. First, in 2007, eBay limited its "as is", high volume, auction format, liquidation sellers, resulting in a loss of over 75% of Debtor's revenue. Second, while still coping with that set back, its warehouse distribution center in Southaven, Mississippi was hit by a tornado causing significant damages to Debtor and its operations. As if that were not enough, six days after the tornado, while the landlord was repairing the warehouse, one of its contractors caused a fire which damaged even more of Debtor's personal property and disrupted over 50% of Debtor's remaining business after the eBay set back. Since then, Debtor has leased new space in Memphis, but could be subject to a claim from its sub-landlord or its landlord under the Southaven lease if the sub-landlord or landlord were to repair the building within the required time.

5. Based on these setbacks, among others, Debtor has been unable to stabilize its position with its customers and its vendors, and its operations have suffered as a result. While the Debtor may be able to continue to limp along and hope no further setbacks occur, it realizes that its best course of action is to sell its assets to maximize the recovery to its creditors and to preserve the value of the business as a going concern. All of these unfortunate events have forced the Debtor to

file Chapter 11 in order to obtain the required financing and a viable prospect for selling the business as a going concern.

6.  In order to realize the full value for its on-line auction business, Debtor has determined that it is in the best interest of its creditors and parties in interest for it to sell its business as a going concern to a buyer who can supply both the needed capital and management expertise necessary for the Company to succeed and to realize its full potential.

7.  To that end, the Company has been exploring various acquisition partners during the past several months, but until recently could not find a potential buyer who was willing and able to offer a sufficient amount in a transaction that could satisfy the demands of the Company's principal secured creditor who holds a perfected security interest in substantially all of the Company's assets and at the same time provide any return to unsecured creditors.

8.  The Company has now secured such a purchaser, as well as a source of interim financing to keep the Company operating and viable prior to the proposed sale of substantially all of its assets. The potential purchaser, Warehouse 86 Ventures, LLC, a Delaware limited liability company (the "Buyer"), intends to employ the principles of the Debtor, specifically, Paul St. James, Joy St. James and Ernest K. Strahan III. These individuals will likewise have an ownership interest in the Buyer, specifically, each with a 10% Class B membership interest (profits or financial rights only).[1]

(1) _____

[1] The Buyer intends to retain Paul St. James as the Chief Information Officer, Joy St. James as the Chief Operating Officer and Ernie Strahan as the Chief Financial Officer. Paul St. James will have an 18-month employment agreement, including a non-disclosure/non-compete agreement and Joy St. James and Ernie Strahan will have 12-month employment agreements. All three will be subject to a quarterly divesting of their 10% Class B Interest should they leave the Buyer prior to the end of their respective 18 or 12 month employment contracts. Their salaries with the Buyer each will be $16,000.00 per month.

9. The Debtor and Buyer have agreed on the terms and conditions under which the Buyer will agree to purchase the Assets for a total consideration of One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) (the "Purchase Price"), subject to Court approval, and the Parties have memorialized that agreement in a written Asset Purchase Agreement (the "APA"), a copy of which executed by the Buyer is attached as Exhibit "A" hereto. The assets being sold to Buyer are more particularly described in the APA (hereinafter collectively referred to as the "Purchased Assets").

10. At this time, the assets of the Debtor are collateral for a secured loan from Stuart M. Irby ("Irby") in the amount of approximately One Million Two Hundred Thirty Six Thousand Seven Hundred Fifty Six and 12/100 Dollars ($1,236,756.12) (the "Irby Indebtedness"). The Irby Indebtedness is secured by, among other things, all "accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property..." of Warehouse 86, LLC, as evidenced by the Note, Security Agreement and Financing Statement (the "Irby Loan Documents"). The Debtor has stipulated and agreed that the Irby Indebtedness is valid and enforceable, and that the liens and security interests of Irby in the Irby Pre-Petition Collateral are valid and properly perfected and senior in priority to those held by all others, except with respect to any superpriority lien or security interest granted by the Court to DIP Lender in connection with the DIP Loan previously approved by the Court.

