## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: ) | |
| ) | |
| **WAREHOUSE 86, LLC** ) | **CASE NO. 08-03423-EE** |
| ) | **Chapter 11** |
| **Debtor** ) | |
| ) | |

**ORDER GRANTING EMERGENCY MOTION FOR A PRELIMINARY ORDER
(I) AUTHORIZING POST-PETITION FINANCING ON A SECURED AND
SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 363, 364 and 507(b),
(II) GRANTING OTHER RELATED RELIEF AND
(III) SCHEDULING A FINAL HEARING PURSUANT TO RULE 4001**
(Dkt. # 10)

THIS MATTER came before the Court on November 6, 2008, for a preliminary hearing (the "Preliminary Hearing") on the *Emergency Motion for a Preliminary and Final Order (I) Authorizing Post-Petition Financing on a Secured and Super Priority Basis Pursuant to 11 U.S.C. §§ 105, 361, 363, 364 and 507(b), (II) Granting Other Related Relief and (III) Scheduling a Final Hearing Pursuant to Rule 4001* (the "Motion") (Dkt. #10) of Warehouse 86, LLC, the Debtor and debtor-in-possession herein (the "Debtor"). The Court considered the statements of counsel and evidence presented at the Preliminary Hearing and the applicable law, and it appears that the relief requested in the Motion is in the best interests of Debtor, its estate and creditors, and that such relief is essential for the continued operations of Debtor's business. It further appears that the Debtor has been unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code or other secured financing on terms equal to or more favorable than those set forth in the DIP Loan Documents (as defined herein). It further appears that the existing secured creditor consents to the DIP Loan being made and to the subordination of its security interest in the DIP Loan Collateral and the granting to the DIP

Lender of the Superpriority Lien granted herein. Upon the record herein, the Court finds that the Motion is well taken and should be granted in all respects. The Court further finds as follows:

1. On November 4, 2008 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code").

2. No official committee of unsecured creditors has been appointed in this case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

4. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business and manages its properties and assets as Debtor in possession.

5. Debtor presently has a secured loan from Stuart M. Irby ("Irby") in principal and interest in the amount of One Million Two Hundred Thirty Six Thousand Seven Hundred Fifty Six and 12/100 Dollars ($1,236,756.12) secured by, "accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property. . . " of Warehouse 86, LLC, as evidenced by the Note, Security Agreement and Financing Statement (the "Irby Loan Documents"), attached to the Motion as collective Exhibit "A." The Debtor has stipulated and agreed that the Irby Indebtedness is valid and enforceable in the amount stated in the Interim Order, and that the liens and security interests of Irby in the Irby Pre-Petition Collateral are valid and properly perfected and senior in priority to those held by all others, except with respect to any superpriority lien or security interest granted by the Court to DIP Lender in connection with the DIP Loan.

6. Irby has agreed that the collateral securing the DIP Loan will be senior and priority to the collateral securing his loan to Warehouse 86, LLC up to $500,000.00.

7. Debtor seeks interim and final approval to obtain post-petition financing from Kenneth A. May ("DIP Lender") in the form of a non-revolving Line of Credit in the original principal amount of up to Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "DIP Loan"), as evidenced by those certain loan documents attached to the Motion as Exhibit "B" (collectively, the "DIP Loan Documents").

8. Under Bankruptcy Rule 4001(c)(2), the Court may commence a final hearing on a motion for authority to obtain credit no earlier than fifteen (15) days after service of the motion and notice of hearing on the motion. Bankruptcy Rule 4001(c)(2) further provides, however, that the Court may conduct a preliminary hearing before the expiration of the 15-day notice period as necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Debtor respectfully requests the Court to conduct a preliminary hearing at the Court's earliest convenience to authorize the secured post-petition financing as necessary to avoid immediate and irreparable harm to Debtor's bankruptcy estate pending a final hearing.

9. Subject to Court approval, Debtor and DIP Lender have agreed to enter into a Line of Credit Agreement (the "DIP Loan Agreement"), whereby DIP Lender will make a new loan to Debtor, in the amount of up to Five Hundred Thousand and No/100 Dollars ($500,000.00), for Debtor's use pursuant to the terms and requirements of the DIP Loan Agreement. The Promissory Note to be executed by Debtor to effect the terms of the DIP Loan Agreement will be substantially in the form attached to the Motion as Exhibit "C."

