IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WAREHOUSE 86, LLC** | ) | CASE NO. 08-03423-EE |
| | ) | **Chapter 11** |
| **Debtor** | ) | |
| _____ | ) | |

**ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO SELL ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
OUTSIDE OF THE ORDINARY COURSE OF BUSINESS AND ASSUMING AND
ASSIGNING CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS
PURSUANT TO 11 U.S.C. §§ 105, 363, and 365**
[Dkt. # 32]

This cause came on for hearing on the *Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 U.S.C. §§ 105, 363 and 365* (the "Sale Motion") (Dkt. #32) filed by Warehouse 86, LLC, the Debtor and debtor-in-possession herein (the "Debtor" or the "Company"), by its attorneys. The Court, having considered the Sale Motion and being otherwise being duly advised of the premises, and finding that no objections were timely filed to the Sale Motion, hereby finds and concludes as follows:

1. On November 4, 2008 (the "Petition Date"), the Debtor initiated this bankruptcy case (the "Bankruptcy Case") when it filed its Voluntary Petition under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manages its properties and assets as debtor-in-possession.

2. An official committee of unsecured creditors (the "Committee") was appointed in the Bankruptcy Case on or about November 19, 2008 (Dkt. # 62).

- 1 -

3. This Court has jurisdiction over this matter pursuant to 28 U. S. C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§105, 361, 363, 365, 1107, as well as various orders of reference, and also Bankruptcy Rules 6004 and 2002. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N) and (O).

4. The Debtor is an on-line or internet auction business which operates its business from its leased offices in Flowood, Mississippi and Memphis, Tennessee, as well as from a leased warehouse facility in Memphis, Tennessee. While having a promising future, Debtor has suffered several significant setbacks in the past two years, as more particularly set forth in the Sale Motion. Based on these setbacks, among others, the Debtor has been unable to stabilize its position with its customers and its vendors, and its operations have suffered.

5. As a result, the Debtor concluded that its best course of action to realize the full value for its on-line auction business for the best interest of its creditors and parties in interest was to sell its business as a going concern to a buyer who could supply both the capital and management expertise necessary for the Company to succeed and to realize its full potential.

6. To that end, the Company explored various investors, lenders and acquisition partners during 2008, and only shortly prior to filing the Bankruptcy Case found a potential buyer who was willing and able to offer a sufficient amount in a transaction that could (a) satisfy the demands of the Company's principal secured creditor who holds a perfected security interest in substantially all of the Company's assets and (b) provide any return to unsecured creditors.

7. The Company secured such a purchaser, Warehouse Ventures 86, LLC, a Delaware limited liability company (the "Buyer"). The Company also negotiated for and obtained debtor-in-possession financing from the Buyer's principal, Kenneth May, in order to keep the Company

operating and viable between the Petition Date and the closing of the sale of substantially all of the Company's assets.

8. The potential purchaser, Warehouse86 Ventures, LLC, intends to employ the principals of the Debtor, specifically, Paul St. James, Joy St. James and Ernest K. Strahan III, in its ongoing operations. These individuals will likewise have an ownership interest in the Buyer, specifically, each with a 10% Class B membership interest (profits or financial rights only).[1]

9. The Debtor and Buyer have agreed on the terms and conditions under which the Buyer will agree to purchase certain Assets of the Company for a total consideration of up to One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) (the "Purchase Price"), subject to Court approval. The parties memorialized that agreement in a written Asset Purchase Agreement (the "APA"), a copy of which executed by the Buyer is attached as Exhibit "A" hereto. The assets being sold to Buyer are more particularly described in the APA (hereinafter collectively referred to as the "Purchased Assets"). The APA was negotiated in good faith and at arms' length between the Debtor and the Buyer.

10. The assets of the Debtor are collateral for a secured loan (the "Irby Loan") from Stuart M. Irby ("Irby") in the amount of approximately One Million Two Hundred Thirty Six Thousand Seven Hundred Fifty Six and 12/100 Dollars ($1,236,756.12) (the "Irby Indebtedness"). The Irby Indebtedness is secured by, among other things, all "accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property. . ." of Warehouse

---

[1] The Buyer has indicated that it intends to retain Paul St. James as the Chief Technology Officer, Joy St. James as the Chief Operating Officer and Ernie Strahan as the Chief Financial Officer. Paul St. James will have an 18-month employment agreement, including a non-disclosure/non-compete agreement and Joy St. James and Ernie Strahan will have 12-month employment agreements. All three will be subject to a quarterly divesting of their 10% Class B Interest should they leave the Buyer prior to the end of their respective 18- or 12-month employment contracts. Their salaries with the Buyer each will be $16,000.00 per month.

