## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

In re:                                    )
                                          )
    **WAREHOUSE 86, LLC**          )          **CASE NO.    08-03423-EE**
       **Chapter 11**              )
        **Debtor**               )
_____ )

## ORDER GRANTING MOTION OF PORSCHE FINANCIAL SERVICES
## TO COMPEL ASSUMPTION OF LEASE AGREEMENT AND APPROVING
## <u>ASSUMPTION AND ASSIGNMENT OF LEASE</u>
### [Dkt. ## 069; 082]

This matter came on for hearing on the Motion of Porsche Financial Services to Compel Assumption or Rejection of Lease Agreement and to Lift Automatic Stay (the "<u>Motion</u>") (Dkt. # 069) and the Response to the Motion of Porsche Financial Services to Compel Assumption or Rejection of Lease Agreement and to Lift Automatic Stay (the "<u>Response</u>") (Dkt. # 082) filed by Warehouse 86, LLC, the Debtor and debtor-in-possession herein (the "<u>Debtor</u>"). The Court considered the pleadings and finds that the Debtor is willing to assume that certain Lease Agreement (the "<u>Lease</u>") held by Porsche Financial Services ("<u>Porsche</u>") and that Lease should be assigned to Ernest K. Strahan, III ("<u>Strahan</u>").

1.      On or about December 2, 2006, the Debtor entered into a certain Motor Vehicle Lease Agreement with Gossett Porsche for a 2007 Porsche 911 (VIN WPOCA29977S765065) (the "<u>Vehicle</u>"). A copy of the Lease is attached hereto as Exhibit "A."

2.      The Lease subsequently was assigned by Gossett Porsche to Porsche, which is the present holder of the Lease.

3.      It is in the best interest of the Debtor, as well as the bankruptcy estate and the creditors, for the Debtor to assume the Lease and to assign the Lease to Ernest K. Strahan III ("Strahan").

4.      The assumption and assignment of the Lease will relieve this Chapter 11 bankruptcy estate of this indebtedness and will permit the Debtor to transfer the Vehicle covered by the Lease to Strahan, who is a guarantor of the Lease.

5.      Section 365(a) of the Code requires Court approval for the assumption or rejection of an executory contract or an unexpired lease by a trustee or debtor in possession.

6.      Rule 6006(a) of the Bankruptcy Rules provides that a proceeding to assume, reject, or assign an executory contract, unexpired lease, other than as part of a plan is governed by Bankruptcy Rule 9014, and relief is, therefore, obtained by motion.  Rule 6006(c) provides for the court to set a hearing on notice to the other party to the contract or lease, to parties in interest as the court may direct and to the United States Trustee.  Notice of the entry of this Order is being given to all creditors on the master mailing matrix.

7.      Section 365(b) of the Bankruptcy Code requires the debtor-in-possession to cure any default in the contract or lease, to provide adequate assurance of future performance if there has been a default, and to compensate for pecuniary loss, before he may assume an executory contract.

8.      As of January 8, 2009, there are 23 monthly payments of $1,398.00 each remaining, or a total of $32,154.00.  In addition, the mileage allowance on the Vehicle is 15,000 miles per year.  The Debtor has the right to turn in the car at the end of the lease term without any further obligation or payment provided there is no excessive wear and use and no mileage overage.

9.      Section 365(d)(2) provides that the trustee (or debtor in possession) "may assume or reject an executory contract . . . at any time before the confirmation of a plan ...."  This assumption and assignment of the Lease is therefore timely.

10.      This Court should authorize and direct the Debtor to assume the Lease since there are no defaults under the Lease to be cured prior to its assumption and since it is in the Debtor's best interest to assume and assign the Lease to Strahan.  The Debtor has satisfied the "business judgment" test for the assumption and the assignment of the Lease since the assumption clearly represents sound business judgment on the part of the Debtor in that it no longer has any need for the vehicle covered by the Lease and can relieve the bankruptcy estate of this substantial liability pursuant to Section 365(k),which provides that the assignment of the Lease by the Debtor under Section 365 relieves the Debtor and the bankruptcy estate from any liability for any breach of such Lease occurring after such assignment.

11.      Pursuant to Section 365(f)(2), the Debtor may assign the Lease if it assumes the Lease and provides adequate assurance of future performance under the terms of the Lease. Adequate protection is offered to Porsche by Strahan in that (a) the payments under the Lease are current; (b) since the Petition Date, all payments on the Lease have been made by Strahan and not from the bankruptcy estate; (c) Strahan is in a better financial position that the Debtor to make such monthly payments in the future; (d) Strahan regularly operates and has properly maintained the Vehicle; and (e) the Vehicle is insured.

12.      The Lease shall, upon Assignment to Strahan, be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms notwithstanding any provision in any such Lease (including those of the type described in sections 365(b)(2) and (f)

of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365( k) of the Bankruptcy Code.

13.     Because the Lease is assumed by the Debtor under Section 365(a) and is being assigned to Strahan under Section 365(k), the Lease will no longer be property of the bankruptcy estate and therefore is no longer subject to the automatic stay.  The automatic stay, therefore, is lifted with respect to any subsequent enforcement of the rights of Porsche under the Lease.

14.     Because the Lease is assumed by the Debtor under Section 365(a) and is being assigned to Strahan under Section 365(k), any proof of claim already filed by Porsche that is inconsistent with this Order shall be deemed withdrawn.

15.     The assumption and assignment of the Lease will become effective five (5) business days after the entry of this Order and Strahan without any further documentation being executed by either Porsche or Strahan.

