# Exhibit "C"

## ASSIGNMENT

WHEREAS, Industrial Developments International Inc., a Delaware Corporation ("Landlord") and Wireless Retail, Inc, a Texas corporation ("Tenant"), entered into that certain lease dated August 1, 2003, relating to certain space known as Suite 110 in the Airways Distribution Center located at 481 Airport Industrial Drive, Southaven, Mississippi (collectively the "Prime Lease");

WHEREAS, SC Kiosks, Inc., a Delaware corporation is the successor in interest to Wireless Retail, Inc. by assignment dated October 1, 2004;

WHEREAS, by Sublease of even date herewith, between SC Kiosks, Inc., as "Sublandlord" and Warehouse 86, LLC, an Arizona limited liability company as "Subtenant," (the "Sublease") Subtenant has subleased from Sublandlord the space subject to the Prime Lease (the "Subleased Premises");

WHEREAS, by agreement dated _____, Subtenant has contracted with UPS Oasis Supply Corp., ("UPS") to perform certain services to and on behalf of UPS ("Service Agreement") and will use the Subleased Premises in the performance thereunder. Pursuant to the Service Agreement UPS is obligated to pay to Subtenant certain sums in the event that UPS terminates the service agreement for its convenience as provided therein (the "Termination Fees"); and

WHEREAS, the execution and delivery of this Assignment by Subtenant is a condition of the Sublease;

NOW, THEREFORE, to induce Sublandlord to enter into the Sublease agreement, to secure payment of sums owed to Sublandlord under the Sublease:

**1.   Assignment.**  Subtenant hereby assigns to Sublandlord all its right to receive Termination Fees from UPS as provided in the Service Agreement in an amount not to exceed the amount of all sums owed or to be owed, which are due and to become due to Sublandlord from Subtenant under the terms of the Sublease for any remaining term of the Sublease. Sublandlord shall have first priority in receipt of sums owed to Subtenant as Termination Fees until such time as all sums owed to Sublandlord under the Sublease are paid in full.

**2.   Direction to Pay.**  By this assignment, Subtenant agrees to make payments of Termination Fees directly to Sublandlord

**3.   Secured Debt.**  This Assignment is made to secure the payment by Assignor to Assignee of the following described obligations (collectively, the "Secured Debt"):

   (a)   The payment and performance by Assignor of all of Assignor's Obligations for rent and other sums due to Assignee, under the terms of the Sublease The term

"Obligations" includes but is not limited to the rents and other sums owed or to become due which are or may become payable by Assignor to Assignee under the Sublease; and

(b) All reasonable costs incurred by Assignee to obtain, preserve, and enforce this Assignment, collect the Secured Debt, and maintain and preserve the Leases and the Rents, including specifically, but without limitation, Assignee's reasonable attorneys' fees, disbursements and legal expenses.

4. Assignor's Warranties and Representations.

(a) Ownership of Right to Payment. Assignor is the owner and holder of the right to receive payment of the Termination Fees, and all requisite right, power and authority to assign Assignor's interest in the Termination Fees and the right to receive them, and no other person, firm or corporation has any right, title or interest therein.

(b) No Defaults. Assignor has substantially performed all and singular the terms, covenants, conditions and warranties of the Service Agreement on Assignor's part to be kept, observed and performed.

(c) No Modification of Service Agreement. The Service Agreement is valid and enforceable by Assignor and unmodified except as indicated herein and is in full force and effect; Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Termination Fees or the right to receive Termination Fees, whether now due or hereafter to become due.

(d) Assignability. The right of Assingor to receive Termination Fees under the Service Agreement is assignable, and this assignment is not a breach of the Service Agreement.

5. Assignor's Covenants and Agreements.

(a) Performance. Assignor shall observe, perform and discharge punctually all and singular the obligations, terms, covenants, conditions and warranties of the Sublease, the Service Agreement and this Assignment, and Assignor shall give prompt notice to Assignee of any failure on the part of Assignor to observe, perform and discharge the same.

