IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: WAREHOUSE 86, LLC     DEBTOR(S)
CASE NO. 08-03423-EE
CHAPTER 11

WAREHOUSE 86, LLC     RESPONDENT
FIFTH THIRD BANK     CREDITOR

### MOTION TO COMPEL ACCEPTANCE OR REJECTION OF A LEASE AGREEMENT AND TO LIFT THE AUTOMATIC STAY

COMES NOW Fifth Third Bank (Bank), by counsel, and moves the Court to compel acceptance or rejection of a lease agreement and to lift the automatic stay, as follows:

1. Bank is the holder of a lease agreement executed by debtor covering a 2005 Cadillas XLR vehicle bearing VIN 1G6YV34A255600539; a true and correct copy of the lease agreement is attached hereto as "Exhibit A".

2. Acceptance or rejection of this lease agreement should be compelled by the Court. Whether the lease agreement is accepted or rejected, the automatic stay imposed by 11 U.S.C. §362 should now lift as to Bank and as to this property, and this property should be abandoned from this estate.

3. Bank requests that the order granting relief from the stay entered in this case be excepted from the stay provisions of *Bankruptcy Rule 4001(a)(3)*.

WHEREFORE, Bank moves the Court to compel acceptance or rejection of a lease agreement, to grant relief from the automatic stay, and to direct abandonment as aforesaid; and Bank requests such other relief to which it may be entitled in the premises.

Respectfully submitted,

FIFTH THIRD BANK

By:    /S/ LARRY SPENCER, ITS ATTORNEY

KING & SPENCER, ATTORNEYS
POST OFFICE BOX 123
JACKSON, MS 39205
PHONE: 601-948-1547 / MB #7730

## CERTIFICATE OF SERVICE

I, Larry Spencer, Attorney for Fifth Third Bank, do hereby certify that I have this day mailed, via United States mail, postage prepaid, a true and correct copy of the above and foregoing "Motion to Compel Acceptance or Rejection of a Lease Agreement and to Lift the Automatic Stay" to:

>John A. Crawford, Jr.
>jack.crawford@butlersnow.com
>ATTORNEY FOR DEBTOR(S)
>
>Stephen W. Rosenblatt
>Steve.Rosenblatt@butlersnow.com
>ATTORNEY FOR DEBTOR(S)
>
>R. Michael Bolen
>ustpregion05.ab.ecf@usdoj.gov
>U.S. TRUSTEE

SO CERTIFIED this the 19th day of May 2009.

>/s/ Larry Spencer

KING & SPENCER, ATTORNEYS
POST OFFICE BOX 123
JACKSON, MS 39205
PHONE: 601-948-1547, MB #7730

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

0600 7951

THIS LEASE, effective this __31st__ day of __AUG__, 20 __05__ through the __31st__ day of __AUGUST__ 2008 (scheduled Lease maturity date), is between __FIFTH THIRD AUTO LEASING TRUST__ (hereinafter called "Lessor") and __WAREHOUSE 86 LLC  JOY ST JAMES__ of __P O BOX 17361__ __MEMPHIS__ __SHELBY__ __TN__ __38187-0361__
Street Address / City / County / State / Zip Code

a(n)  ☒ Individual(s)  ☐ Corporation  ☐ Partnership  ☐ LLC ☐ LLP,

36 765 22747 SEP 1 7 2005

__BUD DAVIS CADILLAC, INC.__ is the arranger of this Lease.
DEALER NAME

25) DESCRIPTION OF VEHICLE.

Current Mileage: 6215   Lessee(s) Initials

☐ New   ☒ Used

| | YEAR | MAKE | MODEL | BODY STYLE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|
| ☒ CAR<br>☐ TRUCK | 2005 | CADILLAC | XLR | CONVERTIBLE | 1G6YV34A255600539 |

DESCRIPTION OF EXTRA EQUIPMENT

☐ MANUAL TRANS  ☒ PWR LOCKS  ☒ AUTOMATIC  ☐ CELL PHONE  ☒ PWR SEAT  ☒ PWR WINDOWS  ☒ C.D. PLAYER  ☐ ____
☒ A.B.S. BRAKES  ☐ SUNROOF  ☒ AM-FM RADIO  ☐ TAPE  ☐ 4 WD  ☒ Conv.  ☐ ____  ☐ ____

