### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**In re:**

| | |
|---|---|
| **WAREHOUSE 86, LLC** | **CASE NO. 08-03423-EE** |
| | **Chapter 11** |
| **Debtor** | |

### DEBTOR'S CHAPTER 11 PLAN

Warehouse 86, LLC (the "Debtor"), through its undersigned counsel, proposes the following Chapter 11 Plan pursuant to the provisions of 11 U.S.C. § 1121(a):

### ARTICLE I.
### DEFINITIONS

A.   Definitions.   The following Definitions apply to the Debtor's Disclosure Statement and Plan of Liquidation and all exhibits which may accompany the same, regardless of whether such terms are capitalized or lower case:

1.1.   "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of the Bankruptcy Case Allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor-in-Possession during the Bankruptcy Case, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including without limitation, any fees or charges assessed against the bankruptcy estate under 28 U.S.C. § 1930.



EXHIBIT
"A"

-1-

1.2.    "Allowed" means, with reference to any Claim against the Debtor, (a) any Claim against any Debtor that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of Claim either (i) as to which no objection has been or is interposed by the Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim; (c) any Claim expressly allowed by a Final Order or under the Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims."

1.3.    "Avoidance Actions" means those actions to avoid transfers under Chapter 5 of the Bankruptcy Code.

1.4.    "Ballot" means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

1.5.    "Bankruptcy Code" or the "Code" means Title 11 of the United States Code as amended and effective from time to time, as applicable to this Bankruptcy Case.

1.6.    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Chapter 11 case and all

adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over this Bankruptcy Case.

1.7.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from time to time.

1.8.    "Business Day" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9.    "Buyer" means Warehouse Ventures 86, LLC, a Delaware limited liability company, which purchased certain Assets of the Company for the total consideration of One Million Two Hundred Ninety Thousand Three Hundred Fifty and 38/100 Dollars ($1,290,350.38) pursuant to the terms of the Sale Order

1.10.    "Cash" means legal tender of the United States of America.

1.11.    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.12.    "Chapter 11 Case" means the bankruptcy case which the Debtor commenced with a voluntary petition under Chapter 11 on November 4, 2008, and is pending in this Court in the case styled "In Re: Warehouse 86, LLC, Case No. 08-03423-EE."

1.13.    "Claim" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.14.    "Claimant" means the holder of a "Claim."

1.15.    "Class" means the category of holders of claims or interests which are substantially similar to other claims or interests in such class, in which category has been segregated for treatment as part of this plan pursuant to Section 1122 of the Bankruptcy Code.

1.16.    "Collateral" means any property or interest in property of the estate of the Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.17.    "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in this bankruptcy case pursuant to Section 1102(a) of the Bankruptcy Code.

1.18.    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.19.    "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.20.    "Confirmation Order" means the order or orders of the Bankruptcy Court, confirming the Plan.

1.21.    "Contingent Claim" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

1.22.    "Creditor" is defined in Section 101(9) of the Bankruptcy Code and is the holder of one or more Claims.

1.23.    "Debt" means liability on a Claim.

1.24. "Debtor" means Warehouse 86, LLC.

1.25. "Debtor in Possession" means the Debtor in its capacity as debtor in possession in the Bankruptcy Case under Sections 1107(a) and 1108 of the Bankruptcy Code.

1.26. "DIP Financing Order" means that Order entered by the Bankruptcy Court on November 7, 2008, styled *Order Granting Emergency Motion for a Prelimina7y and Final Order (I) Authorizing Post-Petition Financing on a Secured and Super Priority Basis Pursuant to 11 U.S.C. §§ 105, 361, 363, 364 and 507(b), (II) Granting Other Related Relief and (III) Scheduling a Final Hearing Pursuant to Rule 4001*" [Docket No. 34], which granted Kenneth A. May ("DIP Lender") in the form of a non-revolving Line of Credit in the original principal amount of up to Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "DIP Loan") secured by a Superpriority Lien (as defied below) on all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property of the bankruptcy estate of Debtor, but not including any recovery actions of any of Debtor's estate under Chapter 5 of the Bankruptcy Code.

1.27. "Disbursing Account" means that certain checking account established by the Debtor at Bank of America in which the Sales Proceeds were deposited and from which the Sales Proceeds could be disbursed only upon further Order of the Court, after notice and a hearing to creditors and parties in interest.

1.28. "Disbursing Agent" means the Debtor.