11. Debtor has obtained authority to use the Cash Collateral of Irby for its interim operations (Motion - Dkt. # 9) (Order – Dkt. # _____). Recognizing that this amount will not be sufficient, Debtor also has obtained authority to obtain a DIP Line of Credit in the amount of Five Hundred and no/100 Dollars ($500,000.00), for Debtor's use pursuant to the terms and requirements

- 4 -

of the DIP Loan Documents (Motion - Dkt. # 10) (Order – Dkt. #_____). The DIP Loan is secured by a Superpriority Lien on all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property of the bankruptcy estate of Debtor, but not including any recovery actions of any of Debtor's estate under Chapter 5 of the Bankruptcy Code.

12. Buyer is willing to purchase the Assets of the Company for total consideration of $1,350,000.00, payable as follows:

13. $750,000.00 to Irby in satisfaction of the Irby Indebtedness, which shall be paid by Buyer to Irby pursuant to a Note in substantially the form attached hereto as Exhibit "B," which Note is to be personally guaranteed by Kenneth May;

14. $500,000.00 to repay the DIP Loan of the Debtor; and

15. $100,000.00 to the Debtor's bankruptcy estate.

16. The total consideration of $1,350,000.00 is fair and adequate consideration for the Assets, particularly since the sale is not subject to a financing contingency and has only minimum conditions precedent to closing.

17. The Debtor believes that the sale of the Assets is fair and reasonable, and if there are any other interested purchasers, they may submit a higher and better bid at the hearing on this Motion for consideration by the Debtor and this Court. This process will provide for a prompt sale, and at the same time, a fair, open and transparent process that will lead to the highest and best purchase offer for the Assets.

18.     The Buyer has placed in trust with the Debtor's counsel a deposit of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Deposit") in support of its obligations under the Agreement.

19.     This Sale Motion seeks to approve the sale of the Purchased Assets to the Buyer on the terms and conditions set forth in the Agreement, subject to a higher and better bid being offered by another party at the Sale Hearing, as more particularly set forth in the procedures described below.

20.     In the event some party other than the Buyer desires to bid on the Assets at the Sale Hearing, Debtor will apply the following bid procedures:

(A)     Qualified Bidders. Any bidder must demonstrate to the Debtor's satisfaction that it is qualified to bid on the Purchased Assets, based on, among other things, statements of interest and certain financial information demonstrating the bidders' financial wherewithal to consummate a purchase of the Purchased Assets (each, a "Qualified Bidder"). Any party interested in purchasing some or all of the Purchased Assets may seek to become a Qualified Bidder and participate in the bidding process by notifying the Debtor (at the address set forth below) on or before 1:00 p.m. Central Time on December 1, 2008, of its interest in bidding on some or all of the Purchased Assets and providing such information as may be required by the Debtor to demonstrate such potential bidder's financial wherewithal to consummate a purchase of the applicable Assets. The Debtor may determine which parties constitute Qualified Bidders.

(B)     Non-Qualified Bidders. Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process ("Non-Qualified Bidder"). A Non-Qualified Bidder will not be permitted to conduct due diligence, make a bid for any of the Purchased Assets to be sold under the APA or participate at the hearing on the Sale Motion.

(C)     Due Diligence. The Debtor has afforded and will continue to afford any Qualified Bidder such due diligence access or additional information as may be reasonably requested by the Qualified Bidder and that, in their business judgment, the Debtor determines to be reasonable and appropriate. All reasonable requests for additional information and due diligence access from Qualified Bidders shall be coordinated through the Debtor. Unless otherwise determined by the Debtor in its discretion, the availability of additional due diligence to a Qualified Bidder will cease from and after the Objection Deadline.

(D)     Bid Deadline. Not later than 5:00 p.m., Central Time, on December 1, 2008 (the "Bid Deadline"), a Qualified Bidder that desires to participate in the auction shall

- 6 -

have filed its objection to the Sale Motion *and* also shall have delivered a written copy of its higher and better bid to Ernie Strahan, 5 River Bend Place, Flowood, MS 39232. Ernie Strahan will distribute a copy of each bid received to counsel for the Debtor.