10. The DIP Loan shall be in the amount of up to Five Hundred Thousand and no/100 Dollars ($500,000.00), with interest at the fixed rate of six and one-half percent (6.5%) per annum, and shall be repaid on the date that the Order approving the sale of Debtor's assets out of bankruptcy by such successful purchaser becomes final.

11. The DIP Loan proceeds shall be used by Debtor in accordance with the requirements of the DIP Loan Agreement.

12. The DIP Loan shall be secured by a Superpriority Lien (as defined below) on all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property of the bankruptcy estate of Debtor, but not including any recovery actions of any of Debtor's estate under Chapter 5 of the Bankruptcy Code.

13. Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtor and DIP Lender negotiated the DIP Loan Agreement in good faith and at arms-length. The DIP Loan Agreement represents Debtor's best opportunity under the circumstances to obtain emergency post-petition financing necessary to fund Debtor's operations in Chapter 11 to ensure that Debtor's value as a going concern is preserved. The DIP Loan Agreement results from Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitutes a transaction for reasonably equivalent and fair consideration.

14. Financing is not available from other sources on equally favorable terms. The DIP Loan Agreement is the most efficient, least expensive mechanism available to meet Debtor's immediate short-term needs. The DIP Loan Agreement provides Debtor the best available opportunity to maximize liquidity and working capital. Finding new financing from other sources, even if possible, would likely be markedly more expensive and potentially disruptive to Debtor's estate and business, and at this point in time, threaten the viability of Debtor's reorganization. The DIP Loan Agreement is Debtor's best source of post-petition financing, is

fair and reasonable, is in the best interests of Debtor, Debtor's estate, and Debtor's creditors, and that Debtor's entry into the DIP Loan Agreement reflects a sound exercise of Debtor's business judgment.

15. Debtor has an immediate need for financing pursuant to the DIP Loan Agreement. The DIP Loan Agreement will allow Debtor to continue to finance its day-to-day operations, without interruption. Without immediate authority to obtain financing on the terms and conditions set forth in the DIP Loan Agreement, Debtor will be unable to meet its costs and expenses of operation, which would cause immediate and irreparable harm to Debtor's bankruptcy estate.

16. To preserve the value of Debtor's assets and Debtor's ability to manage its estate for the benefit of creditors and other parties in interest, Debtor requests authorization to obtain financing under the DIP Loan Agreement on a preliminary basis as necessary to avoid immediate and irreparable harm to its bankruptcy estate pending a final hearing on the Motion. Debtor proposes to obtain financing from DIP Lender under the DIP Loan prior to a final hearing and entry of a final order to enable Debtor to operate its business in the regular and ordinary course. Accordingly, approval of the DIP Loan Agreement on an interim basis pending a final hearing is in the best interests of Debtor, Debtor's estate and Debtor's creditors.

17. Debtor is authorized (i) to execute and deliver the DIP Loan Documents, including all instruments, agreements, assignments and other documents referred to therein or requested by DIP Lender to give effect to the terms of the DIP Loan Agreement; (ii) to obtain the DIP Loan and to incur any and all liabilities and obligations thereunder; (iii) to pay all interest, fees and expenses provided for thereunder; and (iv) to perform the obligations hereunder in

accordance with the terms hereof. Debtor will obtain the DIP Loan under the terms of the DIP Loan Documents.

18. All DIP Loans and other extensions of credit made by DIP Lender to Debtor under any of the DIP Loan Documents, together with all interest, fees and charges (including legal fees) at any time or times payable by Debtor in connection therewith (collectively, the "DIP Loan Debt"), pursuant to Section 364(c)(1) of the Bankruptcy Code, shall constitute an allowed secured claim against Debtor's estate with priority over any and all administrative expenses, diminution claims and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever, secured by valid, binding and enforceable security interests in and superpriority liens in favor of DIP Lender in all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all inventory, equipment, accounts, and general intangibles of the bankruptcy estate of Debtor (collectively, the "DIP Loan Collateral"), which security interests and liens shall be senior and prior to all other liens, security interests and claims, including without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non consensual lien, levy or attachment (the "Superpriority Lien"), except that the Superpriority Lien in the DIP Loan Collateral shall have priority over the Irby Collateral only to the extent of $500,000.00.