86, LLC, as evidenced by the Note, Security Agreement and Financing Statement (the "Irby Loan Documents"). The Debtor has stipulated and agreed that the Irby Indebtedness is valid and enforceable, and that the liens and security interests of Irby in the Irby Pre-Petition Collateral are valid and properly perfected and senior in priority to those held by all others, except with respect to any superpriority lien or security interest granted by the Court to DIP Lender in connection with the DIP Loan previously approved by the Court. The Debtor obtained authority to use the Cash Collateral of Irby for its interim operations from the Petition Date until the date of the Closing of the sale of the Purchased Assets (Dkt. # 036).

11. Recognizing that the amount generated by the use of Cash Collateral will not be sufficient, this Court also entered an Order authorizing the Debtor to obtain a DIP Line of Credit in the amount of up to Five Hundred and no/100 Dollars ($500,000.00) for Debtor's use pursuant to the terms and requirements of the DIP Loan Documents (Dkt. #037). The DIP Loan is secured by a Superpriority Lien on all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property of the bankruptcy estate of Debtor, but not including any recovery actions of any of Debtor's estate under Chapter 5 of the Bankruptcy Code.

12. Buyer is willing to purchase the Purchased Assets of the Company for total consideration of up to $1,350,000.00 (the "Sale Price"), payable as follows:

- (A) $750,000.00 to Irby in satisfaction of the Irby Indebtedness, which shall be paid by Buyer to Irby pursuant to a Note in substantially the form attached to the Motion as Exhibit "B," which Note is to be personally guaranteed by Kenneth May;

- (B) Up to $500,000.00 to repay the DIP Loan of the Debtor; and

- (C) $100,000.00 to the Debtor's bankruptcy estate.

13. The Debtor is authorized, empowered, and directed pursuant to Section 365(a) of the Bankruptcy Code, to assume the Assumed Unexpired Leases and Executory Contracts listed on Exhibit "B" hereto ("Assumed Leases and Contracts"), and to assign the Assumed Leases and Contracts to the Buyer. Pursuant to the APA, the Buyer shall cure any material defaults of any Assumed Leases and Contracts prior to the Closing.

14. The Debtor has drawn or will draw on the DIP loan for all anticipated operating expenses incurred prior to the Closing of the sale of the Purchased Assets, including all ad valorem taxes owed on any of the Purchased Assets.

15. The total consideration to be paid for the Purchased Assets is fair and adequate consideration for the Purchased Assets, particularly since the sale is not subject to a financing contingency and has only minimum conditions precedent to closing.

16. The Buyer has placed in trust with the Debtor's counsel a deposit of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Deposit") in support of its obligations under the Agreement. Upon the closing of the sale of the Purchased Assets and the payment in full of the Sale Price at Closing, the Deposit shall be returned to the Buyer.

17. The sales process provided for a prompt sale, and a fair, open and transparent process that will lead to the highest and best purchase offer for the Assets. The sales procedures clearly delineated a structured process for the solicitation, negotiation and proposition of bids, and auction, for the Assets.

18. The Debtor has advanced sound business reasons for seeking to sell the Purchased Assets, including reasons for the sale of the Assets as a whole, rather than sale of portions thereof to different persons, and that it is a reasonable exercise of the Debtors' business judgment to enter into the sale of the Assets as defined in the APA and to take all additional actions necessary or required to

execute, deliver and perform its obligations under the APA and the terms, conditions and provisions of this Order. Here, the Debtor lacks financial resources to continue its operations without either an investment of new capital or obtaining a significant loan, neither of which was likely to occur. The Debtor had little or no money or any means to obtain money to pay its existing creditors and its ongoing operating expenses apart from the sale of its Assets.

19. The sale of the Purchased Assets to the Buyer on the terms and conditions set forth in the Sale Motion and the APA is fair and reasonable and should be approved since there was no other Qualified Bidder as set forth in the Sale Motion and since no higher and better Qualified Bid was offered by another party by the Bid Deadline, as required by the Sale Motion. The price obtained is a fair and reasonable price for the Purchased Assets under the circumstances in which the Debtor finds itself. This sale of the Purchased Assets under Section 363(f) of the Bankruptcy Code maximizes value for the benefit of creditors and parties in interest.