IT IS, THEREFORE, ORDERED as follows:

A.     The Debtor is hereby authorized and directed to assume the Lease as an unexpired lease pursuant to Section 365(d)(2);

B.     There are not defaults under the Lease to be cured since the monthly payments under the Lease are current, the Vehicle is being properly maintained, and the Vehicle is insured.

C.     The net balance due under the Lease is $32,154.00, which is calculated by multiplying the 23 remaining monthly payments by the amount of $1,398.00 for each monthly payment.

D.     The Vehicle must be turned in at the end of the lease term without any excessive wear and use and no mileage over the mileage allowance on the Vehicle of 15,000 miles per

year, or Strahan will be responsible for any such charges in accordance with the terms of the Lease.

E.    Adequate protection is offered to Porsche by Strahan in that (a) the payments under the Lease are current; (b) since the Petition Date, all payments on the Lease have been made by Strahan and not from the bankruptcy estate; (c) Strahan is in a better financial position that the Debtor to make such monthly payments in the future; (d) the subject vehicle is insured; and (e) the interest of Porsche in the vehicle is adequately protected.

F.    Pursuant to Section 365(k), the assignment by the Debtor of the Lease to Strahan under Section 365 relieves the Debtor and the bankruptcy estate from any liability for any breach of such Lease occurring after such assignment.

_Edward Ellington_
Edward Ellington
United States Bankruptcy Judge
Dated: January 15, 2009

APPROVED AS TO FORM FOR ENTRY:

_Stephen W. Rosenblatt_
Stephen W. Rosenblatt (Miss. Bar No 5676)
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, Regions Plaza (39201)
Post Office Box 22567
Jackson, MS 39225-2567
Telephone: (601) 948-5711
Fax: (601) 985-4500
Email: steve.rosenblatt@butlersnow.com
ATTORNEY FOR THE DEBTOR

_____

Larry Spencer, Esq.
King & Spencer
Post Office Box 123
Jackson, MS 39205
lspencerlawyer@aol.com
ATTORNEY FOR PORSCHE

Ronald H. McAlpin GWR by permission
_____

Ronald H. McAlpin, Esq.
Trial Attorney, Office of the United States Trustee
A. H. McCoy Federal Building, Suite 706
100 W. Capitol Street
Jackson, MS 39269
Ronald.McAlpin@USDOJ.gov
OFFICE OF THE UNITED STATES TRUSTEE

12/03/08  12:10 FAX          PORSCHE FIN SYCSORP          @001

*LL 3900 (7/05)                                                         **PORSCHE®**

# MOTOR VEHICLE LEASE AGREEMENT

### I.  LESSEE AND LESSOR.

**LESSEE(S) (and CO-LESSEE, if any) Name and Address**

WAREHOUSE 86 LLC
ERNEST K STRAHAN III
6055 PRIMACY PKWY # 115
MEMPHIS            TN 38119

**LESSOR (Dealer) Name and Address**

GOSSETT PORSCHE
1875 COVINGTON PIKE
MEMPHIS            TN 38128

**VEHICLE'S GARAGING ADDRESS** (if different than Lessee's address)

**DATE**  DECEMBER 2, 2006

**ACCOUNT NUMBER**

**LEASE TERM**  48  months

Lessee(s) and Co-Lessee, if any, (collectively "Lessee," "you" and "your") agree to lease from lessor ("Lessor") the leased vehicle described below ("Vehicle") according to the terms and conditions set forth on the front and back of this lease agreement ("Lease"). You acknowledge that this Lease will be assigned to Porsche Leasing Ltd. or an assignee designated by Porsche Leasing Ltd. (collectively "Assignee").

**This is a Single Payment Lease if this box is checked:** ☐

### 2.  VEHICLE DESCRIPTIONS.

**A.  LEASED VEHICLE.**   ☒ New   ☐ Used      **Primary Use:**  ☒ Personal   ☐ Business

| Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification No. |
|---|---|---|---|---|---|
| 2007 | PORSCHE | 911 | 2DR CNV | 58 | WPOCA29977S765065 |

**B.  TRADE-IN VEHICLE.**

| Year | | Make | | Model |
|---|---|---|---|---|

| **3.  AMOUNT DUE AT LEASE SIGNING OR DELIVERY.** (Itemized below) $ 7,499.76 | **4.  MONTHLY PAYMENTS OR SINGLE PAYMENT.** A. Your first Monthly Payment of $ 1,398.00 is due on DEC 2ND , 06 followed by 47 Payments of $ 1,398.00 due on the 1ST of each month. B. The total of your Monthly Payments is $67,104.00 . C. If this is a Single Payment Lease, your Single Payment of $_____ is due on _____ which is at Lease Signing or Delivery as shown in Section 7(A)(3). | **5.  OTHER CHARGES.** (Not part of your Monthly Payment or Single Payment) A. Termination Fee (If you do not purchase the Vehicle) $ 350.00 B. _____ $_____ C. _____ Total  $ 350.00 | **6.  TOTAL OF PAYMENTS.** (The amount you will have paid by the end of the Lease) $73,555.76 (Section 3 plus Section 4(B) plus Section 4(C) plus Section 5(C) minus Section 7(A)(2) minus Section 7(A)(3)) |
|---|---|---|---|

### 7.  *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY.

**A.  Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| (1) Capitalized Cost Reduction | $ 4,994.00 |
| (2) First Monthly Payment | 1,398.00 |
| (3) Single Payment | N/A |
| (4) Title Fees | 5.00 |
| (5) Registration Fees | 22.50 |
| (6) License Fees | 525.25 |
| (7) Sales or Use Tax | 555.01 |
| (8) | N/A |
| (9) | N/A |
| (10)              Total | $ 7,499.76 |