(b) Modification of Service Agreement. Without obtaining in each instance the prior written consent of Assignee, Assignor shall not cancel, terminate or consent to any surrender of the Service Agreement nor modify or in any way materially alter the terms thereof, including without limitation the rights to receive Termination Fees under Article 11.

Assignment — Page 2

(c)     Financing Statement. Sublandlord may file a UUC financing statement to perfect its claim against the sums assigned hereunder, and Subtenant shall sign and deliver to Sublandlord all instruments, documents, or other writings that may be necessary to perfect Sublandlord's security interest in the sums assigned.

(d)     Collection of Termination Fee. In the event of termination of the Service Agreement by UPS under circumstances in which UPS becomes obligated to pay a Termination Fee, Landlord will submit to Subtenant a statement reflecting the full amount of rent and other sums that may come due through the entire remaining term of the Sublease, and may submit a copy of the statement to UPS accompanied by a demand for payment of such amount. Sublandlord may accelerate the due date of all sums to be paid thereunder and apply the amounts received under this Assignment to such sum without terminating the Sublease or without accelerating the due date of any sum due, hold the Termination Fee received and apply a portion to pay any monthly rent payment or other sums owed on their due date. If Subtenant fails to pay to Assignee any portion of a Termination Fee which is payable under the Service Agreement within 30 days of the notice by Sublessor to UPS of the amount payable, Assignee may by written notice to Assignor and terminate the Sublease and regain possession of the leased premises.

7.     Default. Assignor shall be in default under this Assignment upon the occurrence of any of the following events or conditions:

(a)     If Assignor shall fail, refuse or neglect to pay, in full, any portion or installment of the Secured Debt when same shall become due and payable as agreed by Assignor and Assignee, whether at the due date thereof stipulated in the Sublease or other instrument evidencing the Secured Debt, or by acceleration or otherwise.

(b)     If any representation, warranty or covenant made by Assignor, under or pursuant to the Service Agreement, the Sublease, this Assignment or otherwise executed in connection with the Sublease shall be false or misleading in any material respect.

(c)     If Assignor shall (a) procure the voluntary or allow the involuntary appointment of a receiver, trustee or liquidator for himself or for all or any part of his property, (b) file any petition seeking a discharge, rearrangement or reorganization of his debts, pursuant to the bankruptcy laws or any other debtor relief laws of the United States or any state or any other competent jurisdiction, (c) make a general assignment for the benefit of his creditors, or (d) admit in writing his inability to pay his debts as they mature.

(d)     If (a) a petition is filed against Assignor seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction and such proceeding is not vacated or dismissed within ninety (90) days of the filing thereof, or (b) a court of competent

Assignment — Page 3

jurisdiction enters an order, judgment or decree appointing, without the consent of Assignor, a receiver or trustee for him, or for all or any part of his property.

(e) If UPS terminates the Service Agreement for any reason.

(f) Any event which results in the acceleration of the maturity of the Debt of Assignor to others under any note, security agreement, mortgage or agreement or undertaking of any kind whatsoever.

(g) Levy on, seizure, or attachment of the Lessor's interest in the Service Agreement, or any part thereof.

8. Remedies. Upon or at any time after the occurrence of an event of default hereunder, Assignee at its option shall have the complete right, power and authority hereunder then or at any time thereafter to exercise and enforce any or all of the following rights and remedies:

(a) to demand, collect, receive, sue for, attach and levy on the Termination Fees and the right to receive the Termination Fees, and give proper receipts, releases and acquittances therefor, and after deducting all necessary and proper costs and expenses of operation and collection, as reasonably determined by Assignee, including reasonable attorneys' fees, and apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, in reduction or payment of the Secured Debt in such order of priority as Assignee may, in its sole discretion, determine;

(b) to declare all sums secured hereby immediately due and payable and, at the option of Assignee, exercise all of the rights and remedies contained in the Sublease and this Assignment;

(c) to exercise all rights under this Assignment; and

9. Exculpation of Assignee. The acceptance by Assignee of this Assignment with all of the rights, powers, privileges and authority created hereby shall not be deemed or construed to constitute assumption by Assignee of any obligation under the Service Agreement.