INTENDED USE   ☐ BUSINESS   ☒ PERSONAL

26) WARRANTIES.
The Vehicle is subject to the following express warranties: Lessee acknowledges that Lessee has selected the Vehicle. LESSOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED AS TO THE DESIGN, MODEL YEAR, OPERATION OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN THE VEHICLE LEASED HEREUNDER, AND LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OF WARRANTY WHATSOEVER. IT BEING AGREED THAT ALL SUCH RISKS AS BETWEEN LESSOR AND LESSEE ARE TO BE BORNE BY LESSEE AND THE BENEFITS OF ANY AND ALL IMPLIED WARRANTIES OF LESSOR ARE HEREBY WAIVED BY LESSEE. LESSOR SHALL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. Lessor agrees that Lessee shall be entitled to the benefit of the manufacturer's warranties on a new Vehicle, or, if the Vehicle is used, any remaining manufacturer's warranties, or the financed manufacturer's warranties as disclosed in paragraph 36, to the extent permitted by applicable law and does hereby assign said warranties to Lessee to the extent required for Lessee to enforce said warranties against the manufacturer. If this Lease is signed in Kansas or West Virginia, Lessor does not disclaim any implied warranties of merchantability or any implied warranty of fitness for any particular purpose. The Lessee shall not set off any loss, cost or damage against any sums due Lessor under this Lease.

| 27) Amount Due at Lease Signing or Delivery (itemized below)* $ 1997.49 | 28) Monthly Payments<br>Lessee's first monthly payment of (a) $ __998.49__<br>is due on (b) __AUG 31st__ followed by<br>(c) __35__ payments<br>the (e) __30th__ of each<br>monthly payments is (f) $ __945.64__ | 29) Other Charges (not part of Lessee's monthly payment)<br>Vehicle Return Fee (if Lessee does not purchase the Vehicle) (a) $ __300.00__<br>____ N/A<br>____ .00 | 30) TOTAL OF PAYMENTS<br>(The amount the Lessee will have paid by the end of the Lease)<br>$ 37244.64<br>(Sections 28(f) plus 29(c) plus 31(A)(vii) minus 31(A)(i) minus 31(A)(ii)) |
|---|---|---|---|

31) ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

A) Amount Due at Lease Signing or Delivery:

| (i) Capitalized Cost Reduction | $ N/A |
| (ii) First Monthly Payment | 998.49 |
| (iii) Refundable Security Deposit | N/A |
| (iv) Title Fees | 16.00 |
| (v) Registration Fees | 73.50 |
| (vi) Other Taxes | 600.00 |
| (vii) Documentation Fee | 289.50 |
| (viii) Total | $ 1977.49 |

How Amount Due at Lease Signing or Delivery will be Paid:

| (i) Net Trade-in Allowance | $ N/A |
| (ii) Yr ___ Make ___ Model ___ | N/A |
| (iii) Rebates and Noncash Credits | 1997.49 |
| (iv) Amount to be Paid in Cash | N/A |
| (v) ____ | |
| (vi) Total | $ 1997.49 |

32) LESSEE'S MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW.

A. Gross Capitalized Cost. The agreed upon value of the Vehicle ( $ 61029.00 ) and any items Lessee pays over the Lease term (such as service contracts, insurance, Lessor administration fee, GAP protection, and any outstanding prior credit or lease balance). For an itemization of this amount, see Paragraph 36 below. . . . . . . . . . . . . $ 61849.00

B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash Lessee pays that reduces the gross capitalized cost . . . . . . . . . . . . − N/A

C. Adjusted Capitalized Costs. The amount used in calculating Lessee's Base Monthly Payment . . . . . . . . . = 61849.00

D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating Lessee's Base Monthly Payment . . . − 36931.50

E. Depreciation and Any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term . . . . . . . . . . = 24917.50

F. Rent Charge. The amount charged in addition to the Depreciation and Any Amortized Amounts . . . . . . . . . + 8676.62

G. Total of Base Monthly Payments. The Depreciation and Any Amortized Amounts plus the Rent Charge . . . . . . . = 33594.12

H. Lease Payments. The number of payments in Lessee's Lease . . . . . . . . . ÷ 36

I. Base Monthly Payment . . . . . . . . . = 933.17

J. Monthly Sales/Use Tax . . . . . . . . . + 65.32

K. __N/A__ . . . . . . . . . + N/A

L. Total Monthly Payment ("Monthly Payment"). . . . . . . . . =$ 998.49

EXHIBIT A

Early Termination. Lessee may have to pay a substantial charge if ____ charge may be up to several thousand dollars. The ____

outstanding prior credit or lease balance). For an itemization of this amount, see Paragraph 36 below.

B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash Lessee pays that reduces the gross capitalized cost ............................................................................ N/A

C. Adjusted Capitalized Costs. The amount used in calculating Lessee's Base Monthly Payment ........ = 61849.00

D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating Lessee's Base Monthly Payment ... . 36931.50

E. Depreciation and Any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ........................................................ = 24917.50

F. Rent Charge. The amount charged in addition to the Depreciation and Any Amortized Amounts ......... + 8676.62

G. Total of Base Monthly Payments. The Depreciation and Any Amortized Amounts plus the Rent Charge ... = 33594.12

H. Lease Payments. The number of payments in Lessee's Lease ................................. ÷ 36

I. Base Monthly Payment ........................................................................ = 933.17

J. Monthly Sales/Use Tax ........................................................................ + 65.32

K. N/A ........................................................................................ + N/A

L. Total Monthly Payment ("Monthly Payment"). ..................................................... =$ 998.49

Early Termination. Lessee may have to pay a substantial charge if Lessee ends this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is Terminated. The earlier Lessee ends the Lease the greater this charge is likely to be.