1.29. "Disclosure Statement" means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be

amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.30.   "Disclosure Statement Order" means the order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.31.   "Disputed" means, with reference to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under Section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a proof of claim exceeds the amount of the Claim scheduled by the Debtor as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

1.32.   "Effective Date of the Plan" or "Effective Date" means a Business Day selected by the Debtor on or after the Confirmation Date, but not later than thirty (30) days after the entry of the Final Order, on which (a) no stay of the Confirmation Order is in effect, and (b) the conditions precedent to the effectiveness of the Plan shall have been satisfied or waived.

1.33.   "Equity Interest" means an equity interest in the Debtor existing on or immediately prior to the Effective Date.

1.34.   "Filing Date" means November 4, 2008, the date the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

1.35.   "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.36.   "General Unsecured Claim" means any Claim for which no property of the Debtor or the Debtor's estate serves as security or collateral, and it also includes that portion of an Undersecured Claim in excess of the value of the Collateral securing the Claim.  It also consists of the Claims for unsecured debts, liabilities, and demands or any character whatsoever owed by the Debtor, including, without limitation, all Claims noted on the Schedules filed

herein, all amendments hereto, and all Claims by persons having actual and/or constructive
notice or knowledge of this Chapter 11 proceeding.

1.37.  "General Unsecured Creditor" means a person, corporation, partnership or other
entity that holds a General Unsecured Claim against the Debtor.

1.38.   "Impaired Claim" means any class of claims or interests under the Plan unless the
Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest
entitles the holder of such claim or interest.  A Claim is an Impaired Claim unless it meets one of
the exceptions specified in Section 1124 of the Bankruptcy Code.

1.39.  "Insurance Proceeds" means those proceeds the Debtor receives from that certain
insurance policy with Employers Mutual Insurance Companay (Policy No. 3A2-22-78-08) for
damages suffered by the Debtor at its warehouse and office in Southaven, MS (i) on February 5,
2008 from a tornado which hit this facility, and (ii) six days later, on February 11, 2008, from a
fire to that facility that started during the repair and cleanup operation while a subcontractor was
removing dangerous sections of the roof structure that had been damaged by the tornado.

1.40.  "Lien" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.41.  "Local Bankruptcy Rules" means the Local Bankruptcy Rules for the Bankruptcy
Court, as amended from time to time.

1.42.  "Net Sales Proceeds" means the $100,000 net proceeds to the bankruptcy estate
from the sale of the Assets pursuant to the Sale Order, as reflected in the Report of Sale filed
with the Court (Docket No. 76) on December 17, 2008.

1.43.  "Priority Claim" means a Claim entitled to priority in payment as specified in
Section 507(a)(1)-(10) of the Bankruptcy Code.

1.44.    "Petition Date" means November 4, 2008, which is the date the Debtor filed its Chapter 11 Petition for Relief under Chapter 11 of the Bankruptcy Code.

1.45.    "Plan" and "Plan of Liquidation" means this Plan of Liquidation, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.46.    "Priority Tax Claim" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.47.    "Property of the Estate" is defined in Section 541 of the Bankruptcy Code.

1.48.    "Pro Rata" means, with reference to any distribution on account of any Allowed Claim in any class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such class.

1.49.    "Purchase Price" means the total consideration of One Million Two Hundred Ninety Thousand Three Hundred Fifty and 38/100 Dollars ($1,290,350.38) paid by the Buyer for substantially all of the Assets of the Debtor as reflected in the Report of Sale filed with the Court (Docket No. 76) on December 17, 2008.

1.50.    "Sale Order" means that certain Order entered by the Bankruptcy Court dated December 10, 2008, styled *Order Granting Debtor's Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 U.S.C. §§ 105, 363 and 365* (Docket No. 070), which authorized the Debtor to sell certain assets to the Buyer.

1.51.   "Schedules" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Case, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.52.   "SCK" means SCK, Inc., a Delaware corporation.

1.53.   "Secured Claim" means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.54.   "Secured Creditor" means those creditors who possess valid and perfected liens against any property of the Debtor, including, but not limited to, creditors holding fully secured claims and undersecured claims.

1.55.   "Undersecured Claim" means a secured claim in an amount which is greater than the value of the collateral securing the claim.

1.56.   "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

B.   <u>Interpretation; Application of Definitions and Rules of Construction</u>.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to

the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect any provisions of the Plan.