(E) <u>Form and Content of Bid</u>. A bid is a signed letter from a Qualified Bidder stating that:

1. The Qualified Bidder offers to purchase the Assets for cash of an amount at least 10% greater than the amount offered by the Buyer. The letter must clearly delineate all components of the proposed purchase price and whether any or all of the Purchased Assets will be purchased;

2. The Qualified Bidder's offer is irrevocable; and

3. The Qualified Bidder's offer is not subject to any due diligence, board approval or financing contingency and does not contain any other material conditions precedent to closing.

(F) <u>Required Supporting Materials</u>. A Qualified Bidder shall accompany its bid with: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory financing commitment if selected as the Successful Bidder and such other evidence of ability to consummate the Transaction as the Debtor may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed. To the extent that a Qualified Bidder seeks to purchase any of the Assets subject to existing liens, then such Qualified Bidder's bid must further be accompanied by written evidence reasonably satisfactory to the Debtor that the lien holder has agreed (i) to the creditworthiness of such Qualified Bidders, and (ii) to any proposed or required modified payment terms with respect to the retained liens.

(G) <u>Required Good Faith Deposit</u>. By the Bid Deadline, a Qualified Bidder must deposit with the Debtor a good faith deposit (the "<u>Good Faith Deposit</u>") of $50,000.00. The Good Faith Deposit must be made by certified check or wire transfer and will be held by the Debtor's counsel as Escrow Agent.

(H) <u>Qualified Bid</u>. Subject to the terms of this Paragraph 17, a bid received by the Bid Deadline from a Qualified Bidder that meets the requirements of this Motion is considered a "<u>Qualified Bid</u>." The Debtor reserves the right to waive noncompliance with any one or more of these requirements and deem any otherwise non-qualifying bid to be a Qualified Bid. A Qualified Bid will be evaluated based upon factors such as: (a) the purported amount of the Qualified Bid; (b) the fair, net value to be provided to the Debtor under the Qualified Bid; (c) the ability to close or the

- 7 -

likelihood of closing the proposed sale transaction without delay; and (d) any other factors that the Debtor may deem relevant.

(I) <u>Rejection of Bid</u>. Notwithstanding the foregoing, the Debtor shall be entitled to reject any bid, in its discretion after consultation with the Debtor, if the bid:

1. is on terms that are materially more burdensome or conditional than the terms of this Motion;

2. requires any indemnification of such Qualified Bidder in its letter Agreement;

3. is not received by the Bid Deadline;

4. includes a non-cash instrument or similar consideration;

5. requires any regulatory or other approval that would delay the closing;

6. does not satisfy the requirements of this Paragraph; or

7. contains any material conditions precedent to closing.

Any bid rejected pursuant to this Paragraph 17, Subsection (I) shall be deemed not to be a Qualified Bid.

(J) <u>Auction</u>. In the event an Objection and a Qualified Bid are timely filed, the Debtor will conduct an Auction which will commence at 10:00 a.m. Central Time on December 2, 2008. The Auction will be conducted by the Debtor at the United States Bankruptcy Court for the Southern District of Mississippi, United States Bankruptcy Courthouse, 100 East Capitol Street, Jackson, MS 39201.

(K) <u>Qualified Participants</u>. Unless otherwise ordered by the Bankruptcy Court for cause shown, only a Qualified Bidder that has submitted a Qualified Bid and the Buyer are eligible to participate in the Auction. Any secured lenders to the Debtor whose collateral is part of the Assets to be sold and their respective representatives are permitted to attend the Auction and observe the Auction.