19. Irby has agreed that the collateral securing the DIP Loan will be senior and prior to the collateral securing his loan to Warehouse 86, LLC up to the amount of $500,000.00.

-6-

20. The interests of Irby and any other holder of any lien against the DIP Loan Collateral, if any, that suffer a loss of priority as a result of the first priority security interests and liens proposed to be granted to DIP Lender in the DIP Loan Collateral will be adequately protected with respect to such loss of priority in that, among other reasons, (i) the financing provided by DIP Lender will allow Debtor to remain in continuous operation and to maintain the going concern value of the DIP Loan Collateral, which going concern value would be reduced to a far lesser liquidation value in the event that Debtor did not have the financing provided by DIP Lender, to the detriment of the other holders of liens against the DIP Loan Collateral, and (ii) Debtor's use of the DIP Loan proceeds will protect, preserve, augment, replace and maintain the DIP Loan Collateral.

21. In no event shall any lien or security interest granted to DIP Lender pursuant to any of the DIP Loan Documents, or conferred upon DIP Lender, be subject to any lien or security interest that is avoided and preserved for the benefit of Debtor's estate under Section 551 of the Bankruptcy Code; and in no event shall any person or entity who pays (or, through the extension of credit to Debtor, causes to be paid) any of the DIP Loan Debt be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, DIP Lender, by the terms of the DIP Loan Documents, until such time as all of the DIP Loan Debt is paid in full. Nothing herein shall be construed to authorize Debtor to use, sell or otherwise dispose of any assets in violation of the DIP Loan Documents.

22. No costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 case and no priority claims are or will be prior to or on a parity with the claims of the DIP Lender against

Debtor on account of the DIP Loan Debt. Without limiting the generality of the foregoing in no event shall any costs or expenses of administration be imposed upon DIP Lender or any of the DIP Loan Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of DIP Lender and no such consent shall be implied from any action, inaction or acquiescence by any of them.

23. Notwithstanding the Superpriority Lien sought for DIP Lender herein, Debtor shall be permitted to pay, as the same may become due and payable: (i) the amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (ii) administrative expenses of the kind specified in 11 U.S.C. § 503(b) incurred in the ordinary course of Debtor's business and, likewise, shall have the right to use in the ordinary course of Debtor's business all cash collateral generated post-petition.

24. Nothing contained in this Motion shall be construed to require DIP Lender to make any additional loans or lines of credit to Debtor.

25. The DIP Loan Debt shall be due and payable, and will be paid, as and when provided in the DIP Loan Documents. In no event shall Debtor be authorized to offset any amount due or allegedly due or owing by DIP Lender to Debtor against any of the DIP Loan Debt without the express written consent of DIP Lender.

26. Upon entry of an order approving the Motion, Debtor shall execute and deliver to DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may request to effectuate, evidence, confirm, validate or perfect the security interests and liens provided for herein and granted pursuant to any DIP Loan Documents, including, without limitation, mortgages, UCC-1 financing statements, amendments, lock-box agreements and dominion account agreements. DIP Lender shall not be required to file any UCC-1

financing statements or any other document or take any other action (including possession of any of the DIP Loan Collateral) in order to validate or perfect the security interests and liens granted to it hereunder or under any DIP Loan Documents, as all such liens and security interests shall be deemed automatically perfected by and upon entry of and this Order.

27. Nothing herein shall be deemed to be a waiver by DIP Lender of its rights to request additional or further protection of its interests in any property of Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the dismissal of the case, or to request any other relief in these cases, nor shall anything herein constitute an admission by DIP Lender of the quantity, quality or value of any DIP Loan Collateral securing the DIP Loan Debt or constitute a finding of adequate protection with respect to the interests of DIP Lender in any DIP Loan Collateral. DIP Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the DIP Loan Collateral, to the extent that the protection afforded by any order of this Court regarding DIP Lender's interests in any DIP Loan Collateral proves to be inadequate.

28. Representatives of DIP Lender shall be authorized to visit and remain on the business premises of Debtor at any time or times to inspect the assets of Debtor and to verify or to obtain supporting details concerning the financial information to be provided to DIP Lender hereunder.