20. The Excluded Assets which the Buyer will not purchase in this sale are described in the List attached as Exhibit "C."

21. The Debtor shall file with the Court within ten (10) business days from the Closing of the sale of the Purchased Assets a report of the Closing of the sale of the Purchased Assets, including any assets initially listed as a Purchased Asset to the list of Excluded Assets.

22. The sale of the Assets to the Buyer is not a *sub rosa* plan in that the proceeds of the sale will be distributed to creditors and parties in interest according to the priorities established by the Bankruptcy Code, including those provided for herein.

23. The sale of the Purchased Assets to the Buyer shall be free and clear of any liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f), with all liens, claims, interests and encumbrances attaching to the proceeds of the sale. The transfer of the Purchased Assets will

not subject the Buyer to any liability for claims against the Debtor or any of the Debtor's affiliates of any kind or character. The free and clear delivery of the Purchased Assets pursuant to 11 U.S.C. § 363(f) shall include, but not be limited to, all asserted or unasserted, known or unknown, employment-related claims, payroll taxes, employee contracts, and any successor liability accrued up to the date of closing of such sale. All persons are enjoined from pursuing any claims against the Buyer to recover on claims against the Debtor, its estate, its principals.

24. With respect to the secured Irby Loan, at the Closing of the Sale of the Purchased Assets by the Debtor to the Buyer:

(A) Buyer will execute (1) a promissory note in favor of Irby with the following terms: principal amount of $750,000.00, interest accruing at 15% per annum, no regularly scheduled payments required, a three (3) year maturity, with Buyer having the right to prepay at anytime without penalty (the "New Irby Loan") and (2) a security agreement granting Irby a first priority lien on the Purchased Assets;

(B) Kenneth May will execute a guaranty, personally guarantying the repayment of the New Irby Loan; and

(C) Irby will (1) cancel and mark "paid" the Note evidencing the Irby Loan to the Debtor; (2) terminate the Security Agreement dated July 1, 2006; (3) terminate that certain Continuing Guaranty of Paul Thomas St. James, Joy Diane St. James, and Ernest K. Strahan, III dated June 22, 2006 and the Continuing Guaranty of Louis E. Sagar dated August 22, 2008; and (4) release the UCC-1 financing statement of record at Instrument No. 200614332004 in the Arizona Secretary of State's Office upon Buyer's acquisition of the Assets.

25. In the absence of a stay pending appeal, the Debtor and the Buyer will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the APA immediately upon entry of this Order, or at such other time as the parties can mutually agree (the "Closing"). The Buyer will have purchased the Purchased Assets in good faith and for value, and therefore is entitled to the protections of 11 U.S.C. § 363(m) of being a good faith purchaser with respect to the Assets since (a) the purchase was pursuant to an open and impartial sales procedure set forth in the Sale Motion; (b) there was no relationship or affiliation

between the Buyer and the Debtor, and the only ongoing relationship will be the Buyer's employment of three of the principals of the Debtor and their minority equity interest in Buyer, as more particularly set forth hereinabove; (c) the Buyer is not an insider of the Debtor, as that term is defined in section 101(30) of the Bankruptcy Code; (d) there was no evidence of fraud or collusion between the Buyer and the Debtor or between the Buyer and any other potential bidders; and (e) there was no evidence that the Buyer engaged in any conduct that was intended to control or to depress the sales price or acted in any way that cast any dispersion on the integrity of its conduct in the course of the sales proceedings.

26. The form, manner, scope and substance of the proposed notice: (a) fairly apprised creditors and other interested parties of the proposed sale of the Purchased Assets; (b) was served on all creditors and parties-in-interest; and (c) was appropriate and sufficient under the circumstances of this case and in accordance with the Bankruptcy Rules and 11 U.S.C. § 363(b). Proper notice of the hearing on the Sale Motion was provided by the Debtor and was adequate under the circumstances and thus satisfies Fed. R.Bank. P. 2002, 6004, 6006, 7004, 9008 and 9014.

27. As a result, the notice of the sale of the Purchased Assets given to creditors and parties-in-interest is sufficient to bar past, present and future claimants from objecting to the sale of Purchased Assets after the Objection Deadline. Therefore, notice is clearly sufficient so that the Buyer shall purchase the Purchased Assets free and clear of liens, claims, interests and encumbrances.