**B.  How the Amount Due at Lease Signing or Delivery will be Paid:**

| | |
|---|---|
| (1) Net Trade-in Allowance | $ N/A |
| (2) Rebates and Noncash Credits | N/A |
| (3) Amount to be Paid in Cash | 7,499.76 |
| (4)              Total | $ 7,499.76 |

### 8.  YOUR MONTHLY PAYMENT OR SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW:

**A.** Gross Capitalized Cost. The agreed upon value of the Vehicle ($8,760.71 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ........... $89,505.71
If you want an itemization of this amount, please check this box. ☐

**B.** Capitalized Cost Reduction. The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ....... – 4,994.00

**C.** Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment or Base Single Payment ....... $84,511.71

**D.** Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment ....... –47,845.75

**E.** Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ...... = 36,665.96

**F.** Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts ........... + 26,048.16

**G.** Total of Base Monthly Payments or Single Payment. The Depreciation and any Amortized Amounts plus the Rent Charge ........... = 62,714.12

**H.** Lease Payments. The number of payments in your Lease ....... ÷ 48

**I.** Base Monthly Payment or Base Single Payment ...... = 1,306.54

**J.** Administrative Charge ........................... + N/A

**K.** Monthly or Total Sales/Use Tax ................. + 91.46

**L.** _____ + N/A

**M.** Total Monthly Payment ("Monthly Payment") or Total Single Payment ("Single Payment") ............. = $ 1,398.00

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

### 9.  EXCESSIVE WEAR AND USE.
You may be charged for excess wear and use based on our standards for normal use and for mileage in excess of 15000 miles per year at the rate of $0.30 per mile, subject to proration in the event of early termination under Section 21 (D).

### 10.  PURCHASE OPTION AT END OF LEASE TERM.
You have an option to purchase the Vehicle "AS IS" at the end of the Lease Term for the sum of the Residual Value, plus any past due Monthly Payments and any other amount due under this Lease, plus any official fees, taxes and other charges related to purchase of the Vehicle.

**Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties and default charges, insurance, and any security interest, if applicable.

**Pennsylvania Notice:** If you do not meet your Lease obligations, you may lose the Vehicle.

**AK, OR, and SD Notice:** If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.

### 11.  ESTIMATED OFFICIAL FEES AND TAXES.
The estimated amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your Monthly Payments or Single Payment or assessed otherwise.

### 12.  WARRANTIES.
If the Vehicle is new, it is covered by the standard manufacturer's new warranty. If the vehicle is used, it is only covered by the express warranty identified below:
☒ The Vehicle is covered by the remainder of the standard manufacturer's



**EXHIBIT**
A

12/03/08  12:11 FAX          PORSCHE FIN SVCSORP                    @002

|  | | | | minus Section 7(A)(2) |
|---|---|---|---|---|
| | | Signing or Delivery as shown in Section 7(A)(3). | or at lease signing or delivery. | minus Section 7(A)(3) |

**7.** *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY.*

**A. Amount Due at Lease Signing or Delivery:**      **B. How the Amount Due at Lease Signing or Delivery will be Paid:**

| | | | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 4,994.00 | | |
| (2) First Monthly Payment | 1,398.00 | (1) Net Trade-in Allowance | $ N/A |
| (3) Single Payment | N/A | | |
| (4) Title Fees | 5.00 | (2) Rebates and Noncash Credits | N/A |
| (5) Registration Fees | 22.50 | | |
| (6) License Fees | 525.25 | (3) Amount to be Paid in Cash | 7,499.76 |
| (7) Sales or Use Tax | 555.01 | | |
| (8) | N/A | | |
| (9) | N/A | | |
| (10) Total | $ 7,499.76 | (4) Total | $ 7,499.76 |

**8.** YOUR MONTHLY PAYMENT OR SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW:

**A.** Gross Capitalized Cost. The agreed upon value of the Vehicle ($68,760.71 ____) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ..........  **$89,505.71**
If you want an itemization of this amount, please check this box. □

**B.** Capitalized Cost Reduction. The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ....... **– 4,994.00**

**C.** Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment or Base Single Payment ... **84,511.71**

**D.** Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment ........ **– 47,845.75**

**E.** Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ...  **= 36,665.96**

**F.** Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts ...........  **+ 26,048.16**

**G.** Total of Base Monthly Payments or Single Payment. The Depreciation and any Amortized Amounts plus the Rent Charge ..............................................  **= 62,714.12**

**H.** Lease Payments. The number of payments in your Lease  **÷ 48**

**I.** Base Monthly Payment or Base Single Payment ......  **= 1,306.54**

**J.** Administrative Charge ..............................  **+ N/A**

**K.** Monthly or Total Sales/Use Tax .....................  **+ 91.46**

**L.** ..................................................  **+ N/A**

**M.** Total Monthly Payment ("Monthly Payment") or Total Single Payment ("Single Payment") = **$ 1,398.00**

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**9.** EXCESSIVE WEAR AND USE. You may be charged for Excess Wear and Use based on our standards for normal use and for mileage in excess of ____ 15,000 ____ miles per year at the rate of $0.30 per mile, subject to proration in the event of early termination under Section 21 (D).

**10.** PURCHASE OPTION AT END OF LEASE TERM. You have an option to purchase the Vehicle "AS IS" at the end of the Lease Term for the sum of the Residual Value, plus any past due Monthly Payments and any other amount due under this Lease, plus any official fees, taxes and other charges related to purchase of the Vehicle.
**Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

Pennsylvania Notice: If you do not meet your Lease obligations, you may lose the Vehicle.
AK, OR, and SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.