10. No Waiver. The collection of the Termination Fees as provided for in this Assignment shall not be deemed to cure or waive any default or waive, modify or affect any notice of default under the Sublease or invalidate any act done pursuant to any such notice.

11. Continuation - Termination. Upon payment and discharge in full of the Secured Debt and of all sums payable hereunder, this Assignment shall become and be void and of no force or effect, but the affidavit of any officer of Assignee stating that any part of the Secured Debt remains unpaid and undischarged shall be and constitute conclusive

Assignment — Page 4

evidence of the validity, effectiveness and continuing force of this Assignment, and any person, firm or corporation may and is hereby authorized to rely thereon.

12. <u>Notices</u>. All notices, demands or documents of any kind which Assignee may be required or may desire to serve upon Assignor hereunder shall be sufficiently served and shall be deemed delivered by personal delivery to Assignor or by depositing a copy thereof addressed to Assignor at the address of Assignor set forth herein or by depositing a copy thereof in the United States mail, postage prepaid and addressed to Assignor at such address.

13. <u>Modifications</u>. No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provision so modified or limited and signed by both Assignor and Assignee, nor by course of conduct, usage of trade, or by the law merchant.

14. <u>Applicable Law</u>. This Assignment shall be construed according to the laws of the State of Texas.

15. <u>Venue</u>. It is agreed that venue in any proceeding hereunder shall be in Tarrant County, Texas.

**IMAGING SERVICES**

**IMAGING SERVICES**

IN WITNESS WHEREOF, this Assignment is effective as of June ____, 2006.

ADDRESS:

_P.O. Box 17361_
_Memphis, TN 38187_

ASSIGNOR:
Warehouse 86, LLC

By: _[signature]_
Name: _Ernest K. Strahan, III_
Title: _CFO_

ADDRESS:

_300 RadioShack Circle_
_Fort Worth, TX 76102_
_MS-CF6-314_

ASSIGNEE:
SC Kiosks, Inc.

By: _[signature]_
Name: __DAVID S. GOLDBERG__
Title: _VP SC Kiosks, Inc._

**IMAGING SERVICES**

Assignment -- Page 6

# Exhibit "D"



McLarens Young
International
GLOBAL CLAIMS SERVICES

1855 N. Central Expressway, Suite 710
Dallas, TX 75243-3790
Tel 972 907-9910
Fax 972 907-9871

September 17, 2008

Ms. Joan Ruland Donnelly
Liberty Mutual Property
20 Riverside Road
Weston, MA 02493

RE: Claim No.        : X58A-000922-00
    Report No.   5   : Interim
    Insured          : Radio Shack Corporation
    Type of Loss     : Tornado and Fire
    Loss Date        : Tornado – 2-5-08, Fire – 2-11-08
    Policy No.       : YJ2-L9L-004096-167
    Loss Location    : Warehouse 86, Southaven, MS
    MYI File No.     : 16.004205

Dear Ms. Donnelly:

Enclosed herewith is our interim report in connection with the above captioned claim.

**ENCLOSURES:**

1. Statement of Loss
2. Depreciation Schedule
3. Estimate from J.S. Held, Inc.
4. Other claim documentation
5. Copy of lease agreement

**INSURED:**

The named insured is Radio Shack Corporation and their address is 300 Radio Shack Circle, Fort Worth, TX.

**COVERAGE:**

Coverage is in force through policy number YJ2-L9L-004096-167 and effective dates are 7-1-07 to 7-1-08. Policy valuation is at promotional retail value for stock and replacement cost for store improvements and fixtures. There is a $250,000 deductible applicable.

**OTHER INSURANCE:**

The sub-tenant, Warehouse 86 LLC, has a policy of insurance in place as per the enclosed Certificate of Insurance, carried by Employers Mutual Casualty for business personal property in the amount of $1,000,000 which lists S.C. Kiosks, Inc. as having an interest in the policy. S.C. Kiosks is owned by Radio Shack Corporation. It is understood this location is listed on the Schedule of Insured Locations.