33) Excessive Wear and Use. Lessee may be charged for excessive wear based on Lessor's standards for normal use and for excess mileage at a rate of ___.18___ (If blank, $.25) for each mile recorded on the Vehicle's odometer-including mileage recorded before this Lease was executed-upon return to the Lessor, in excess of ___51215___ miles.

34) Purchase Option at End of Lease Term. If Lessee has paid in full all Monthly Payments, is not in default hereunder, has paid all other amounts required under this Lease, and is not in default of any other obligations of Lessee in any capacity to Lessor or its affiliates, Lessee has an option to purchase the Vehicle at the end of the Lease Term referred to above as the scheduled lease maturity date AS IS WHERE IS and without any warranty whatsoever from Lessor for $ ___37231.50___. All fees, taxes and other amounts due on transfer shall be paid by the Lessee.

35) Other Important Terms. See Lessee's Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**36) ITEMIZATION OF GROSS CAPITALIZED COST**

| | | | |
|---|---|---|---|
| A. Agreed Upon Value of the Vehicle +$ 61029.00 | F. Outstanding Prior Credit or Lease Balance +$ N/A | K. Lessor Admin. Fee +$ 820.00 |
| B. Taxes +$ N/A | G. Credit Life Insurance +$ N/A | L. N/A +$ N/A |
| C. Title Fee +$ N/A | H. Credit Disability Insurance +$ N/A | M. N/A +$ N/A |
| D. Registration Fees and/or License Fees +$ N/A | I. M.B.P./Warranty +$ N/A | N. N/A +$ N/A |
| E. Documentation Fee +$ N/A | J. GAP Contract, Coverage or Waiver +$ N/A | O. Total= Gross Capitalized Cost = $ 61849.00 |

37) ESTIMATED OFFICIAL FEES AND TAXES. The total amount Lessee will pay for estimated official and license fees, registration, title, and taxes over the term of this Lease, whether included with Lessee's Monthly Payment or assessed otherwise: $ ___2467.02___. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

38) CREDIT LIFE AND DISABILITY INSURANCE: CONSUMER CREDIT INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.

| TYPE | PREMIUM | SIGNATURE |
|---|---|---|
| Credit Life | $ N/A | Lessee wants credit life insurance X_____ (date)_____ |
| Credit Disability | $ N/A | Lessee wants credit disability insurance X_____ (date)_____ |

Lessee acknowledges that all inquiries concerning contract terms and provisions relating to this insurance (if purchased) are to be directed to the Dealer identified above which is responsible for the issuance of this insurance. The coverages are shown in a separate notice or agreement issued by the Dealer and/or the Insurance Company. Unless otherwise indicated, coverage is for the Lease Term.

39) Dealer and/or Lessor may be retaining a portion of the amounts indicated in Par. 32A or Par. 36.

40) **ENTIRE AGREEMENT.** This Lease contains the entire agreement of the parties and may not be modified or revoked without the consent in writing of the Lessor and Lessee. Lessee hereby waives the right to trial by jury of any matters arising out of this Lease and any of the issues contemplated herein. Lessee has read this agreement and acknowledges receipt of a completely filled-in copy. If there are multiple Lessees signing this Lease, all will be jointly and severally liable for the obligations under this Lease.

LESSEE                                                       ENTERED SEP 1 6 2005

Company Name, if any
X Warehouse 86 LLC By: Chief Administrative Officer
Lessee   WAREHOUSE 86 LLC                                    Lessee   JOY ST JAMES

Delivery Receipt
I/WE acknowledge that I/WE have received and examined the Vehicle described in Paragraph 25 of this Lease, that the Vehicle is equipped as described and in good operating order and condition and that I/WE accept the Vehicle for all purposes of this Lease.

X Warehouse 86 LLC By: Chief Administrative Officer
Lessee                   Date                                Lessee                    Date
                         08/31/2005


Additional Lessee Address (if different from the address above)

3276 KINDERHILL CR        GERMANTOWN         TN     38138
Address                   City               State  Zip Code


THIS LEASE IS SUBJECT TO, AND LESSEE AGREES TO BE BOUND BY, THE ADDITIONAL PROVISIONS SET FORTH ON THE OTHER SIDE HEREOF, THE SAME BEING INCORPORATED HEREIN BY REFERENCE.

(REV 11/03) 08502



# MOTOR VEHICLE LEASE AGREEMENT

THIS Motor Vehicle Lease Agreement ("Lease") is between the Lessee(s) ("Lessee") and the Lessor ("Lessor") whose names and addresses are provided on the other side of this Lease, for the period beginning on the date the Lease is signed and ending on the scheduled Lease maturity date ("Lease Term").