## ARTICLE II.
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

2.1.    <u>Administrative Expense Claims</u>.  Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.  Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor in Possession shall be paid in full on the Effective Date.

(a)    <u>United States Trustee Fees</u>.  With respect to amounts due to the Office of the United States Trustee, the Debtor shall pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) within ten (10) days of the Effective Date.  The Debtor shall timely pay to the United States Trustee, any and all post confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the court.  Additionally, the Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.  At this time, the Debtor is current on these fees owed to the United States Trustee.

(b)    <u>Professional Compensation and Reimbursement Claims</u>.  The Debtor's professionals seeking an award by the Bankruptcy Court of compensation for services

rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file within fifteen (15) days of the Confirmation Order becomes a Final Order their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the Order relating to or Allowing any such Administrative Expense Claim on the Effective Date.

(c)     <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive on the Effective Date, Cash in an amount equal to such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.  To the extent any Allowed Priority Tax Claim is not so paid, it will be paid in full upon confirmation of the Plan, pursuant to 11 U.S.C. § 1129(a)(9)(A), on the Effective Date.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS**

3.1.     <u>Classification of Claims</u>.  The following table designates the classes of Claims against and Equity Interests in the Debtor and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| Class | Designation | Claimants | Impairment | Entitled to Vote |
|-------|-------------|-----------|------------|------------------|
| Class 1 | Allowed Other Priority Claims | Yes | Impaired | Yes |
| Class 2 | Secured Claims | No | N/A | N/A |
| Class 3 | General Unsecured Claims | Yes | Impaired | Yes |
| Class 4 | Equity Interests | Yes | Impaired | No (deemed to reject) |

## ARTICLE IV.
## GENERAL PROVISIONS OF THE PLAN AND PROVISIONS FOR ALTERING THE RIGHTS OF CREDITORS AND SPECIFYING THE TREATMENT OF EACH CLASS

4.1.    Allowed Other Priority Claims (Class 1).

(a)    Impairment and Voting.  Class 1 is impaired by the Plan.  Each holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan.  A former member and employee of the Debtor, Eric Eilertsen, has a claim for unpaid wages, salaries or commissions and a car allowance for July 2008, in the total amount of $11,500.  Eilertsen sold his interest in the Debtor to another member of the Company in July 2008.  All other members of the Company who deferred their July compensation because of the cash flow problems the Company was having at that time have agreed to have their unpaid wages, salaries or commissions treated as unsecured claims.

(b)    Distributions.  Although each holder of an Allowed Other Priority Claim is entitled to receive Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Allowed Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable, the Debtor proposes to pay Class 1 claims only 75% of the principal amount of its allowed amount, or $8,625.00.

4.2.   <u>Secured Claim (Class 2)</u>.

(a)   <u>Impairment and Voting</u>. There are no Class 2 claims.

Each consignment creditor either agreed to let the Buyer sell the remaining consigned goods under a new contract or has accepted the return of its consigned goods to satisfy its claim to the extent such claim was s secured claim.  Consequently, no consignment creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed for any consignment claim.

Each utility creditor has either offset the entire amount of its security deposit, or it has had the account assumed or has had a new account established by the Buyer. Consequently, no utility creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed for any utility account.

Each landlord creditor has either offset the entire amount of its security deposit for each lease that the Debtor has or will reject, or it has had the lease assumed or has had entered into a new lease with the Buyer.  Consequently, no landlord creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed under any lease.

The claim of Stuart M. Irby, a secured creditor who held a security interest in substantially all of the Debtor's assets, has been satisfied from the proceeds of the sale as provided by the Sale Order.

Any creditor otherwise classified as a "secured creditor" in the Schedules or which filed a secured claim will be treated as an Unsecured Creditor under this Plan to

the extent that it has an Allowed Claim and any distributions will be permitted as Class 3 Claims.

(b)     _Distributions_.   There are no distributions to creditors in Class 2 because there are no unsecured creditors.

4.3.     _General Unsecured Creditors (Class 3)_.

(a)     _Impairment and Voting_. Class 3 is impaired by the Plan. Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.   These allowed claims will be paid Pro Rata, but only to the extent of any remaining funds in the Disbursing Account after the payment in full of the following:   (i) all Administrative Expense Claims set forth in Section 2.1 above; (ii) a reserve for Administrative Expense Claims to be incurred until the Bankruptcy Case is closed; and (iii) the Claims of Class 1 and 2.   In addition, unless not accepted by the Creditors' Committee as specifically   set forth in Article V, Section 5.3 hereof, all Avoidance Actions, if any, are transferred to and may be prosecuted by the Creditors' Committee for the benefit of Class 3 creditors under this Plan.   If not timely accepted by the Creditors' Committee, as specifically set forth in Article V, Section 5.3 hereof, any Avoidance Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code are hereby released.