(L) <u>Bidding Process; Minimum Bids and Selection of Successful Bidder</u>. At the commencement of the Auction, the Debtor shall identify the prevailing highest and best Qualified Bid, which shall exceed the Buyer's Bid by a minimum of ten percent (10%). Once the Auction commences, the next three bids for the Assets shall be a minimum of five percent (5%) greater than the preceding Auction bid, and thereafter, any bid shall be a minimum of one percent (1%) higher than the preceding Auction bid, or in such other increments that the Debtor or the Court determine to be

reasonable and in the best interest of the estate. Upon completion of the Auction, the Debtor shall select the Successful Bidder, if any, that has submitted the bid, if any, which represents the highest and best offer and is in the best interest of the Debtor, its estate and its creditors (the "Successful Bid").

(M) Debtor's Discretion. The Debtor shall conduct the Auction in accordance with this Paragraph 17. The Debtor, may further conduct the Auction in any manner deemed reasonably prudent to obtain the highest and best result for the estate.

(N) Successful Bidder. Immediately at the conclusion of the Auction, the Debtor shall advise the Court of the Successful Bidder and the amount and other material terms of the Successful Bid. Because all bids are irrevocable, the Debtor shall also include the second highest bid who will become the "Back-up Bid" to be approved in case the Successful Bid fails to close, and the third highest bid who will become the "Alternate Back-up Bid" in case the Back-up Bid fails to close.

(O) Sale Hearing. A hearing with respect to the Sale Motion will take place at the later of: (a) 11:00 a.m. Central Time on December 2, 2008, or (b) immediately at the conclusion of the Auction, at which Sale Hearing the Debtor will seek the entry of a final order from the Bankruptcy Court approving and authorizing the proposed sale to the Successful Bidder on terms and conditions substantially consistent with the Sale Procedures. The Debtor will also seek to have the second highest bid approved as the "Back-up Bid" in case the Successful Bidder is unable to close and the third highest bid who will become the "Alternate Back-up Bid" in case the Back-up Bid fails to close.

(P) Application of Good Faith Deposit. The Good Faith Deposit submitted by the Successful Bidder, together with all interest thereon, if any, shall be applied against the payment of the purchase price, as defined in the relevant asset purchase agreement, at the closing of the sale to the Successful Bidder. The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any Qualified Bidder whose bid was not the Successful Bid, the "Back-up Bid" or the "Alternate Back-up Bid." Upon closing of the Successful Bid, the Good Faith Deposit, together with all interest accrued thereon, shall be returned to the Qualified Bidder holding the Back-up Bid and the "Alternate Back-up Bid," but if the Successful Bidder fails to consummate the Successful Bid in accordance with the terms of the Purchase Agreement, the Debtor will retain the Good Faith Deposit of the Successful Bidder as liquidated damages, and the Back-up Bidder will become the Successful Bidder and the Good Faith Deposit submitted by the Back-up Bidder, together with all interest thereon, if any, shall be applied against the payment of the purchase price, as defined in the relevant asset purchase agreement, at the closing of the sale to the Back-up Bidder.

21. Pursuant to this Sale Motion, the Debtor seeks authority to sell the Assets free and clear of any liens, claims, interests and encumbrances to the Buyer, or to the Successful Bidder submitting a higher and better offer as set forth herein.

22. Although there is no guaranty that the Sales Procedures will result in an offer deemed to be acceptable by the Debtor or the creditors, the Sales Procedures clearly delineate a structured process for the solicitation, negotiation and proposition of bids, and auction, for the Assets.

23. Since prospective purchasers will receive notice of the procedures and certain relevant dates, these prospective bidders will have full notice of the ground rules to bid, or not bid, on the Assets. The Debtor believes that this finality will cause prospective bidders to finally step up to the table and present bids that would enable their participation at the Auction. The openness of the process will ensure a fair process for all potential bidders. Accordingly, the Debtor believes that the Sales Procedures will maximize potential offers by providing a fair, open and structured process.

24. The anticipated sale of the Assets to the Successful Bidder is in the best interest of the Debtor's estate and its creditors and will maximize the value of the Assets to the bankruptcy estate.