29. If, at any time during the Chapter 11 case, security interests or liens in or to any of the DIP Loan Collateral are granted (other than purchase money security interests attaching solely to that portion of the DIP Loan Collateral acquired with purchase money financing) by Debtor to other persons pursuant to Section 364(d) of the Bankruptcy Code, which security

interests or liens are senior to or on a parity with the security interests, liens or title of DIP Lender therein or thereon, then the proceeds of any loans, advances or other indebtedness secured by such senior or parity security interests or liens shall be applied to satisfy the DIP Loan Debt in such order as DIP Lender shall, in its sole discretion, elect. DIP Lender shall be given at least ten (10) days prior written notice and an opportunity for a hearing before the granting by Debtor or by this Court to other parties of any such senior or parity security interests or liens.

30. Debtor shall not, directly or indirectly, create, incur, assume or permit to exist any security interest, encumbrance, lien or other security arrangement of any kind, on or with respect to any of its assets, or take or fail to take any action which would grant or create a lien or security interest in favor of any person in such assets.

31. A condition precedent to DIP Lender's agreement to make the DIP Loan is the entry of an order approving the Motion in form and content satisfactory to DIP Lender. The DIP Lender has approved the form and content of this Order as evidenced by its counsel's approval thereof.

32. DIP Lender is extending credit and making loans to the Debtor in good faith. Accordingly, DIP Lender is entitled to the full protection of Bankruptcy Code Section 364(e) with respect to the amounts advanced under the DIP Loan.

33. To operate and maintain the going concern value of its business, Debtor must secure the interim financing pursuant to the DIP Loan Agreement to pay expenses occurring in the operation and management of Debtor's business and to pay expenses in connection with the administration and protection of Debtor's estate. This is vital for the preservation the value of Debtor's business as a going concern.

34. Debtor's need for post-petition financing, while critical and potentially threatening to the viability of the estate, is finite and for a very short term. Consequently, the benefit to the estate of the DIP Loan is one that is necessary to the reorganization and provides imposition of terms that, in comparison to the harm to the estate if such credit is not provided immediately, are minimally burdensome to the interests of all interested parties herein.

35. Based on the foregoing, approval of the DIP Loan Agreement is in the best interests of Debtor, Debtor's estate and Debtor's creditors. The DIP Loan Agreement represents the most favorable terms under which Debtor can obtain financing necessary to continue operations and preserve the value of its estate for creditors. The DIP Loan Agreement is fair and reasonable and represents the sound exercise of Debtor's judgment. The DIP Loan Agreement was negotiated in good faith between the parties at arms-length. Accordingly, the parties to the DIP Loan Agreement are entitled to protections of Section 364(e) of the Bankruptcy Code.

IT IS THEREFORE ORDERED as follows:

A. The DIP Loan Agreement is hereby approved on an interim basis;

B. The Debtor is authorized to obtain credit pursuant to the DIP Loan Agreement as necessary to avoid immediate and irreparable harm pending a final hearing of the Motion.

C. The parties have acted in good faith and are protected by the provisions of Section 364(e) of the Bankruptcy Code;

D. By separate Order, a final hearing on the Motion will be set for December 2, 2008 at 11:00 a.m.

SO ORDERED, this the 7th day of November, 2008.

_____
EDWARD ELLINGTON
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM:

_____
Stephen W. Rosenblatt (MS Bar No. 5676)
Attorney for Debtor

_____ by permission
Richard A. Montague, Jr.
Attorney for Secured Creditor, Stuart M. Irby

_____
E. Franklin Childress, Jr.
Michael B. Chance
Attorneys for DIP Lender

_____
Ronald H. McAlpin
Office of the United States Trustee

Jackson 3435224v.1

# CERTIFICATE OF NOTICE

```
District/off: 0538-3           User: dsawyer              Page 1 of 1              Date Rcvd: Nov 07, 2008
Case: 08-03423                 Form ID: pdf012            Total Served: 1

The following entities were served by first class mail on Nov 09, 2008.
dbpos         +Warehouse 86, LLC,   5 River Bend Place, Ste D,   Flowood, MS 39232-7618

The following entities were served by electronic transmission.
NONE.                                                                                                TOTAL: 0

            ***** BYPASSED RECIPIENTS *****
NONE.                                                                                                TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Nov 09, 2008**            **Signature:**    _Joseph Speetjens_