28. Any entity or person in possession of any of the Purchased Assets sold shall turn over and surrender possession of such Purchased Assets to the Buyer.

29. This Court shall retain jurisdiction to the extent necessary to enforce and implement the provisions of the APA, to compel payment of the purchase price or performance of other

obligations owed to the Debtor, to compel the delivery of the Purchased Assets to the Buyer, to resolve any disputes arising under or related to the APA involving the Debtor, and to enforce, implement and interpret the provisions of this Sale Order.

30. The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its bankruptcy estate, and its creditors, the Buyer, and its respective affiliates, successors and assigns and any affected third parties (including, but not limited to, all persons asserting liens, claims, interests or encumbrances in the Purchased Assets to be sold to the Buyer pursuant to the APA), notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

IT IS, THEREFORE, ORDERED that the Debtor be and it is hereby authorized to sell the Purchased Assets free and clear of all liens, claims, interests and encumbrances outside of the ordinary course of business to Warehouse86 Ventures, LLC, a Delaware limited liability company, under the terms of the APA and as set forth in this Order for the consideration of up to $1,350,000.00 as more particularly set forth herein.

IT IS FURTHER ORDERED that the Debtor is authorized, empowered, and directed pursuant to Section 365(a) of the Bankruptcy Code, to assume the Assumed Unexpired Leases and Executory Contracts listed on Exhibit "B" hereto ("Assumed Leases and Contracts"), and to assign the Assumed Leases and Contracts to the Buyer, and that, pursuant to the APA, the Buyer shall cure any material defaults of any Assumed Leases and Contracts prior to the Closing.

IT IS FURTHER ORDERED that any of the Debtor's officers and each of the parties who are required to execute and deliver certain documents at Closing are hereby authorized and directed to

execute such documents as may be reasonably necessary to consummate the sale of the Purchased Assets to Warehouse86 Ventures, LLC on the terms and conditions hereby approved.

IT IS FURTHER ORDERED that the Debtor shall place the $100,000.00 paid to the bankruptcy estate as part of the proceeds of the sale of the Purchased Assets in an account to be established by the Debtor-in-Possession, which moneys shall be disbursed only upon further Order of this Court, after notice and a hearing to creditors and parties in interest.

SO ORDERED, this the 10th day of December, 2008.

EDWARD ELLINGTON
UNITED STATES BANKRUPTCY JUDGE

APPROVED FOR ENTRY:

STEPHEN W. ROSENBLATT
ATTORNEY FOR DEBTOR


See attached
E. FRANKLIN CHILDRESS, JR.
ATTORNEY FOR BUYER


See attached
OFFICE OF UNITED STATES TRUSTEE

execute such documents as may be reasonably necessary to consummate the sale of the Purchased Assets to Warehouse86 Ventures, LLC on the terms and conditions hereby approved.

IT IS FURTHER ORDERED that the Debtor shall place the $100,000.00 paid to the bankruptcy estate as part of the proceeds of the sale of the Purchased Assets in an account to be established by the Debtor-in-Possession, which moneys shall be disbursed only upon further Order of this Court, after notice and a hearing to creditors and parties in interest.

SO ORDERED, this the _____ day of December, 2008.

EDWARD ELLINGTON
UNITED STATES BANKRUPTCY JUDGE

APPROVED FOR ENTRY:

_____
STEPHEN W. ROSENBLATT
ATTORNEY FOR DEBTOR

_____
E. FRANKLIN CHILDRESS, JR.
ATTORNEY FOR BUYER

_____
OFFICE OF UNITED STATES TRUSTEE

execute such documents as may be reasonably necessary to consummate the sale of the Purchased Assets to Warehouse86 Ventures, LLC on the terms and conditions hereby approved.

IT IS FURTHER ORDERED that the Debtor shall place the $100,000.00 paid to the bankruptcy estate as part of the proceeds of the sale of the Purchased Assets in an account to be established by the Debtor-in-Possession, which moneys shall be disbursed only upon further Order of this Court, after notice and a hearing to creditors and parties in interest.

SO ORDERED, this the _____ day of December, 2008.

EDWARD ELLINGTON
UNITED STATES BANKRUPTCY JUDGE

APPROVED FOR ENTRY:

STEPHEN W. ROSENBLATT
ATTORNEY FOR DEBTOR

E. FRANKLIN CHILDRESS, JR.
ATTORNEY FOR BUYER

OFFICE OF UNITED STATES TRUSTEE

- 10 -