**11.** ESTIMATED OFFICIAL FEES AND TAXES.
The estimated amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your Monthly Payments or Single Payment or assessed otherwise:

A. Estimated Sales/Use Tax      $ 4,945.09

B. Estimated Personal Property, Excise or Other Taxes      $ N/A

C. Estimated License, Registration and Certificate of Title Fees      $ 616.00

D. Total of Estimated Official Fees and Taxes      $ 5,561.09

The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

**12.** WARRANTIES.
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the vehicle is used, it is only covered by the express warranty(ies) identified below:

☒ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by the standard manufacturer's used vehicle warranty.

Lessor assigns to you all rights Lessor has under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**You are leasing the Vehicle "AS-IS." Lessor makes no warranties or representations, either express or implied as to the Vehicle or any part or accessory thereof. Lessor makes no warranty of merchantability or fitness of the Vehicle for any particular purpose or any other representation or warranty whatsoever. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not exclude any implied warranty of merchantability or fitness for a particular purpose.**

**13.** SIGNATURES. WAREHOUSE 86 LLC
YOU AGREE TO ALL PROVISIONS OF THIS LEASE INCLUDING THOSE ON THE REVERSE SIDE HEREOF WHICH ARE INCORPORATED HEREIN BY REFERENCE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE.
YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.

| INDIVIDUAL LESSEE(S) | | Co-Lessee's Signature | |
|---|---|---|---|
| — Lessee Signature — | X | — | |
| X | | (Print) | (Title) |
| BUSINESS LESSEE | | Authorized Signer's Name | |
| — Business Name — (Print) | ERNEST K. STRAHAN II | | CFO |
| WAREHOUSE 86 LLC | X | (Print) | (Title) |

**LESSOR**
The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; and (2) assigning all right, title and interest in this Lease, the Vehicle and the Guaranty, if any, to the Assignee according to the terms and conditions of the Porsche Financial Services, Inc. - Dealer Agreement between Lessor and Assignee.

— Lessor (Dealer) Name —       Signature and Title of Authorized Representative

(Print)  GOSSETT PORSCHE      X

SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Original to PLL      Copy to Lessee      Copy to Co-Lessee      Copy to File

PLL 3300 (7/06) - MOTOR VEHICLE LEASE AGREEMENT

12/03/08   12:12 FAX              PORSCHE FIN SVCSORP                    ☑003

## ADDITIONAL TERMS AND CONDITIONS

FLL 3300 (7/06) (Back)

**14. LATE CHARGE; RETURNED INSTRUMENT CHARGE.**
If all or any portion of a Monthly Payment is not received within 10 days after it is due, you will pay a late charge of 5% of the scheduled payment. This late charge will not exceed $25 if you sign this Lease in Kansas and it is subject to the Kansas Consumer Credit Code. If you sign this Lease in Maine and it is subject to the Maine Consumer Credit Code, the late charge will not exceed $10 and will only be due if all or any portion of a Monthly Payment is not received within 15 days after it is due. If you sign this Lease in Iowa and it is subject to the Iowa Consumer Credit Code, a late charge will not be assessed.

If any check, draft or order or other similar instrument is returned to Lessor unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $15, to the extent allowed by applicable law.

**15. INSURANCE.**
You agree to provide insurance coverage in the amount and types indicated below at your expense during the Lease Term.
  A. comprehensive fire, theft and combined additional coverage insurance with a deductible of not more than $1,500;
  B. collision and total personal injury with a deductible amount of not more than $1,500; and
  C. automobile liability insurance with limits of not less than $100,000 for any one person for bodily injury or death, and $300,000 for any one accident for bodily injury or death, and $50,000 for property damage, or $300,000 Combined Single Limit coverage. If the Vehicle is titled, licensed and registered in Florida, Combined Single Limit coverage must be a minimum of $500,000.

You agree that all insurance will protect Lessor and you will name Assignee as additional named insured and loss payee. You agree to provide Lessor with all information it requests regarding the insurance and any claim that might arise from the use or maintenance of the Vehicle. You agree to provide Lessor with a copy of the insurance policy that insures the Vehicle.

The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. Lessor may for reasonable cause decline the insurance provided by you.

If the vehicle insurance is cancelled for any reason, you agree to immediately obtain new insurance on the Vehicle and provide a copy of the insurance policy to Lessor. You agree not to operate the Vehicle during the time that it is not insured. In the event of a loss, you hereby assign to Lessor any monies payable under such insurance policy. You agree that Lessor may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such monies. You also agree that Lessor may settle or release any claim to such insurance proceeds.

No physical damage or liability insurance coverage for bodily injury or property damage caused to others is included in this Lease.

NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

**16. VEHICLE OPERATION.**
  A. VEHICLE MAINTENANCE AND OPERATING COSTS. You are responsible for the maintenance and servicing of the Vehicle. You agree to keep the Vehicle in good condition and operating order. You agree to service and repair the Vehicle according to the maintenance program required by the manufacturer of the Vehicle and to ensure that the warranty, if any, remains valid. You agree to comply with all manufacturer recall notices. You agree to pay the cost of maintenance, repair and operating expenses.