**ESTIMATE OF LOSS:**        $2,765,100
**DEDUCTIBLES 2@ $250,000:** ( 500,000)
**RESERVE RECOMMENDED:**     $2,265,100

www.mclarensyoung.com

### CAUSE OF LOSS:

On February 5, 2008, a tornado struck a warehouse which contained equipment wherein Kiosks, Inc., a division of Radio Shack Corporation, holds an interest. The details of Radio Shack's interest and the damaged property will be discussed later in this report.

Subsequent to the tornado, the landlord hired a demolition contractor who in turn hired a welding subcontractor to cut away metal debris. The welding sub contractor caused a fire while in the process of cutting away debris from the building on February 11, 2008. The equipment which Radio Shack has an interest in, sustained additional damage from the fire.

### SUBROGATION:

There are subrogation possibilities against the sub-tenant, Warehouse 86, as they were to insure the property of Radio Shack including the conveyor system and security system. The adjuster for Warehouse 86 is a Micah Moore, P.O. Box 190, 11625 Highway 64 Eads, TN 38028. The telephone number for Micah Moore is (901) 299-8962.

There are also subrogation possibilities against the steel contractor, Diamond Steel, apparently they were involved in causing a fire while cutting away steel structure during the demo process. Their adjuster is a Kevin Fox, claims specialist, P.O. Box 140996, Nashville, TN 32737. Mr. Fox's telephone number is (888)549-9876 ext 1228.

### SALVAGE:

In-Motion Systems, LLC, was hired to remove the conveyor system from the warehouse following the occurrences. In-Motion Systems advises in their correspondence dated March 23, 2007, there will be some salvage value estimated at approximately $60,000. In-Motion Systems advises they have currently been unable to locate a buyer for the remains of the conveyor system and their efforts continue.

### ADJUSTMENT:

Enclosed is a proposed Statement of Loss indicating a loss amount of $2,765,024.26. Applying refundable depreciation as per the Schedule enclosed of $476,763.00 and applying two separate deductibles, one for the tornado of 2-5-08 and the other for the fire of 2-11-08, makes for net claim as outlined of $1,706,761.26.

The following is a brief discussion of the items outlined on the enclosed Statement of Loss:

1.  Improvements and Betterments

    Enclosed is a revised estimate prepared by Christy Ball of J.S. Held for replacement of improvements and betterments in the amount of $1,417,756.48. The landlord is not in complete agreement with this amount, however, they will agree to use this as a base replacement cost for the improvements and betterments. The policy of insurance allows Liberty Mutual Insurance Company to withhold depreciation until the improvements and betterments are replaced and enclosed is a Schedule of Depreciation which totals $476,763.00. The actual cash value loss and claim for the improvements and betterments as outlined on the enclosed Statement of Loss totals $940,993.48.

    The policy of insurance requires the improvements and betterments be replaced within a 2 year time frame beginning on the loss date of February 5, 2008 to qualify for the refundable depreciation. The landlord advises they did not intend to replace the improvements and

betterments until they locate a tenant to reoccupy the warehouse. It is understood the rebuild of the warehouse is approximately 75% complete at this time. The landlord has until February 5, 2010 to replace the improvements and betterments to qualify for the refundable depreciation.

2. Security System

Radio Shack Corporation submitted documentation to substantiate the replacement cost of the security systems from Integral Technologies which totals $163,000. Applicable depreciation is 50% of the value which totals $81,500.00, leaving an actual cash value claim amount for the security system of $81,500.00.

3. Conveyor System

GE Capital invoiced Radio Shack the sum of $1,064,361.78 which represents the value of the conveyor system as of the loss date. Please note the replacement value of the entire conveyor system is in the range of $2,000,000 to $2,500,000 and the amount invoiced by GE Capital represents the actual cash value of the conveyor system as of the date of loss. It was necessary for Radio Shack to remove the remains of the conveyor system and In-Motion Systems LLC agrees to remove the conveyor system for the sum of $119,906.00. This makes for a loss to the conveyor system of $1,184,267.78.