LESSOR AND LESSEE HEREBY AGREE AS FOLLOWS:
Lessor agrees to purchase and to Lease to Lessee, and Lessee agrees to lease from Lessor and to pay according to the terms and conditions below and on the other side hereof, the Motor Vehicle ("Vehicle") described on the other side hereof.

1) INSURANCE. (A) The following types and amounts of insurance will be required in connection with this Lease:
   (1) A policy of public liability and property damage insurance protecting the interests of Lessor, Lessee and Lessee's drivers with limits of not less than $100,000 for injury to or death of one person; $300,000 for all persons injured or killed in the same accident and not less than $50,000 for damage, destruction or loss of use of property of other persons as a result of any one accident.
   (2) A policy of collision insurance with a deductible amount not in excess of $500. Lessee shall be liable for the deductible amount in the event of a claim thereunder.
   (3) A policy of fire, theft and comprehensive insurance with a deductible amount not in excess of $500. Lessee shall be liable for the deductible amount in the event of a claim thereunder.
   (B) Lessee agrees, at Lessee's expense and prior to delivery of the Vehicle, to procure, and furnish to Lessor's satisfaction written evidence of, and to maintain in force until the Vehicle is returned to Lessor, insurance with companies and in a form acceptable to Lessor in the amounts and types indicated above.
   All required insurance shall identify the Lessor as an 'Additional Named Insured and Loss Payee.' Except as provided in paragraph 10, the proceeds of any insurance received by Lessor on account of any loss or casualty which has been paid by Lessee shall be released to Lessee upon appropriate proof of payment, unless at the time the Lessee is in default thereunder.
   If Lessee fails to obtain or maintain this insurance, or name Lessor as a loss payee and additional insured, Lessor may obtain insurance to protect Lessor's interest in the Vehicle. This insurance may include coverages not required of Lessee. This insurance may be written by a company other than one Lessee would choose. It may be written at a rate higher than a rate Lessee could obtain if Lessee had purchased the insurance required by this Lease. Lessor will add the premium for this insurance to the amount Lessee owes Lessor. Any amount Lessor pays will be due within 10 days. Lessor may assess interest at the highest rate permitted by applicable law until such amounts are paid in full.
   NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.

2) LATE PAYMENTS; LESSOR PAYMENT; COLLECTION CHARGES. If all or any portion of a Monthly Payment is not received within 6 days of its due date, a late fee of $35.00 will be assessed. If this Lease is signed in Iowa a late charge will only be due if the total amount payable under the Lease exceeds $25,000. If this Lease is signed in Kansas and the total amount payable under the Lease does not exceed $25,000, a late charge equal to the lesser of 5% of the unpaid amount or $25 will be due if payment is not received within 10 days of its due date. If Lessor pays any amount required to be paid hereunder by Lessee, Lessee shall immediately reimburse Lessor for this amount if the amount is not so remitted. Lessee shall pay interest thereon at the maximum rate permitted by law. A fee of $35.00 ($30.00 in Florida and Kansas; $25.00 in Georgia, North Carolina, South Carolina, and Virginia; $20.00 in Indiana, Minnesota, Pennsylvania, and Tennessee; $15.00 in Missouri and West Virginia; and $10.00 in Nebraska) may, at Lessor's discretion, be imposed whenever an item offered in payment on this Lease is returned to the Lessor unpaid for any reason, including but not limited to non-sufficient funds.

3) MAINTENANCE, EXPENSES, FEES, TAXES, LICENSES AND INSPECTION. Lessee agrees to be responsible for the following maintenance and servicing of the Vehicle:
   (a) to maintain the Vehicle according to the manufacturer's maintenance directions, to repair any damage to the Vehicle and to pay all the costs of maintenance and servicing of the Vehicle;
   (b) to pay all expenses incurred in the use and operation of the Vehicle including but not limited to gasoline, oil, tires, storage, parking, towing, tolls and fines;
   (c) to accomplish and pay for annual registration and licensing of the Vehicle in the Lessor's name;
   (d) to accomplish and pay for all inspections of the Vehicle required by any governmental body and to pay any other tax, governmental charge, or personal property taxes applicable to the Vehicle, including any amounts assessed for a period during the Lease Term that are unbilled or become due after the Lease Term; Lessor reserves the right to estimate the amount of unbilled personal property tax or other taxes and collect such estimated amounts upon Lease termination;
   (e) to permit Lessor to inspect the Vehicle at reasonable times and intervals;
   (f) to not tamper with or modify the Vehicle in any way without the prior written consent of Lessor;
   (g) to pay all expenses incurred and in connection with the immobilization, impoundment, forfeiture or release of the Vehicle; and
   (h) to pay a $30.00 service fee to Lessor to investigate and/or forward each warning or delinquency notice to Lessee with respect to fines, citations, taxes and penalties not paid by Lessee.