4.4.     _Equity Interests (Class 4)_.

(a)     _Impairment and Voting_. Class 4 is impaired by the Plan. Because the holder of any Equity Interest will not receive or retain any property under the Plan or on account of such Equity Interest, such Equity Interests are deemed not to have accepted

the Plan. Therefore, the holders of any Equity Interest are not entitled to vote to accept or
reject the Plan.

(b)      Distributions.   Within ninety (90) days after the Effective Date, all
existing Equity Interests in the Debtor will be extinguished and retired and the Debtor
shall be dissolved. Holders of Equity Interests will receive no distributions under the
Plan.

**ARTICLE V.**
**MEANS OF IMPLEMENTATION**

5.1.   Sources of Payments.   The are three primary sources of payments by which the
Plan will be funded: (1) moneys remaining in the Debtor's account at the time of the sale of
substantially all of its assets to the Buyer (the "Operating Fund Balance"); (2) the Sales
Proceeds; and (3) the net amount of any Insurance Proceeds the Debtor may receive.

5.2.   Disbursing Account.   Pursuant to the Sale Order, the Debtor placed the Sales
Proceeds in a Debtor-in-Possession account which moneys, except as set forth in the Sale Order,
could be disbursed only upon further Order of the Court, after notice and a hearing to creditors
and parties in interest. This fund also contained the Operating Fund Balance. The Insurance
Proceeds, when collected will also be placed in this Disbursing Account. The Debtor shall fund
payments to Creditors under this Plan from the Disbursing Account.

5.3.   Preservation of Avoidance Actions.   As of the Effective Date, any Avoidance
Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code will be preserved for
prosecution by, and assigned to, the Creditors' Committee, but only if a majority of the members
of the Creditors' Committee affirmatively file with the Court a Notice of Acceptance of
Avoidance Causes of Action at least five (5) business days prior to the date first set for the
Confirmation Hearing. If accepted by the Creditors' Committee, the Debtor will transfer to the

Creditors' Committee all of the rights and powers held by it as Debtor-in-Possession to institute, prosecute, and/or enforce after confirmation any Avoidance Actions which exist in the Debtor's favor as Debtor-in-Possession (which are the same claims or causes of action that exist in the favor of a trustee in bankruptcy) regardless of whether the Debtor has instituted or begun to enforce such claims or causes of action.

## ARTICLE VI.
## FEASIBILITY OF THE PLAN

6.1.    Feasibility.    Because the Debtor anticipates haviang sufficient moneys in the Disbursing Account after the payment of administrative and priority claims, to pay the Claims of Class 1 in full and to pay a portion of the Claims of Class 3 to the extent of any remaining funds in the Disbursing Account after the payment in full of the Claims of Class 1, and because all existing Equity Interests in the Debtor (Class 4) will be extinguished and retired and the Debtor shall be dissolved, the Plan is feasible and there is no feasibility issue.

## ARTICLE VII.
## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

7.1.    Voting of Claims.    Each holder of an Allowed Claim in an impaired class of Claims that is entitled to vote on the Plan pursuant to Article III and Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan.

7.2.    Nonconsensual Confirmation.    If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both.

7.3.    Distributions on Account of Allowed Claims.    Distributions with respect to Allowed Claims shall be made on the later of: (i) the date provided in Article IV; or (ii) the date

a Claim becomes allowed. All Allowed Claims in a particular class held by a creditor shall be aggregated and treated as a single Claim. Any creditor holding multiple Allowed Claims shall provide to the Debtor a single address to which any distribution shall be sent. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

7.4.    Disbursing Agent. Ernest K. Strahan, the Chief Financial Officer for the Debtor, shall act as the Disbursing Agent under this Plan. Unless otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of his duties. The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as necessary and proper to implement the provisions hereof.

7.5.    Delivery of Distributions. Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. In the event that any distribution to any

holder is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall be returned by the Disbursing Agent to the Debtor and shall be distributed to such Classes in the priorities set forth herein, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

7.6.    Manner of Payment.    At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or, at the option of the Disbursing Agent, by wire transfer.