25. While the Debtor believes that the sale of the Assets is in the best interest of the estate, all parties have reserved the right to object thereto. Until the process has played out, neither the Debtor nor any of its creditors can predict the final outcome. The sales and auction process, however, should be permitted to proceed in order to elicit the highest and best offers of any prospective bidders.

26. Notice of the hearing of this Sale Motion will be provided to all creditors in interest on the General Service List maintained by this Court, all federal, state and county taxing authorities in all locations in which any of the Assets are located, and any other parties as determined by this

Court, as well as to those prospective purchasers who have contacted the Debtor to request additional information concerning this sale.

27. The Debtor submits that the notice described above is expansive and will meet or exceed the requirements of Rules 2002, 6004, 6006, 7004, 9008 and 9014 of the Bankruptcy Rules and any other applicable rules or orders of this Bankruptcy Court. The form, manner, scope and substance of the proposed notice: (a) will fairly apprise creditors and other interested parties of the proposed sale of the Assets; (b) will be served on all creditors and parties-in-interest; and (c) are appropriate and sufficient under the circumstances of this case and in accordance with the Bankruptcy Rules. As a result, the proposed notice is sufficient to bar past, present and future claimants from objecting to the proposed sale after the time period described in the Notice has expired. Therefore, notice is clearly sufficient, and the Debtor seeks a ruling to that effect from this Court so that the Successful Bidder shall purchase the Assets free and clear of liens, claims, interests and encumbrances.

## Conclusion

28. Granting this Sale Motion to sell the Assets to the Buyer, or if a higher and better offer is received from a Qualified Bidder, to the Successful Bidder will maximize the value of the Assets to the bankruptcy estate which, in turn, will benefit the Debtor and its creditors.

WHEREFORE, the Debtor respectfully requests the entry of an Order to sell the Assets free and clear of all liens, claims, interests and encumbrances outside of the ordinary course of business to the Buyer under the terms of the Agreement, or if a higher and better offer is received from a Qualified Bidder at the Auction, to the Successful Bidder, and to authorize the Debtor's officers to execute such documents as may be reasonably necessary to consummate the sale of the Assets, and for such other relief as to which the Debtor may be entitled.

THIS the 7th day of November, 2008.

                Respectfully submitted,

                WAREHOUSE 86, LLC

                By: *s/ Stephen W. Rosenblatt*
                Stephen W. Rosenblatt (MS Bar No. 5676)
                John A. Crawford, Jr. (MS Bar No. 10346)
                Paul M. Ellis (MS Bar No. 102259)
                ATTORNEYS FOR DEBTOR

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, Regions Plaza (39201)
Post Office Box 22567
Jackson, MS 39225-2567
Telephone: (601) 948-5711
Fax: (601) 985-4500
Email: steve.rosenblatt@butlersnow.com
jack.crawford@butlersnow.com
paul.ellis@butlersnow.com

- 13 -

CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

Ronald H. McAlpin, Esq.
Trial Attorney, Office of the U.S. Trustee
A. H. McCoy Federal Building, Suite 706
100 W. Capitol Street
Jackson, MS 39269
Ronald.McAlpin@USDOJ.gov

Office of the U.S. Trustee
A.H. McCoy Federal Building, Suite 706
100 W. Capitol Street
Jackson, MS 39269
USTPRegion05.AB.ECF@usdoj.gov

Michael B. Chance, Esq.
E. Franklin Childress, Jr. Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
6060 Poplar Avenue, Suite 440
Memphis, Tennessee 38119
mchance@bakerdonelson.com
fchildress@bakerdonelson.com
ATTORNEYS FOR DIP LENDER

Richard A. Montague, Jr., Esq.
Suzanna Baker, Esq.
Wells Moore Simmons & Hubbard
P.O. Box 1970
Jackson, Mississippi 39215-1970
rmontague@wellsmoore.com
sbaker@wellsmoore.com
ATTORNEY FOR IRBY

SO CERTIFIED, this the 7th day of November, 2008.

/s/ Stephen W. Rosenblatt
Stephen W. Rosenblatt

- 13 -