  B. VEHICLE USE. You agree to:
    (1) not allow, if the Lessee is an individual, anyone other than you or your spouse (provided that both you and your spouse are properly insured and maintain a valid, unrestricted drivers license) to operate the Vehicle;
    (2) allow Lessor to inspect the Vehicle at any time during the Lease Term, upon reasonable notice;
    (3) keep the Vehicle free from the claims of others;
    (4) not use the Vehicle for any unlawful or improper purpose or for hire;
    (5) not use the Vehicle in any daily rental enterprise;
    (6) not use the Vehicle to push, pull or otherwise tow any objects, unless the Vehicle is a sport utility vehicle which has been equipped with the Porsche Towing System and is operated in accordance with the manufacturer's owner's manual;
    (7) not remove the Vehicle from the United States;
    (8) not alter, mark or install equipment in the Vehicle without Lessor's written consent and you agree to remove same and replace with original manufacturer equipment at your sole cost;
    (9) maintain the Vehicle in compliance with all federal, state and local laws and regulations regarding its operating condition;
    (10) not use the Vehicle in any form of auto racing; and
    (11) not use the Vehicle in any off-road activity, unless the Vehicle is a sport utility vehicle.

  C. TAXES, REGISTRATION AND TITLING. You agree to pay all sales, use, personal property and other taxes, and all fees and charges that are levied in connection with this Vehicle, or its use during the Lease Term. You will also pay all taxes that are charged to Lessor by reason of its interest in the Vehicle except for taxes based on net income. The Vehicle will be licensed, titled and registered as directed by Assignee. You agree to pay all license, title and registration costs, and other official fees. If you relocate to another state during the Lease Term, you agree to notify Assignee immediately of such relocation. You agree to re-register and re-title the Vehicle within 30 days of relocation or within applicable statutory times, whichever is less. You agree to pay all fees, registration and re-titling costs and fees in that state, and any late fees, penalties or other fees incurred due to failure to re-register and/or re-title the Vehicle.

**17. OPTION TO PURCHASE.**
  A. END OF LEASE TERM. At scheduled lease termination, you may purchase the Vehicle "AS IS" for a sum equal to:
    (1) The Residual Value;
    (2) Plus any past due Monthly Payments and any other amount due under this Lease;
    (3) Plus any official fees, taxes and other charges related to purchase of the Vehicle.

  B. PRIOR TO END OF LEASE TERM. You have an Option to Purchase the Vehicle "AS IS" at any time prior to the end of the Lease Term. You must notify Lessor at least 10 days before you exercise the Option to Purchase. If you exercise the Option to Purchase at any time prior to the end of the Lease Term, you agree to pay Lessor a sum equal to:
    (1) Any past due Monthly Payments and any other amount due under this Lease;
    (2) Plus any official fees, taxes and other charges related to the purchase of the Vehicle;
    (3) Plus the Residual Value;
    (4) Plus the Base Monthly Payment times the number of Monthly Payments not yet due (not applicable if this is a Single Payment Lease);
    (5) Minus unearned Rent Charges calculated according to the actuarial method. The term "actuarial method" means the method of allocating Base Monthly Payments (or the Single Payment divided by the Lease Term) between: (i) the reduction of the Adjusted ...

termination, Lessor shall be entitled to the following charges: (1) the Early Termination Liability as defined below; plus (2) reasonable expenses, if any, incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it; plus (3) if Lessor hires an attorney who is not a salaried employee of Lessor to collect what you owe, you agree to pay reasonable attorneys' fees.

  C. EARLY TERMINATION LIABILITY. The early termination liability ("Early Termination Liability") is calculated as follows:
    (1) The Termination Fee;
    (2) Plus any past due Monthly Payments and any other amount due under this Lease;
    (3) Plus any official fees and taxes related to early termination;
    (4) Plus the Residual Value;
    (5) Plus the Base Monthly Payment times the number of Monthly Payments not yet due (not applicable if this is a Single Payment Lease);
    (6) Minus unearned Rent Charges calculated according to the actuarial method. See the description of the "actuarial method" in Section 17(B)(5) above.
    (7) Minus the Realized Value of the Vehicle, which is the net amount, if any, Lessor receives from the sale of the Vehicle sold at wholesale in a commercially reasonable manner;
    (8) Minus any payments received by Lessor under any insurance policy on the Vehicle that have not been used to repair or replace the Vehicle.

If you disagree with the Realized Value of the Vehicle, within 15 days after you are given notice of your Early Termination Liability, you may obtain, at your own expense, from an independent third party agreeable to both you and Lessor, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

  D. REMAINING PAYMENTS LIABILITY. If you are not in default, you have the option to terminate this Lease at any time if you return the Vehicle to Lessor at the location you specify and pay us upon demand the following amounts instead of the Early Termination Liability:
    (1) The Termination Fee;
    (2) Plus any Monthly Payments that have become due and are unpaid at termination;
    (3) Plus any remaining Monthly Payments from the date of termination to the end of this Lease;
    (4) Plus any other amounts you owe under this Lease;
    (5) Plus any charges for Excess Wear and Use and excess mileage (Sections 9 and 10);
    (6) Plus any official fees or taxes charged in connection with the Lease termination; and
    (7) Minus any amounts Lessor receives under any insurance policy on the Vehicle that have not been used to repair or replace the Vehicle, or from cancelled insurance or other products.