There are two separate deductibles applicable, one for the tornado damage of 2-5-08 and the other for the fire damage of 2-11-08 and each deductible is $250,000. Applying the two separate deductibles makes for a net claim on the conveyor system of $684,267.78.

As per the enclosed Statement of Loss, the net claim after taking refundable depreciation and applying two separate deductibles is $1,706,761.26.

These figures have been discussed in detail with representatives of Radio Shack Corporation and they are in agreement.

The lease agreement has been reviewed and Radio Shack Corporation is responsible for replacement of the improvements and betterments. In addition, the landlord, IDI, Inc. is listed as an additional insured.

Radio Shack has requested that two separate checks be issued, the first for the claim on the improvements and betterments in the amount of $940,993.48 payable to IDI, Inc. and Radio Shack Corporation and the second check for the net claim on the security system and the conveyor system, $81,500 and $684,267.78 respectively, for a total of $765,767.78, payable to Radio Shack Corporation only.

**WHAT HAS BEEN DONE:**

The enclosed Statement of Loss has been prepared reflecting a loss of $2,765,024.26 and a net claim of $1,706,761.26. The lease agreement has been reviewed along with the policy of insurance to verify the obligations of Radio Shack Corporation with regard to the improvements and betterments. The enclosed Depreciation Schedule has been prepared reflecting the refundable depreciation based on the revised estimate prepared by J.S. Held Corporation.

O/F#: 16.004205
September 17, 2008
Page 4 of 4

## WHAT IS TO BE DONE:

If your office concurs with the above recommendation, a Sworn Statement in Proof of Loss in the net amount of $1,706,761.26 will be forwarded to Radio Shack Corporation to conclude the claim. A Replacement Cost Proof of Loss will also be forwarded reflecting the refundable depreciation of $476,763.00. Radio Shack has requested two separate checks be issued as outlined above.

## CONCLUSION:

Authority is requested to provide a Sworn Statement in Proof of Loss for the ACV claim of $1,706,761.26 and a Replacement Cost Proof of Loss to reflect the refundable depreciation of $476,763.00.

Please respond with authority.

## MCLARENS YOUNG INTERNATIONAL

Bill Adams
Vice President/Branch Manager
Executive General Adjuster

BA/ma

STATEMENT OF LOSS

Insured: Radio Shack
Loss Location: Southhaven, MS
Date of Loss: 2-5-08 and 2-11-08
MYI File No. 16.004205

|  | | VALUE | LOSS | CLAIM |
|---|---|---|---|---|
| **Item I: Real Property** | | | | |
| Loss As Determined | | | | |
| See Attached Documentation | | | | |
| 1. Improvements and Betterments | | $ 1,800,000.00 | | |
| J.S. Held Estimate | $ 1,417,756.48 | | $ 1,417,756.48 | |
| Less: Depreciation | $ (476,763.00) | | | |
| **ACV LOSS & CLAIM** | $ 940,993.48 | | | 940,993.48 |
| | | | | |
| 2. Security System | | $ 163,000.00 | | |
| Integral Technologies | $ 163,000.00 | | $ 163,000.00 | |
| Less: Depreciation (50%) | $ (81,500.00) | | | |
| **CLAIM** | $ 81,500.00 | | | $ 81,500.00 |
| | | | | |
| 3. Conveyor System | | $ 2,000,000.00 | | |
| G.E. Capital Invoice | $ 1,064,361.78 | | | |
| In-Motion Systems LLC | $ 119,906.00 | | | |
| LOSS | $ 1,184,267.78 | | $ 1,184,267.78 | |
| Less: Deductible (Tornado) | $ (250,000.00) | | | |
| Less: Deductible (Fire) | $ (250,000.00) | | | |
| **CLAIM** | $ 684,267.78 | | | $ 684,267.78 |
| | | | | |
| **VALUE, LOSS, CLAIM** | | $ 3,963,000.00 | $ 2,765,024.26 | $ 1,706,761.26 |