4) STANDARDS FOR WEAR AND USE, RETURN OF VEHICLE AND CONDITION ON RETURN. The following standards are applicable for determining unreasonable or excess wear and use of the Vehicle whether incurred prior to or during the term of the Lease.
   A) DAMAGE CHARGE. The cost necessary to place the Vehicle in good working condition, whether or not such costs are actually incurred by the Lessor, to repair or replace missing or damaged parts or accessories with original equipment manufacturer parts or those of equal quality and to place the Vehicle in saleable condition as determined by Lessor, which cost shall include, but not be limited to, the cost necessary to:
      (1) Repair any malfunction, failure, defect, knocking or other noises of the Vehicle's engine, drivetrain, brakes, exhaust system or any other operating parts and accessories.
      (2) Replace any tire which is not part of a matching set (in terms of type and brand) of four tires of equal quality to the originals, plus a spare of equal quality or of the type originally provided by the manufacturer of the Vehicle, with each tire having at least 1/8 inch of remaining tread at its shallowest point.
      (3) Repair the following:
         (i) Dents, scratches, pits, rust, cracks, or corrosion to any fender, bumper, grille, hood, trunk, roof, doors, chrome trim or any such body damage.
         (ii) Repairing any mismatched paint, repainting of the Vehicle to its original color and restoring any special identification, decals, or lettering appearing anywhere on or in the Vehicle.
         (iii) Rips, holes, burns, soiling, spotting or excessive wear in the carpet, seats, doors, headliner, dashboard, or trunk area.
         (iv) Glass damage including breaks, cracks, stone bruises, sand damage, discoloration or pits to any window, windshield, mirror, lamps, lights, or headlights.
         (v) Frame damage.
      (4) Perform any repair or replacement estimated to exceed $50.00 in addition to those repairs and replacements described above.
      (5) Reimburse the Lessor for its administrative coordination of the repairs and replacements to the Vehicle.
   B) INTEREST DUE AT TERMINATION. All amounts due at termination and under any provisions hereof shall bear interest at the maximum rate allowed by law from the date the notice is mailed by Lessor if not paid within 10 days of notice. Such interest shall be computed on the average daily balance method.
   C) RETURN OF VEHICLE AND CONDITION ON RETURN. On the scheduled maturity of the Lease, Lessee shall deliver the Vehicle to such place as Lessor shall specify. Lessee shall return the Vehicle in such condition so that it is legally operable and saleable under any applicable law. Lessee agrees to make payment to Lessor, as soon as the charges can reasonably be determined, charges for excessive wear and use; plus charges for excess mileage as stated per this Lease; plus the vehicle return fee; plus any other amounts due and payable hereunder. If the Lessee fails to return the Vehicle in accordance with Lessor's instructions and to the location specified by the Lessor, Lessee shall be responsible for any expenses which Lessor incurs as a result, including Monthly Payments for each month until the Vehicle has been returned to the designated location and charges for excess wear and mileage incurred prior to arrival at the specified return location. Such amounts may be billed to Lessee on a separate statement and will be due and payable on demand and bear interest at the maximum rate permitted under applicable law. Acceptance of such amounts by Lessor shall not constitute an extension of the Lease.

5) EARLY TERMINATION AND DEFAULT. (A) Lessee may not terminate this Lease more than 30 days before the scheduled lease maturity unless Lessee pays to the Lessor the amount described in Paragraph 6(e).
   (B) Lessor may terminate this Lease before the scheduled lease maturity date under the following conditions:
      (1) Failure by Lessee to make any Monthly Payment on its due date. Time is of the essence. However, acceptance by Lessor of any late payment shall not constitute waiver of Lessor's rights under this Paragraph;
      (2) Death, disability or incompetence of Lessee;
      (3) Failure by Lessee to maintain insurance as provided in Paragraph 1 herein;
      (4) Incomplete or inaccurate information is given by Lessee on any credit application, financial statement or in this Lease;
      (5) Seizure, levy, immobilization, impoundment, confiscation or forfeiture against Lessee or against the Vehicle;
      (6) Lessee becomes insolvent or is the subject of any bankruptcy or insolvency proceeding or makes an assignment for the benefit of creditors, or Lessee is named in, or the Vehicle is subject to, a suit for the appointment of a receiver;
      (7) Lessor, in its reasonable commercial discretion, deems itself insecure;
      (8) Failure of Lessee to perform any covenant herein or Lessee is in default of any other agreement to which Lessor or any affiliate of Fifth Third Bancorp is a party; or
      (9) Loss, destruction or theft of the Vehicle, whether total or in part, as reasonably determined by Lessor.
   Upon such termination, Lessor shall be entitled to the charges described in Paragraph 6(e).