**ARTICLE VIII.**
**PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN**

8.1.    Objections to Claims.    Except insofar as a Claim is allowed under the Plan, the Debtor and the Committee shall be entitled to object to Claims.    The Bar Date has passed, and the Debtor and the Committee reserves the right to file any objection to any Claims on or before the date of the hearing on the Disclosure Statement.

8.2.    No Distributions Pending Allowance.    Notwithstanding any other provision of the Plan, if any portion of an Administrative Expense Claim or a Claim is Disputed, at the Debtor's option, no payment or distribution provided in the Plan shall be made on account of such Administrative Expense Claim or Claim unless and until such Disputed Administrative Expense Claim or Claim is resolved and becomes Allowed.

8.3.    Estimation of Claims.    The Debtor may request at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section

-19-

502(c) of the Bankruptcy Code regardless of whether any of the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

### ARTICLE IX.
### PROVISIONS GOVERNING EXECUTORY
### CONTRACTSAND UNEXPIRED LEASES

9.1.    <u>Assumption or Rejection of Executory Contracts</u>.    The Bankruptcy Code empowers the Debtor to assume or reject their executory contracts and unexpired leases.  All executory contracts and unexpired leases that existed between the Debtor and any person or entity will be deemed to be rejected by the Debtor as of the Filing Date, except for any executory contract or unexpired lease that has previously been assumed pursuant to an order of the Bankruptcy Court.

9.2.    <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  Entry of the Order approving this Disclosure Statement will constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the foregoing section.

9.3.     Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
Unexpired Leases Rejected Pursuant to the Plan.  Proofs of claim for damages arising out of the
rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court
and served upon the attorneys for the Debtor on or before ten (10) days after the date first set for
the hearing on the approval of the Disclosure Statement.  In the event that the rejection of an
executory contract or unexpired lease by the Debtor results in damages to the other party or
parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed
proof of claim, will be forever barred and will not be enforceable against the Debtor.

### ARTICLE X.
### CONDITIONS PRECEDENT TO EFFECTIVE DATE

10.1.     Condition Precedent to Effectiveness.  The Effective Date will not occur and the
Plan will not become effective unless and until the Confirmation Order shall have been entered
and shall have become a Final Order.

10.2.     Waiver of Condition Precedent.  The condition precedent of the Plan may be
waived, in whole or in part, by the Debtor.  Any such waiver may be effected at any time,
without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.3.     Satisfaction of Condition Precedent.  Any actions required to be taken on the
Effective Date will take place and will be deemed to have occurred simultaneously, and no such
action will be deemed to have occurred prior to the taking of any other such action.  In the event
that the condition precedent specified has not occurred or otherwise been waived, (i) the
Confirmation Order will be vacated, (ii) the Debtor and all holders of Claims and interests will
be restored to the status quo ante as of the day immediately preceding the Confirmation Date as
though the Confirmation Date never occurred, and (iii) the Debtor's obligations with respect to
Claims and Equity Interests will remain unchanged and nothing contained in the Plan will

constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

## ARTICLE XI.
## EFFECT OF CONFIRMATION

11.1. <u>Vesting of Assets</u>.   On the Effective Date, the Debtor, their properties and interests in property, and their operations will be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the estates of the Debtor will vest in the Disbursing Agent free and clear of all Claims, Liens, encumbrances, charges and other interests, but specifically subject to the obligations of the Debtor and the Disbursing Agent as provided in the Plan.

11.2. <u>Binding Effect</u>.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan and whether or not such holder is entitled to distribution under the Plan.

11.3. <u>Discharge of Claims</u>.  The confirmation of the Plan does not discharge the Debtor of any existing debts and Claims, as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

11.4. <u>Exculpation</u>.  Notwithstanding anything in the Plan to the contrary, as of the Effective Date, neither the Debtor, the Disbursing Agent, the Creditors' Committee, and their respective accountants and attorneys (but, in each case, solely in their capacities as such) will have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Bankruptcy Case, the formulation, dissemination, confirmation, consummation or administration of the Plan, property

to be distributed under the Plan or any other act or omission in connection with the Bankruptcy Case, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing will not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.    The Plan does not provide for broad third-party releases, but rather, limited exculpation for acts during this chapter 11 case.    The exculpation neither affects liability for prepetition actions nor absolves any parties from liability for gross negligence or willful misconduct.