**22. DEFAULT.**
  A. DEFAULT. The following are events of default ("Default"):
    (1) you fail to pay any Monthly Payments when due;
    (2) you allow, if the Lessee is an individual, anyone other than you or your spouse (provided that both you and your spouse are properly insured and maintain a valid, unrestricted drivers license) to operate the Vehicle;
    (3) you fail to return the Vehicle upon termination of this Lease;
    (4) you fail to comply with any of the terms and conditions of this Lease;
    (5) you are the subject of a proceeding in bankruptcy, receivership or insolvency;
    (6) you make an assignment for the benefit of creditors;
    (7) you die during the Lease Term;
    (8) you fail to keep the Vehicle insured as required by this Lease;
    (9) you rent, sublease, assign or otherwise transfer any interest in this Lease, the Vehicle, or the right to use the Vehicle;
    (10) you make any material misrepresentation on your credit application;
    (11) you fail to answer traffic summons or pay any traffic tickets or other fines when due;
    (12) the Vehicle is seized or confiscated for any reason by a law enforcement agency;
    (13) the Vehicle is destroyed, stolen, or damaged beyond repair and the Vehicle insurer denies full coverage or liability; or
    (14) anything else occurs that Lessor believes endangers the Vehicle or its condition, impairs your ability to pay or compromises Lessor's ownership interest in the Vehicle.

  B. REMEDIES. If you are in Default, Lessor may terminate this Lease and Lessor may exercise any of its rights and remedies at law or as provided in this Lease, including recovering charges for early termination. You agree to pay to Lessor all reasonable expenses incurred in the collection of all amounts past due under this Lease to the extent permitted by applicable law. If you are in Default, Lessor also has the right to take possession of the Vehicle. Lessor may, without use of force or other breach of the peace, enter the premises where the Vehicle is and take immediate possession of the Vehicle, including any equipment or accessories. If Lessor takes possession, you are not released from any obligation under this Lease.

If, during repossession of the Vehicle, Lessor comes into possession of personal or other property, Lessor will hold it for you. If you do not claim the property within thirty (30) days after Lessor has repossessed the Vehicle, Lessor can dispose of the property in any manner selected by it. You agree that Lessor will have no further liability to you for this property. Any accessories, equipment or replacement parts will remain with the Vehicle.

**23. LOSS OR DESTRUCTION OF VEHICLE.**
  A. TOTAL LOSS. If the Vehicle is lost, stolen, destroyed or damaged beyond repair, Lessor may, at its option agree in writing to continue this Lease and Lessor will provide you with a substitute vehicle. Any insurance proceeds paid related to the Vehicle will be applied toward purchase of the substituted vehicle.

If you and Lessor do not agree to continue this Lease with a substitute vehicle, the Lease will terminate early. Lessor will waive the Early Termination Liability upon Lessor's receipt of the full amount of the insurance proceeds provided the following stipulations are met:
    (1) the insurance coverage required under the Lease has been maintained and is currently in force;
    (2) you have complied with all other terms and conditions of the Lease, including making required Monthly Payments as they come due while awaiting a settlement from the insurance company;
    (3) you have paid Lessor the deductible required by the insurance policy and any other deductions your insurance company may make in accordance with the policy when it honors Lessor's claim; and
    (4) you have provided Lessor with proper and prompt notice of the loss.

  B. REIMBURSEMENT. You agree to reimburse Lessor and Assignee for any loss or damage to the Vehicle or its contents during the Lease Term. You also agree to reimburse Lessor and Assignee for all claims, losses and costs arising out of the use or condition of the Vehicle. You agree to reimburse Lessor and Assignee for all taxes, license, title, registration and other official fees paid by Lessor and Assignee on your behalf during the Lease Term. You agree to pay all fees imposed on the Vehicle or on any driver of the Vehicle during the Lease Term. If you fail to pay the fines and Lessor pays, you will pay to Lessor a $20 handling charge for each time Lessor must pay a fine, in addition to the fine or penalty imposed.

NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS. Pursuant to the requirements of Colorado Revised Statutes § 43-4-811, (6), you will be liable for payment of all toll evasion violation civil penalties incurred on or after you take possession of the motor vehicle. The Lessor will provide your name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

12/03/08  12:13 FAX                    PORSCHE_FIN SVCSORP                    ☒004

coverage required by sections 324.021(7) and 627.736, Florida Statutes.

**17. VEHICLE OPERATION.**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You are responsible for the maintenance and servicing of the Vehicle. You agree to keep the Vehicle in good condition and operating order. You agree to service and repair the Vehicle according to the maintenance program required by the manufacturer of the Vehicle and the terms of the warranty, if any, remains valid. You agree to comply with all manufacturer recall notices. You also agree to pay the cost of maintenance, repair and operating expenses.

B. VEHICLE USE. You agree to:
   (1) not allow, if the Lessee is an individual, anyone other than you or your spouse (provided that both you and your spouse are properly insured and maintain a valid, unrestricted drivers license) to operate the Vehicle;
   (2) allow Lessor to inspect the Vehicle at any time during the Lease Term, upon reasonable notice;
   (3) keep the Vehicle free from the claims of others;
   (4) not use the Vehicle for any unlawful or improper purpose or for hire;
   (5) not use the Vehicle in any daily rental enterprise;
   (6) not use the Vehicle to push, pull or otherwise tow any objects, unless the Vehicle is a sport utility vehicle which has been equipped with the Porsche Towing System and is operated in accordance with the manufacturer's owner's manual;
   (7) not remove the Vehicle from the United States;
   (8) not alter, deface or install equipment in the Vehicle without Lessor's written consent and you agree to remove same and replace with original manufacturer equipment at your sole cost;
   (9) maintain the Vehicle in compliance with all federal, state and local laws and regulations regarding its operating conditions;
   (10) not use the Vehicle in any form of auto racing; and
   (11) not use the Vehicle in any off-road activity, unless the Vehicle is a sport utility vehicle.