DEPRECIATION SCHEDULE
RADIO SHACK
SOUTHAVEN, MS
MYI #16.004205

| ITEM | REPLACEMENT COST | % DEPRECIATION | DEPRECIATION |
|---|---|---|---|
| Acoustical Treatments | $ 19,747.00 | 50% | $ 9,873.00 |
| Cabinetry | $ 18,659.00 | 40% | $ 7,463.00 |
| Concrete/Asphalt | $ 28,400.00 | 30% | $ 8,520.00 |
| Doors | $ 9,269.00 | 30% | $ 2,780.00 |
| Drywall | $ 65,387.00 | 40% | $ 26,154.00 |
| Electrical | $ 236,287.00 | 40% | $ 94,514.00 |
| Electrical - Special System | $ 8,539.00 | 30% | $ 2,561.00 |
| Misc. Equipment | $ 73,375.00 | 40% | $ 29,350.00 |
| Carpet | $ 21,011.00 | 50% | $ 10,505.00 |
| Vinyl Floor | $ 7,358.00 | 40% | $ 2,943.00 |
| Fencing | $ 56,500.00 | 40% | $ 22,600.00 |
| Finish Hardware | $ 14,442.00 | 40% | $ 5,776.00 |
| Fire Proective System | $ 43,949.00 | 40% | $ 17,579.00 |
| Framing/Rough Carpentry | $ 3,930.00 | 20% | $ 786.00 |
| Glass/Glazing | $ 14,725.00 | 30% | $ 4,417.00 |
| HVAC | $ 99,375.00 | 60% | $ 59,625.00 |
| Insulation -Mechanical | $ 9,231.00 | 35% | $ 3,230.00 |
| Insulation -Mechanical | $ 68,851.00 | 25% | $ 17,212.00 |
| Light Fixtures | $ 157,745.00 | 50% | $ 78,872.00 |
| Mirrors/Shower Doors | $ 875.00 | 25% | $ 218.00 |
| Plumbing | $ 49,152.00 | 40% | $ 19,660.00 |
| Painting | $ 9,014.00 | 50% | $ 4,507.00 |
| Toilet/Bath Accessorie | $ 4,854.00 | 50% | $ 2,427.00 |
| Window Treatment | $ 4,632.00 | 30% | $ 1,389.00 |
| SUBTOTAL | | | $ 432,961.00 |
| Overhead | $ 118,386.00 | 37% | $ 43,802.00 |
| TOTAL | | | $ 476,763.00 |

# Exhibit "E"

# Invoice

InMotionSystems, LLC

2324 Foxhaven Drive
Franklin, TN 37069

| Date | Invoice # |
|---|---|
| 4/5/2008 | 11 |

**Bill To**

Radio Shack
Attn: Judy McCampbell
300 RadioShack Circle
MS CF4-324
Fort Worth, TX 76102-1964

| P.O. No. | Terms | Project |
|---|---|---|
| Judy McCampbell | Due on receipt | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 1 | Radio Shack - Southaven, MS Asset and Liquidation - Quote #2008-148 - 25% progress payment due April 11, 2007 | 29,976.50 | 29,976.50 |

01005 Radio Shack Fleet
Amount 2997 6.50
Account Number 1250
Authorized Payment By

Jaime Caballero
415-0357

It's been a pleasure working with you!

**Total** $29,976.50

# Invoice

InMotionSystems, LLC
2324 Foxhaven Drive
Franklin, TN 37069

| Date | Invoice # |
|---|---|
| 4/5/2008 | 13 |

**Bill To**

Radio Shack
Attn : Judy McCampbell
300 RadioShack Circle
MS CF4-324
Fort Worth, TX 76102-1964

| P.O. No. | Terms | Project |
|---|---|---|
| Judy McCampbell | Due on receipt | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 1 | Radio Shack - Southaven, MS Asset and Liquidation - Quote #2008-148 - 25% Final Payment due April 25, 2008 | 29,976.50 | 29,976.50 |

*[Handwritten stamp:]*
01-0050
Amount 29,976.50
Account Number 1250
Authorized Payment By Judy L McCampbell
Jaime Caballero
415-0357

Thank you for your business

**Total** $29,976.50