6) LESSOR'S RIGHTS AND REMEDIES UPON DEFAULT. If an event of default occurs, as described in paragraph 5, Lessor shall have all rights and remedies provided by law, and without limiting the generality of the foregoing, Lessor may do any of the following:
   (a) Terminate the Lease and Lessee's right to use the Vehicle and require Lessee to return the Vehicle to Lessor. Lessor may also withhold authorization to renew license plates and the Vehicle registration with appropriate government authorities;
   (b) Enter any premises where the Vehicle may be found and take possession of the Vehicle, together with its contents. Lessor may take custody of anything found in the Vehicle and dispose of those contents as Lessor deems appropriate;
   (c) Upon regaining possession of the Vehicle, Lessor shall, at its sole discretion, either sell or re-lease the Vehicle and, after deducting the costs of repossession and disposition, give Lessee credit for the balance of the proceeds remaining from such sale or lease in mitigation of any amounts owed by Lessee to Lessor;
   (d) Apply the security deposit and any other security interest retained by Lessor to repayment of any amounts due from Lessee to Lessor under the terms of this Lease;
   (e) Collect from Lessee an amount equal to the sum of the following computation (as defined in Paragraph 6(e)(1) through 6(e)(7) below):
      1. An amount based on the percentage of completed Monthly Payments calculated as follows
      Monthly Payments Made                     Amount

(1) Failure by Lessee to make any Monthly Payment on its due date. Unless in the exercise, however, acceptance by Lessor of any late payment shall not constitute waiver of Lessor's rights under this Paragraph;
(2) Death, disability or incompetence of Lessee;
(3) Failure by Lessee to maintain insurance as provided in Paragraph 1 herein;
(4) Incomplete or inaccurate information is given by Lessee on any credit application, financial statement or in this Lease;
(5) Seizure, levy, immobilization, impoundment, confiscation or forfeiture against Lessee or against the Vehicle;
(6) Lessee becomes insolvent or is the subject of any bankruptcy or insolvency proceeding or makes an assignment for the benefit of creditors, or Lessee is named in, or the Vehicle is subject to, a suit for the appointment of a receiver;
(7) Lessor, in its reasonable commercial discretion, deems itself insecure;
(8) Failure of Lessee to perform any covenant herein or Lessee is in default of any other agreement to which Lessor or any affiliate of Fifth Third Bancorp is a party; or
(9) Loss, destruction or theft of the Vehicle, whether total or in part, as reasonably determined by Lessor.

Upon such termination, Lessor shall be entitled to the charges described in Paragraph 6(e).

6) **LESSOR'S RIGHTS AND REMEDIES UPON DEFAULT.** If an event of default occurs, as described in paragraph 5, Lessor shall have all rights and remedies provided by law, and without limiting the generality of the foregoing, Lessor may do any of the following:
(a) Terminate the Lease and Lessee's right to use the Vehicle and require Lessee to return the Vehicle to Lessor. Lessor may also withhold authorization to renew license plates and the Vehicle registration with appropriate government authorities;
(b) Enter any premises where the Vehicle may be found and take possession of the Vehicle, together with its contents. Lessor may take custody of anything found in the Vehicle and dispose of those contents as Lessor deems appropriate;
(c) Upon regaining possession of the Vehicle, Lessor shall, at its sole discretion, either sell or re-lease the Vehicle and, after deducting the costs of repossession and disposition, give Lessee credit for the balance of the proceeds remaining from such sale or lease in mitigation of any amounts owed by Lessee to Lessor;
(d) Apply the security deposit and any other security interest retained by Lessor to repayment of any amounts due from Lessee to Lessor under the terms of this Lease;
(e) Collect from Lessee an amount equal to the sum of the following computation (as defined in Paragraph 6(e)(1) through 6(e)(7) below):

1. An amount based on the percentage of completed Monthly Payments calculated as follows:

| Monthly Payments Made | Amount |
|---|---|
| 0-50% | $350.00 plus 2.5 Monthly Payments |
| 51-75% | $350.00 plus 2.0 Monthly Payments |
| 76-90% | $350.00 plus 1.25 Monthly Payments |
| 91%-last 2 Monthly Payments | $350.00 plus 0.5 Monthly Payments |
| last 2 Monthly Payments | $350.00; |

plus
2. The amount of the Residual Value of the Vehicle as set forth in Paragraph (32); plus
3. The total of all remaining unpaid Monthly Payments; plus
4. All costs of collection and other charges and expenses, including reasonable attorneys' fees and collection agency fees not prohibited by applicable law; plus
5. All taxes, fees, fines, citations, and any other amounts due Lessor under the terms of this Lease; minus
6. Any unearned rent charge as computed using the "Constant Yield" method (The "Constant Yield" method means the method of determining the rent charge portion of each Base Monthly Payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to rent charge as it declines during the Lease Term. At any given time during the Lease Term, the balance subject to rent charge is the difference between the Adjusted Capitalized Cost and the sum of (i) all depreciation amounts accrued during the previous monthly periods, and (ii) the first Base Monthly Payment.); minus
7. Any amount received by Lessor from insurance proceeds or sale of salvage, or the sale or re-lease of the Vehicle. Within 10 days of early termination, Lessee may obtain, at Lessee's own expense, from an independent third party agreeable to both Lessee and Lessor, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used instead of the amount received by Lessor from the sale or re-lease of the Vehicle.