11.5.    Injunction or Stay.    Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtor or Debtor in Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against any property of the Debtor or against the Disbursing Agent, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any property of the Debtor or against the Disbursing Agent with respect to such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any property of the Debtor or against the Disbursing Agent with respect to such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or the Disbursing Agent with respect to such Claim, and (v) pursuing any Claim released pursuant to the Plan.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

12.1. <u>Tax Reporting Requirements</u>. Each holder of an Allowed Claim that is to receive a distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

12.2. <u>Modification of Plan</u>. Amendments or modifications of or to the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtor have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

12.3. <u>Revocation or Withdrawal of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date. If the Debtor revokes or

withdraws the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void. In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. The Debtor reserves the right to withdraw the Plan with respect to any Debtor and proceed with confirmation of the Plan with respect to any other Debtor. In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claims against or Equity Interests in such Debtor withdrawn from the Plan or any other person or to prejudice in any manner the rights of the withdrawn Debtor or any person in any further proceedings involving such withdrawn Debtor.

12.4.   <u>Payment of United States Trustee's Fees</u>.   The Debtor's Plan, pursuant to 28 U.S.C. §1930(a)(6), provides payment to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor during the Chapter 11 proceeding.   In addition, the Plan provides that the Debtor will make payments to the United Sates Trustee of the appropriate sums required for all disbursements made by the Debtor pursuant to the terms of the proposed Plan, including the payment of post-confirmation quarterly fees required by Section 1129(a)(12) until such time as the case is converted, dismissed or closed by the Court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.

12.5.   <u>Professional Fees and Expenses</u>.   Pursuant to Section 1129(a)(4) of the Bankruptcy Code, the Debtor's attorneys and accountant shall file applications for compensation with the Bankruptcy Court from the date through which their last application covers up to and

through the Confirmation Date of the Plan, but may submit and have the Court approve an estimated amount of professional fees for the Debtor's attorneys and accountant to conclude this Chapter 11 case through the consummation of the Plan and the closing of the Bankruptcy Case. Only after notice and a hearing and Court approval of the applications will any payments be made to any of these professionals.

12.6. <u>Dissolution of the Creditors' Committee</u>. Unless the Creditors' Committee gives timely written notice to the attorney for the Debtor of its intention to accept and prosecute any Avoidance Actions under Chapter 5 of the Bankruptcy Code as more particularly set forth in Article V, Section 5.3 above, on the Effective Date, the Creditors' Committee will be dissolved and the members thereof will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Case.

12.7. <u>No Transfer Tax</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer in anticipation of or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

12.8. <u>Expedited Tax Determination</u>. The Debtor and the Disbursing Agent are authorized under the Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all

taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

12.9.  Substantial Consummation.  Upon completion of payments to the creditors under this Plan will be deemed substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.  Upon full consummation, an appropriate Order will be entered closing the case as set out in this Plan.

12.10.  Final Report.  Following confirmation, a final report will be filed in accordance with Bankruptcy Rule 2015.

12.11.  Severability of Plan Provisions.  In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

12.12.  Cancellation of Equity Interests.  On the Effective Date, (a) all existing Equity Interests shall, without further act or action by any party, be cancelled, annulled and extinguished, and any certificates representing such cancelled, annulled and extinguished Equity Interests shall be null and void; and (b) the Debtor shall be deemed dissolved. As soon following the Effective Date as practicable, on behalf of the Debtor, the Disbursing Agent is authorized: (i) to execute and file, or cause to be executed and filed, such articles or certificates of dissolution,

-27-

and such other documents as are necessary to effect, complete or evidence its dissolution under the applicable laws of the States of Arizona, Tennessee and Mississippi, and (ii) to file any required, final federal, state and local tax returns, and to take such other action as shall be necessary or appropriate to effect a final determination of any amounts of federal, state or local taxes owed by the Debtor.

12.13.  Removal of Officers and Directors.  On the Effective Date, any then-currently serving directors, officers, managers or other members of any governing body of the Debtor will be removed from any office, directorship, or any other position held by any such person with the Debtor and will be relieved of any further duties or obligations with respect to the Debtor, except as specifically provided in the Plan to wind up the affairs of and to accomplish the dissolution of the Debtor.

12.14.  Authority of Disbursing Agent to Wind up Affairs of Debtor.  The Disbursing Agent will be authorized to execute, deliver, file and record such contracts, instruments, assignments, conveyances, bills of sale, releases, indentures, certificates and any other agreement or document and take such action reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without the need for further action by the board of directors or other managing body of the Debtor.