C. TAXES, REGISTRATION AND TITLING. You agree to pay all sales, use, personal property and other taxes, and all fees and charges that are levied in connection with the Vehicle, or its use during the Lease Term. You will also pay all taxes that are charged to Lessor by reason of its interest in the Vehicle except for taxes based on net income. The Vehicle will be licensed, titled and registered, as directed by Assignee. You agree to pay all license, title and registration costs, and other official fees. If you relocate to another state during the Lease Term, you agree to notify Assignee immediately of such relocation. You agree to re-register and re-title the Vehicle within 30 days of relocation or when registration statutory rules, whichever is less. You agree to pay all re-registration and re-titling costs and fees in that state, and any late fees, penalties or other fees incurred due to failure to re-register and/or re-title the Vehicle.

**17. OPTION TO PURCHASE.**

A. END OF LEASE TERM. At scheduled lease termination, you may purchase the Vehicle "AS IS" for a sum equal to:
   (1) The Residual Value;
   (2) Plus any past due Monthly Payments and any other amount due under this Lease;
   (3) Plus any official fees, taxes and other charges related to purchase of the Vehicle.

B. PRIOR TO END OF LEASE TERM. You have an Option to Purchase the Vehicle "AS IS" at any time prior to the end of the Lease Term. You must notify Lessor at least 10 days before you exercise the Option to Purchase. If you exercise the Option to Purchase at any time prior to the end of the Lease Term, you agree to pay Lessor a sum equal to:
   (1) Any past due Monthly Payments and any other amount due under this Lease;
   (2) Plus any official fees, taxes and other charges related to the purchase of the Vehicle;
   (3) Plus the Residual Value;
   (4) Plus the Base Monthly Payment times the number of Monthly Payments not yet due (not applicable if this is a Single Payment Lease);
   (5) Minus unearned Rent Charges calculated according to the actuarial method. The term "actuarial method" means the method of allocating Base Monthly Payments (or the Single Payment divided by the Lease Term) between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment (or the Single Payment divided by the Lease Term) is applied first to the accumulated Rent Charge and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost. Rent Charges are earned on a set-monthly schedule regardless of when a Monthly Payment, or Single Payment is received. Rent Charges are at their maximum at the beginning of the Lease Term and decrease to their minimum at the end of the Lease Term.

**18. EXCESS WEAR AND USE.**

"Excess Wear and Use" includes, but is not limited to:
   A. glass breakage, damage or discoloration;
   B. damage to the body, fenders, metal-work, lights, trim, or paint
   C. missing equipment that was part of the Vehicle when you accepted delivery of it (if you have not substituted replacement equipment suitable to Lessor);
   D. any tire which is not part of a set of 4 matching tires (or 5 tires, as originally equipped) in size, type, and brand, and/or does not meet the Vehicle manufacturer's specifications;
   E. unsafe wheels and tires (tires with less than 1/8 inch of tread); snow tires are not acceptable;
   F. torn, damaged or stained dash, floor covers, seats, headliners, upholstery, interior work or trunkliners;
   G. mechanical defects and/or any damage remaining after substandard repairs; or
   H. damage or any other condition that makes the Vehicle unsafe or unlawful to operate.

**19. RETURN OF VEHICLE.**

Upon termination of this Lease and if you do not exercise the Option to Purchase, you agree to return the Vehicle in good condition, with no Excess Wear and Use, to the Lessor's address shown on the front of this Lease or such other place as Lessor may direct. At that time, you also agree to pay any amount owing under this Lease and all charges, if any, for Excess Wear and Use and excess mileage. If the Vehicle is not returned upon termination of this Lease, this will constitute a default of the Lease.

**20. SCHEDULED TERMINATION.**

Except for Early Termination and Default, this Lease will terminate on and upon:
   A. the end of the Lease Term;
   B. return of the Vehicle to Lessor;
   C. your payment of all amounts owed to the Lessor under this Lease including the Termination Fee and any amounts owed for Excess Wear and Use and excess mileage; and
   D. your completion and return to Lessor of an odometer disclosure statement upon return of the Vehicle to Lessor.

**21. EARLY TERMINATION.**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease at any time before the end of the Lease Term. If you elect to terminate this Lease before the end of the Lease Term and you do not exercise your Option to Purchase, the charge for such early termination is the Early Termination Liability as defined below.
B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your Option to Purchase, upon such

---

   (5) are the subject of a proceeding in bankruptcy, receivership or insolvency;
   (6) you make an assignment for the benefit of creditors;
   (7) you die during the Lease Term;
   (8) you fail to keep the Vehicle insured as required by this Lease;
   (9) you rent, sublease, assign or otherwise transfer any interest in this Lease, the Vehicle, or the right to use the Vehicle;
   (10) you make any material misrepresentation on your credit application;
   (11) you fail to answer traffic summons or pay any traffic tickets or other fines when due;
   (12) the Vehicle is seized or confiscated for any reason by a law enforcement agency;
   (13) the Vehicle is destroyed, stolen, or damaged beyond repair and the Vehicle insurer denies full coverage of liability; or
   (14) anything else occurs that Lessor believes endangers the Vehicle or its condition, impairs your ability to pay or compromises Lessor's ownership interest in the Vehicle.

B. REMEDIES. If you are in Default, Lessor may terminate this Lease and Lessor may exercise any of its rights or remedies at law or as provided in this Lease, including recovering charges for early termination. You agree to pay to Lessor all reasonable expenses incurred in the collection of all amounts past due under this Lease to the extent permitted by applicable law. If you are in Default, Lessor also has the right to take possession of the Vehicle. Lessor may, without use of force or other breach of the peace, enter the premises where the Vehicle is and take immediate possession of the Vehicle, including any equipment or accessories. If Lessor takes possession, you are not released from any obligation under this Lease.