The sum of the aforementioned calculation shall be due and payable upon demand and shall bear interest at the maximum rate permitted by law.

7) **OPTION TO PURCHASE VEHICLE PRIOR TO END OF THE LEASE.** Lessee has an option to purchase the Vehicle more than 30 days prior to the scheduled lease maturity date by paying to Lessor the amount described in Paragraph 6 (e).

8) **CHANGE IN RESIDENCE.** In the event Lessee changes residency to a different state jurisdiction, the Lessor, at its option and upon giving due notice to Lessee, may require that funds be deposited to an escrow account in an amount to be determined by the Lessor which are sufficient to pay any tax or fee liability applicable to the Vehicle which may be imposed by any governmental authority of the Lessee's new residence. The Lessor may, at its option, waive the requirement upon receipt of satisfactory proof that all applicable tax and/or fee liability has been duly paid by the Lessee. In any event, the Lessor will charge a $40.00 processing fee for each title transfer. Lessee will notify Lessor immediately of any change of address, or if the Vehicle is kept at a location other than Lessee's address as indicated in this Lease.

9) **USE OF VEHICLE; DRIVERS.** Lessee agrees that Lessee will not use or permit the use of the Vehicle (a) outside the state of Lessee's present residence for a continuous period exceeding 30 days without the Lessor's prior written consent; (b) for any purpose of carrying goods or passengers for hire, such as a taxi cab, public omnibus, livery, or sightseeing conveyance; (c) for any unlawful purpose; (d) in violation of any law, (e) outside the contiguous United States for any period; or (f) in any manner contrary to the provisions of the Lessee's Vehicle insurance policy or any Vehicle warranty provision. Lessee represents that Lessee has a valid driver's license and agrees that Lessee shall permit the Vehicle to be operated only by drivers known by Lessee to be validly licensed and insured. Lessee acknowledges that Lessee is to be responsible for selecting and controlling any drivers of the Vehicle and such drivers are conclusively presumed to be agents of Lessee only. Lessee shall require all drivers to operate the Vehicle with reasonable care and diligence.

10) **LOSS, DESTRUCTION, CONFISCATION OR THEFT OF VEHICLE.** (a) If the Vehicle is lost, confiscated, stolen or destroyed as determined by Lessor, Lessee shall promptly notify Lessor for purposes of computation of all sums due. This event of default is deemed to have occurred on the date notice is received by Lessor. (b) Lessee grants Lessor a Limited Power of Attorney and authorizes Lessor to negotiate, settle and collect all sums due from any source (insurance or otherwise) and apply same to any outstanding balance owed. (c) If the Vehicle is lost, stolen, confiscated or damaged beyond repair, Lessee will be responsible for the Gap Amount, which is the difference between the amount calculated under Paragraph 6(e)(1) through (6) and the amount calculated under Paragraph 6(e)(7). If the Vehicle is substantially damaged so that Lessee believes that it may not be repairable, Lessee shall promptly notify Lessor. Lessor shall make the final determination as to whether the Vehicle is repairable. If Lessor determines the Vehicle is not repairable, it shall be considered lost for purposes of the preceding provision. Otherwise, Lessee will be obligated to have the Vehicle repaired. Lessee agrees that Lessee and Lessee's agents shall cooperate fully with Lessor and any insurance carriers in the investigation and defense of any claims arising from the operation of the Vehicle, and shall make a report to Lessor any accident with fullest information available on the accident or damage, and promptly shall deliver to Lessor any papers or notices delivered to Lessee or Lessee's agents in connection with any claim commenced or threatened against Lessee or Lessor.

11) **REIMBURSEMENT AGREEMENT.** Lessee agrees to reimburse Lessor and its agents from and against any and all losses, claims, demands, consequential damages, expenses (including legal expenses) fines and penalties arising out of the condition, maintenance, use or operation of the Vehicle, or Lessee's inability to legally operate the Vehicle.

12) **OWNERSHIP.** This is a Lease only and Lessor remains the owner of the Vehicle. Lessee will not transfer, sublease, rent, or do anything to interfere with Lessor's ownership of the Vehicle. Lessee and Lessor agree that this Lease will be treated as a true Lease for Federal Income Tax purposes and elect to have Lessor receive the benefits of ownership.

13) **ASSIGNMENT.** Lessee agrees that this Lease or any Monthly Payments may be assigned by Lessor. Lessee has no right to assign this Lease.