12.15.  Headings; Descriptions.    The foregoing descriptions are for informational purposes only and are not an admission by, nor prejudice the rights of, the Debtor and/or the Disbursing Agent in all respects.  Moreover, the descriptions contained herein and in any schedule provided in connection with the Plan are not exclusive. The inclusion or exclusion of any actions herein or on any such schedule is in no way a waiver of any Claim or cause of action whatsoever and all such Claims or causes of action are reserved and preserved. As of the date

-28-

hereof, no determination has been made as to whether to pursue any such potential claims or causes of action.

12.16. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi without giving effect to its principles of conflict of laws.

12.17. <u>Exhibits/Schedules</u>. All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

12.18. <u>Notices</u>. All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Warehouse 86, LLC, addressed to:

Warehouse 86, LLC
Post Office Box 16692
Jackson, MS 39236

With a copy to:

Stephen W. Rosenblatt
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
Post Office Box 2257
Jackson, MS 39225-2567
Telecopy No.: (601) 985-4500
Telephone No.: (601) 985-4504
Email: steve.rosenblatt@butlersnow.com

## ARTICLE XIII.
## JURISDICTION OF BANKRUPTCY COURT

13.1.    Jurisdiction of Bankruptcy Court.    The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Reorganization Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to this Chapter 11 case;

(b)    To determine any and all adversary proceedings, applications and contested matters, including but not limited to, litigation with respect to the disputed claims or claims of the Debtor against any third parties;

(c)    To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)    To hear and determine any timely objections to, or requests for estimation of disputed Administrative Expense Claims and disputed Claims, in whole or in part and otherwise resolve disputes as to Administrative Expense Claims;

(e)    To resolve disputes as to the ownership of any Administrative Expense Claim or Claim;

(f)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

-30-

(g)   To issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(h)   To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)   To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(j)   To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date or by the Debtor after the Effective Date for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(k)   To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(l)   To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine any rights, Claims or causes of action held by or accruing to the Debtor pursuant to the Bankruptcy Code, pursuant to any federal or state statute, pursuant to any common law cliam or legal theory;

(o)     To recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(p)     To enter a final decree closing the Chapter 11Case; and

(q)     To hear any other matter not inconsistent with the Bankruptcy Code.

### ARTICLE XIV.
### CONSUMATION AND CLOSING OF CASE

14.1.   _Consumation and Closing_.  Upon completion of the payments of this Plan to deem the Plan to be fully consummated, the case will be closed. Upon full consummation, an appropriate Order will be entered closing the case. Creditors shall be enjoined from instituting or continuing any legal action to enforce their claims or such contractual terms and provisions other than in accordance with the provisions of this Plan. Further, the Order closing the bankruptcy estate shall provide that all jurisdiction of the Court will terminate, except such jurisdiction as is otherwise provided for herein, or except and unless the Debtor requires reopening of this case to enforce any injunctions contained in the order closing this case, or any other beneficial reason.

WHEREFORE, the Debtor hereby requests confirmation of its Chapter 11 Plan pursuant

to 11 U.S.C. § 1129.

This, the 30th day of June, 2009.

Respectfully submitted,

WAREHOUSE 86, LLC

By: *s/ Stephen W. Rosenblatt*
    Stephen W. Rosenblatt
    One of Its Attorneys

OF COUNSEL:

Stephen W. Rosenblatt; MB No. 5676
John A. Crawford, Jr.; MB No. 10346
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Box 22567
Jackson, MS 39225-2567
Telephone No.: (601) 948-5711
Facsimile:  (601) 985-4500
steve.rosenblatt@butlersnow.com
jack.crawford@butlersnow.com

<u>CERTIFICATE OF SERVICE</u>

I, Stephen W. Rosenblatt., one of the attorneys for the Debtor, certify that I have this day

caused a true and correct copy of the Plan to be delivered via the means directed by the United

States Bankruptcy Court CM/ECF System to the following person:

Ronald H. McAlpin, Esq.
Office of the United States Trustee
Suite 706, A. H. McCoy Federal Building
100 West Capitol Street
Jackson, MS 39269
Ronald.McAlpin@USDOJ.gov

THIS, the 30th day of June, 2009.

By: *s/ Stephen W. Rosenblatt*
    Stephen W. Rosenblatt (MB No. 5676)

Jackson 3600976v.1