If during repossession of the Vehicle, Lessor comes into possession of personal or other property, Lessor will hold it for you. If you do not claim the property within thirty (30) days after Lessor has repossessed the Vehicle, Lessor can dispose of the property in any manner selected by it. You agree that Lessor will have no further liability to you for this property. Any accessories, equipment or replacement parts will remain with the Vehicle.

**23. LOSS OR DESTRUCTION OF VEHICLE.**

A. TOTAL LOSS. If the Vehicle is lost, stolen, destroyed or damaged beyond repair, Lessor may at its option agree in writing to continue this Lease and Lessor will provide you with a substitute vehicle. Any insurance proceeds paid related to the Vehicle will be applied toward purchase of the substituted vehicle.

If you and Lessor do not agree to continue this Lease with a substitute vehicle, the Lease will terminate early. Lessor will waive the Early Termination Liability upon Lessor's receipt of the full amount of the insurance proceeds provided the following stipulations are met:
   (1) the insurance coverage required under this Lease has been maintained and is currently in force;
   (2) you have complied with all other terms and conditions of the Lease (including making required Monthly Payments as they come due while awaiting a settlement from the insurance company);
   (3) you have paid Lessor the deductible required by the insurance policy and any other deductions your insurance company may make in accordance with the policy when it honors Lessor's claim; and
   (4) you have provided Lessor with proper and prompt notice of the loss.

B. REIMBURSEMENT. You agree to reimburse Lessor and Assignee for any loss or damage to the Vehicle or its contents during the Lease Term. You also agree to reimburse Lessor and Assignee for all claims, losses and costs arising out of the use or condition of the Vehicle. You agree to reimburse Lessor and Assignee for all taxes, license, title, registration and other official fees paid by Lessor and Assignee on your behalf during the Lease Term. You agree to pay all fines imposed on the Vehicle or on any driver of the Vehicle during the Lease Term. If you fail to pay the fines and Lessor pays, you will pay to Lessor a $20 handling charge for each time Lessor must pay a fine, in addition to the fine or penalty imposed.

NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS. Pursuant to the requirements of Colorado Revised Statutes § 43-4-811 (6), you will be liable for payment of all toll evasion violation civil penalties incurred on or after this date you take possession of the motor vehicle. The Lessor will provide your name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

**24. GENERAL.**

A. SECURITY INTEREST. You grant Lessor a security interest, to the extent permitted by state law, in the loss proceeds of any Vehicle insurance to secure performance of your obligations under this Lease.
B. OWNERSHIP. You acknowledge that this Lease is a true lease, not a purchase agreement, and that you will not own or have any ownership interest in the Vehicle or its replacement parts unless you exercise the Option to Purchase.
C. GOVERNING LAW. This Lease shall be governed by the laws of the state in which it is signed except that the law of the state where the Vehicle is repossessed will govern the repossession. Repossession effected through legal process will be governed by the laws of the state in which such process is brought.
D. MODIFICATION. No modification of any of the terms and conditions of this Lease shall be valid, and you expressly waive the right to rely on any modification, unless made in writing and signed by Lessor.
E. ASSIGNMENT. You acknowledge that this Lease will be assigned to Assignee. You further acknowledge that Assignee will acquire all of Lessor's interest in this Lease and in the Vehicle and will be entitled to all of the rights and remedies granted to Lessor pursuant to the terms and conditions of this Lease. You agree that Assignee will not have to make any repairs to or maintain the Vehicle, obtain Lessor's insurance or perform any other service Lessor has agreed to perform under this Lease. You agree to look only to Lessor for performance of these services. Assignee may be deemed an additional lessor under the Consumer Leasing Act. You acknowledge that you are not an agent of the Lessor at the time this term of this Lease and you will not be an agent of the Lessor or Assignee at any time during the term of this Lease.
F. ENFORCEMENT. This Lease shall bind and inure to the benefit of the heirs, executors, administrators, and assigns of the parties to this Lease. No delay or omission by Lessor or Assignee in the enforcement of any of its rights shall constitute a waiver. Any provision in this Lease prohibited by law or otherwise deemed invalid or unenforceable shall not invalidate the remaining provisions of this Lease. You agree that the Assignee may appoint one or more agents to act on its behalf, and that agents of the Assignee have the power to administer, enforce and defend this Lease.
G. ODOMETER STATEMENT. Federal law requires you to complete a statement of the Vehicle's mileage at the end of this Lease. Failure to complete an odometer disclosure statement or return it to Lessor or making a false statement therein may result in fines and imprisonment. If the Vehicle's odometer becomes inoperative or malfunctions, you must notify Lessor of this fact and have the odometer repaired within 30 days.
H. ENTIRE AGREEMENT. Important: Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. You may change the terms of this Lease only by another written agreement. This Lease is a final expression of the credit agreement between you and Lessor. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and Lessor.

---

Porsche Leasing Ltd. assigns its rights (but not its obligations) to sell this Vehicle to Porsche Payment Center, Inc. under the Master Exchange Agreement dated March 15, 2002.

# CERTIFICATE OF NOTICE

```
District/off: 0538-3        User: jpwiggins        Page 1 of 1              Date Rcvd: Jan 15, 2009
Case: 08-03423             Form ID: pdf012         Total Served: 1

The following entities were served by first class mail on Jan 17, 2009.
dbpos      +Warehouse 86, LLC,   5 River Bend Place, Ste D,   Flowood, MS 39232-7618

The following entities were served by electronic transmission.
NONE.                                                                       TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                       TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jan 17, 2009**          **Signature:**      *Joseph Speetjens*