14) **EXPENSES INCURRED BY LESSOR.** Lessor is not required to, but may take any action required to be done by Lessee (without liability for anything done or omitted in taking the action) and incur any resulting expense. This includes but is not limited to the acquisition of any required insurance, registration of the Vehicle, repair of the Vehicle, or payment of any tax or other charges payable by Lessee. Any such expense incurred shall be repayable by Lessee on demand, together with interest thereon at the maximum rate permitted by law. The rights granted by this paragraph are not a waiver of any other rights of Lessor arising from breach of any of the provisions of this Lease by Lessee.

15) **SECURITY INTEREST.** Lessee hereby grants to Lessor a security interest in all property in which a security interest may now or hereafter be granted by Lessee to Lessor on any loans or other transactions subsequently entered into by Lessee with Lessor other than a "residential mortgage transaction" as defined in Title 1, Consumer Protection Act, 15 U.S.C.A., Sections 1601 et. seq., as amended. To the extent not prohibited by applicable law, Lessee also grants to Lessor a security interest in (i) loss proceeds of any insurance; (ii) rebates and refunds from insurance policies financed under this Lease; (iii) rebates, refunds and proceeds from GAP products or service contracts financed under this Lease; and (iv) all property in possession of Lessor or any affiliate of Fifth Third Bancorp, including, without limitation, Fifth Third Securities, Inc. Such after-acquired security shall serve as security for any and all of Lessee's obligations under this Lease or of any other obligations of Lessee in any capacity to Lessor or any affiliate of Fifth Third Bancorp.

16) **NO WAIVER.** The failure of either party hereto to insist upon the performance of any of the terms of this Lease or the waiver of any breach of any of the terms of this Lease shall not be construed as thereafter waiving any such terms, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

17) **NOTICE.** Any notice given under this Lease by Lessor to Lessee may be given personally or by first class mail, addressed to Lessee's last known address according to Lessor's records.

18) **AUTHORITY TO SIGN.** If the Lessee is a corporation or other entity, the person signing the Lease on behalf of such corporation or entity and the Lessee each hereby warrant that he or she has full authority from the corporation or entity to sign this Lease. The undersigned also agrees that if they lack such authority they agree to be personally bound both jointly and severally by all the terms hereof. If there are multiple Lessees signing this Lease, all will be jointly and severally liable for the obligations under this Lease.

19) **APPLICABLE LAW AND SEVERABILITY.** This Lease shall be construed, interpreted and determined by the law of the State in which this Lease is executed. The parties hereby consent to service of process and personal jurisdiction in the county in which this Lease was executed, and any federal court with concurrent jurisdiction, with respect to any action or proceeding brought to enforce any liability or obligation under this Lease. If any part of this Lease is adjudged by a court of competent jurisdiction to be invalid, such judgment shall not affect or nullify the remainder of this Lease which shall remain in full force and effect. Section headings are for convenience of reference only and shall not be construed otherwise.

20) **AUTHORITY OF ARRANGING ENTITY.** The entity arranging this Lease is authorized to execute this Lease on behalf of the Lessor. Neither that entity nor any of its employees is authorized to make any oral or written promise, affirmation, warranty or representation to Lessee.

21) **SECURITY DEPOSIT.** Lessee agrees that Lessor may hold the security deposit. The security deposit will not accrue interest for the benefit of the Lessee and any interest or monetary benefit which may accrue to the Lessor will not be paid to the Lessee and will not be used to reduce the Lessee's obligation under the Lease. Lessor will retain any amount held as security deposit until all amounts due under this Lease have been paid in full, including personal property taxes, and apply the security deposit against any unpaid amounts.

22) **CONTINUING OBLIGATIONS.** Lessee's obligations hereunder shall survive the expiration and/or termination of this Lease until each is satisfied in full.

23) **REFUNDS.** Any refund made by negotiable instrument shall be made payable to any one or more Lessee(s) as determined solely by Lessor.

24) **ODOMETER STATEMENTS.** Lessee will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperative, Lessee will provide Lessor with reasonable evidence of the Vehicle's actual mileage. If Lessee is unable to do so to Lessor's reasonable satisfaction, Lessee will pay Lessor an amount equal to a reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. Lessee will provide Lessor with an odometer certification at any time Lessor requests one. Lessor may request more than one certification during the term of this Lease. Applicable law requires Lessee to complete an odometer statement form at the conclusion of the Lease. If this form is not properly completed, or if it contains false information, no refund of security deposit (if any) will be made and the Lessee may be subject to fines and/or imprisonment.

**THIS LEASE IS SUBJECT TO, AND LESSEE AGREES TO BE BOUND BY THE ADDITIONAL PROVISIONS SET FORTH ON THE OTHER SIDE HEREOF, THE SAME BEING INCORPORATED HEREIN BY REFERENCE.**