*THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

In re:

WAREHOUSE 86, LLC     CASE NO. 08-03423-EE
        Debtor     Chapter 11

**DISCLOSURE STATEMENT
FOR DEBTOR'S CHAPTER 11 PLAN**

Warehouse 86, LLC (the "Debtor") submits this Disclosure Statement pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code") to holders Claims against the Debtor and of equity interests in the Debtor ("Equity Interests") in connection with (i) the solicitation of acceptances of the Plan filed by the Debtor with the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court") and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing").

**I. INTRODUCTION**

Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to them in the Plan.

Attached as Exhibits to this Disclosure Statement are copies of the following documents:

❖ The Plan (Exhibit "A");

❖ The Schedules of Assets and Liabilities, as amended (Exhibit "B"); and

❖ The Monthly Operating Report filed by the Debtor reflecting operations and balances as of May 31, 2009 (Exhibit "C");



- 1 -

class are not paid in full or if the Claims or Equity Interests are affected by the Plan. Classes of claims or equity interests in which the holders of claims or equity interests are unimpaired under a chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan.

For a detailed description of the treatment of Claims and Equity Interests under the Plan, see Section II. Listed below, however, is a statement concerning whether each class of Claims or Equity Interests is entitled to vote to accept or reject a plan.

The Claim in Class 1 (Other Priority Claims) is impaired. As a result, the holder of such Claims is entitled to vote to accept or reject the Plan.

There are no Claims in Class 2 (Secured Claims) of the Plan, and therefore there are no holders of the Claims in that Class are entitled to vote to accept or reject the Plan.

The Claims in Class 3 (General Unsecured Claims) of the Plan are impaired and the holders of such Claims may receive a distribution under the Plan, but not in the full amount of their Claims. As a result, the holders of the Claims in Class 3 are entitled to vote to accept or reject the Plan.

The Equity Interests in Class 4 of the Plan are impaired because such Interests will not receive any distribution under the Plan and will not receive or retain any property under the Plan or on account of such Equity Interest, but will be extinguished under the Plan. Therefore, such Equity Interests are not entitled to vote to accept or reject the Plan but are deemed not to have accepted the Plan.

The Court will determine whether the impaired classes have accepted the Plan by determining whether sufficient acceptances have been received from the holders of Claims in such classed. The Bankruptcy Code defines "acceptance" of a plan by a class of claims as

- 3 -

After the Bankruptcy Court approves the Disclosure Statement a Ballot for the acceptance or rejection of the Plan will be sent to the holders of Claims that the Debtor believes may be entitled to vote to accept or reject the Plan.

On _____, 2009[1], after notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order, approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor of the relevant classes to make an informed judgment whether to accept or reject the Plan.

The Disclosure Statement Order, will set forth in detail, among other things, the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the record date for voting purposes and the applicable standards for tabulating Ballots. In addition, voting instructions accompany each Ballot. Each holder of a Claim entitled to vote on the Plan should read the Disclosure Statement, the Plan, the Disclosure Statement Order and the instructions accompanying the Ballots in their entirety before voting on the Plan. These documents contain important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to Section 1125 of the Bankruptcy Code.

**A. HOLDERS OF CLAIMS ENTITLED TO VOTE**

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired and that are not deemed to have rejected the proposed plan are entitled to vote to accept or reject a proposed plan. A class of Claims or Equity Interests is impaired if the Claims or Equity Interests constituting that

_____
[1] Court to set date and time in a separate Order.

- 2 -

acceptance by creditors in that class that hold: (i) at least two-thirds (2/3) in dollar amount, and (ii) comprise more than one-half (1/2) in number of the Claims that cast ballots for acceptance or rejection of the plan.

The vote of the class binds all members of the Class. Thus, if a Class votes to accept the Plan, the provisions of the Bankruptcy Code designed to protect rejecting classes cannot be invoked by members of that Class who voted to reject the Plan. Conversely, if a Class rejects the Plan, the member of such Class who voted to accept the Plan will be deprived of the benefits of the Plan if the Plan is not confirmed. Any subclass is treated as a separate Class for voting purposes.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtor reserves the right either to amend the Plan or to request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code or both. Section 1129(b) permits the confirmation of a plan of reorganization notwithstanding the rejection of a plan by one or more impaired classes of claims or equity interests. Under that Section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class, and that the value or benefits to be distributed to the members of such class will not be less than the members of that class would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Debtor believes that the Plan as proposed satisfies all of the statutory requirements imposed by Section 1129 of the Bankruptcy Code. Any objections to the Plan filed and prosecuted by a party in interest, however, may prevent or delay Confirmation if the Court allows the objection, or appeals of a denial of an objection are pursued.

- 4 -

THE DEBTOR BELIEVES THAT THE PLAN WILL MAXIMIZE THE DISTRIBUTION TO ITS CREDITORS, ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THE ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS. THE DEBTOR URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.

The Debtor's legal advisor is Butler, Snow, O'Mara, Stevens & Cannada, PLLC. The contact information is as follows:

Stephen W. Rosenblatt; MB No. 5676
John A. Crawford, Jr.; MB No. 10346
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
Post Office Box 22567
Jackson, MS 39225-2567
Telephone No.: 601-948-5711
Facsimile:  601-985-4500
steve.rosenblatt@butlersnow.com
jack.crawford@butlersnow.com
www.butlersnow.com

### B.  VOTING PROCEDURES

If you are entitled to vote to accept or reject the Plan, a Ballot will be sent for the purpose of voting on the Plan. Ballots should be returned to:

Clerk, United States Bankruptcy Court
Southern District of Mississippi
United States Bankruptcy Court
Post Office Box 2448
Jackson, Ms 39225-2448

or delivered to:

Clerk, United States Bankruptcy Court
Southern District of Mississippi
United States Bankruptcy Court
100 East Capitol Street
Room 101
Jackson, Ms 39201

- 5 -

IN ORDER TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE CLERK ON OR BEFORE 5:00 P.M. (central time) _____, 2009[2].

Any Claim in an impaired Class as to which an objection or request for estimation is pending or which is listed on the Schedules as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of voting on the Plan.

If you are a holder of a Claim entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please contact Stephen W. Rosenblatt at (601) 985-4504.

### C.  CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2009 at _____ _____.m.[3] (prevailing Central Time) before the Honorable Edward Ellington, United States Bankruptcy Court for the Southern District of Mississippi, Room 106, 100 East Capitol Street, Jackson, Mississippi. The Bankruptcy Court has directed that any objections to confirmation of the Plan must be served and filed so that they are received on or before_____, 2009 at 5:00 p.m.[4] (prevailing Central Time). The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

---

[2] Court to set date and time in a separate Order.

[3] Court to set date and time in a separate Order.

[4] Court to set date and time in a separate Order.

- 6 -

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE PLAN, PRIOR TO VOTING ON THE PLAN.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.

ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

THE DEBTOR BELIEVES THAT THE PLAN WILL ENABLE IT TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS. THE DEBTOR URGES CREDITORS TO VOTE TO ACCEPT THE PLAN AND BELIEVE THAT THE PLAN PROVIDES THE HIGHEST AND BEST RECOVERIES FOR THE DEBTOR'S CREDITORS.

IRS CIRCULAR 230 NOTICE:  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY

- 7 -

BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## II.  OVERVIEW OF THE PLAN

### A.  Summary of Classification and Treatment of Claims

The following table briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan:

| Class | Type of Claim or Equity Interest | Treatment | Estimated Allowed Amount[5] | Approximate Percentage Recovery |
|---|---|---|---|---|
|  | Administrative Expense Claims | Paid in full, in Cash, on the later of the Effective Date or when such Claim becomes Allowed; | $10,000.00 | 100% |
|  | Professional Compensation and Reimbursement Claims | Paid in full, in Cash, in accordance with the orders allowing any such Claim. | $125,000.00 estimated | 100% |
|  | Priority Tax Claims | Paid in full, in Cash, on the Effective Date, plus interest. | $12,000.00 | 100% |
| 1 | Other Priority Claims | Impaired. Paid 90% of principal amount of Allowed Claim on the Effective Date. | $11,500.00 | 75% |
| 2 | Secured Claims | No Claims | $0 | 0% |
| 3 | General Unsecured Claims | Impaired. Paid only to the extent of remaining funds in the Disbursing Account after the payment of all Administrative Expense Claims and Priority Claims and Class 1 and 2 Claims. Avoidance Actions may be assigned to the Committee for prosecution for the benefit of holders of Class 3 Claims. | $3,500,000 | unknown |
| 4 | Equity Interests | Impaired. All existing Equity Interests in the Debtor will be extinguished and retired and the Debtor shall be dissolved. Holders of Equity Interests will receive no distributions under the Plan. | $0 | 0% |

---

[5] The amounts set forth herein are the Debtor's estimates of the principal amounts owed based on the Debtor's books and records and proofs of claims filed to date, as well as anticipated professional compensation and reimbursement claims. Actual amounts will depend upon the final reconciliation and resolution of all Administrative Expense Claims and Claims. In addition, interest will accrue on these claims from the Petition Date until paid. Accordingly, the actual amounts may vary from the amounts set forth herein. The Debtor reserves the right to contest any Claim.

- 8 -

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 3 of 18
Case 08-03423-ee Doc 153 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Main Document Page 9 of 42
Case 08-03423-ee Doc 153 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Main Document Page 10 of 42

The Debtor believes that the proposed Chapter 11 Plan which provides for a 100% recovery to all holders of Allowed Administrative Expense Claims and a 75% recovery of the principal amount to the holder of all Other Priority Claims, which provides for the possibility of a more than insignificant recovery for General Unsecured Creditors, and which provides that the Equity Interests will retain nothing, is in the best interest of creditors and should be approved.

### B. CLAIMS AGAINST THE DEBTOR

In order to evidence the claims of secured and unsecured creditors against the Debtor, copies of Amended Schedules D, E & F, are attached as a part of collective Exhibit "B" to this Disclosure Statement. A copy of the Claims Register as of June 30, 2009 is attached as Exhibit "D" to this Disclosure Statement.

### C. ASSETS OF THE DEBTOR

In order to indicate the assets of the Debtor at the time the case was filed, the Debtor has attached copies of its Schedules A and B, as a part of collective Exhibit "B" to this Disclosure Statement. The Debtor has sold substantially all of its assets as more particularly described in Section III herein. As of May 31, 2009, the Debtor had approximately $165,000.00 in its checking account, and still had not received any of the Insurance Proceeds from the tornado or the fire, as more particularly described in Section III herein.

Furthermore, the Debtor owns all Avoidance Actions granted to a Trustee or debtor-in-possession by the Bankruptcy Code, including, but without limitation, all preferential transfers, fraudulent conveyances and post-petition avoidance causes of action. As more particularly set forth in Section IV(I)(6) below, the Debtor has offered to assign these Avoidance Actions, including causes of action against insiders of the Debtor, to the Creditors' Committee

- 9 -

for prosecution for the benefit of the holders of Class 3 claims. The Court will retain jurisdiction of these avoidance claims post-confirmation if the Creditors' Committee elects to accept these Avoidance Actions. Any recovery from the Avoidance Actions will be for the benefit of the Class 3 unsecured creditors, less all costs of litigation and collection. In the event the Creditors' Committee declines to accept these Avoidance Actions, such Avoidance Actions shall be considered released and discharged.

### III. GENERAL INFORMATION
### A. OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its equity interest holders. In addition to permitting the rehabilitation of a debtor, another purpose of chapter 11 is for the orderly liquidation of a debtor's business. A primary goal of chapter 11 is to promote equality of treatment for similarly situated creditors with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the commencement date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan is the principal objective of a chapter 11 case. A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the bankruptcy court binds the debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor. Subject to certain exceptions, the order approving confirmation of a plan discharges a debtor from any

- 10 -

debt that arose prior to the date of confirmation of the plan and substitutes therefore the obligations specified under the confirmed plan.

Certain holders of claims against and interests in a debtor are permitted to vote to accept or reject the plan. Prior to soliciting acceptances of the proposed plan, however, Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical investor of the relevant classes to make an informed judgment regarding the plan. The Debtor is submitting this Disclosure Statement to holders of Claims against and Equity Interests in the Debtor to satisfy the requirements of Section 1125 of the Bankruptcy Code.

### B. CORPORATE STRUCTURE

Warehouse 86, LLC is a for-profit limited liability company organized and existing under the laws of the State of Arizona which was organized on November 16, 2001. It was qualified to do and did business at various times in the states of Utah, Tennessee and Mississippi.

The name and position of each of the Debtor's mangers is as follows:

| Name | Position |
| --- | --- |
| Paul St. James | Chief Executive Officer and Manager |
| Joy St. James | Chief Operating Officer and Manager |
| Ernie Strahan | Chief Financial Officer and Manager |

### C. BACKGROUND FACTS; DESCRIPTION OF EVENTS LEADING TO BANKRUPTCY

Since 2004, the Company had a growth in yearly sales from about $1 million to an annualized rate of about $25 million as of June 2007. The Company derived its revenues as an online liquidator of distressed inventory and lost freight through its eBay online auction-based

- 11 -

storefront – "Bargainland." The Company had operated the Bargainland online store since 2001, eventually garnering the status as of July 2007 as the largest seller on eBay in terms of the number of closed transactions and total positive feedback from its customers. As of July 2007, the Company was processing and shipping its products from two warehouse facilities; one in Southaven, MS and one in Ogden, UT.

In June of 2007, eBay gave notice to the Company that it would begin to limit the number of monthly auctions the Company placed on eBay. This limitation began shortly after the notice was given; it began with a mandated 25% reduction in July with additional 25% reductions in each succeeding month through October, for a total auction reduction of approximately 75% of the number of auctions that the Company theretofore had on eBay. The basis eBay gave for this reduction was an assertion that the customer feedback rating of Bargainland was lower than eBay deemed appropriate, despite the fact that Bargainland's final rating of over 90% would be very attractive to almost any major retailer.

This massive reduction in the Company's venue for selling its products forced the Company to search for alternative venues, and it began that process in August 2007. After examining virtually every major online auction platform, the Company found that no site could handle even a fraction of the typically large volume of daily transactions to which it was accustomed to launching and closing. Therefore, in September 2007, the Company made the decision to launch a new online auction site, which began as "Bargainland Premier" and was later renamed "Bidtopia" in December 2007. The combined reduction in eBay auctions and startup of the Company's new auction site caused the Company's revenue from auction sales to drop from a monthly rate of about $2.1 million per month in May 2007 to less than $900,000 in January 2008.

- 12 -

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 4 of 18
Case 08-03423-ee  Doc 153  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Main Document  Page 13 of 42
Case 08-03423-ee  Doc 153  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Main Document  Page 14 of 42

On February 5, 2008, the Company suffered another financial blow. A tornado hit the Company's warehouse and office facility in Southaven, MS causing tremendous damage to the building, including removing a significant portion of the roof. The Company incurred significant damages to its inventory and equipment located within the building as a result of the tornado.

Six days later, on February 11, 2008, while dangerous sections of the roof structure were being cut away and removed, the roof to the facility was ignited by a contractor's workman who was cutting a seciton of the damaged roof with a welding torch. Because water supplies to the building had been disrupted due to the tornado, firefighters were unable to extinguish the blaze until the building and substantially all of its remaining contents were destroyed.

Although these were major blows to the Company, both operationally and financially, within two weeks, the Company had located, leased, and begun to setup a new temporary facility. During the next three months, the Company's remaining Southaven employees were heavily involved in cleanup and debris removal activities at the destroyed Southaven facility in addition to setting up the temporary facility.

Although the Company's new auction venue was beginning to stabilize revenues in January 2008, the loss of income from the business interuption from the tornado and the fire, coupled with the dramatic increase in expenses resulting from the tornado clean-up efforts, caused the Company's financial condition to deteriorate further.

Simultaneously with the launching of its new auction site, the Company began the process of seeking outside investment capital and resources to help stabilize the company. The Company's desire was to align itself with partners who could bring not only capital, but also access to clients and/or operational talent. In December 2007, the Company signed an agreement with Santi Company for Santi Company to act as the Company's consultant to assist it in assessing the value of the Company, to conduct due diligence services, to provide value-creation services, to assist the Company in finding funding sources, and to assist the Company in completing a transaction to provide additional capital for the Company. Over the next seven to eight months, the Company was exposed to a multitude of potential investors, many of which had access to clients, additional business, and operational resources. The Company's management spent untold hours preparing presentations and courting these potential investors. Despite all the time devoted to this process by the Company management, not a single formal offer was presented via Santi Company to the Company which would provide funding, access to clients, or operational talent. In July 2008, at Santi Company's request, the Company signed an agreement terminating its previous agreement with Santi Company. The effort spent by the Company's management in this funding search diverted resources and energy away from its building additional core business, thereby further weakening the Company.

Shortly after terminating its agreement with Santi Company, the Company management began to seek funding on its own accord. Eventually, the Company entered into an agreement in which an investor would purchase substantially all of the assets of the Company on or before the specified closing date of October 1, 2008. This sale, however, was never consummated, as the prospective buyer was unable to close by the October 1, 2008 deadline.

Within days after the collapse of that failed sales attempt, the Company began discussions with Ken May, which eventually led to the Asset Purchase Agreement contained in the Sale Motion in the Company's bankruptcy case. The Company's management believed that this sales agreement provided for the maximum funding return to the creditors of the Company. In light of then-present economic conditions in the United States and throughout the world, the management of the Company felt extremely fortunate to have found Mr. May with his desire and

agreement to purchase substantially all of the assets of the Company in order to provide the maximum return to the creditors of the Company.

In order to effectuate the sale of these assets at an attractive price, the Company filed its chapter 11 bankruptcy case on or about November 4, 2008.

### D. THE BANKRUPTCY CASE

On November 4, 2008 (the "Petition Date"), Debtor filed its Voluntary Petition under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continued to operate its business and manage its properties and assets as Debtor in Possession under the jurisdiction of the Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Court.

On November 19, 2008, the United States Trustee, pursuant to its authority under Section 1102 of the Bankruptcy Code, appointed an official committee of unsecured creditors (the "Creditors' Committee") (Dkt. # 062). The current members of the Creditors' Committee are:

| NAME OF CREDITOR | REPRESENTATIVE |
|---|---|
| Katt Worldwide Logistics, Inc.<br>4102 So. Mendenhall Road<br>Memphis, TN 38115<br>Telephone (901) 507-3918<br>Fax (901) 322-2938 | Teresa M. Shipe |
| Overstock.com, Inc.<br>6350 S. 3000 E.<br>Salt Lake City, Utah 54212<br>Telephone (801) 947-4341<br>Fax (801) 947-3144 | Edwin W. Christensen |
| Thomas Sales & Services, Inc.<br>2300 Sitler St., Bldg. 685<br>Memphis, TN 38114<br>Telephone (901) 774-6533<br>Fax (601) 774-6858 | Bobby Thomas |

Since the appointment of the Creditors' Committee, the Debtor, through its attorney, has advised the Creditors' Committee periodically concerning the administration of the chapter 11 case and has informed the Creditors' Committee with respect to certain aspects of its operations.

On November 4, 2008, the Debtor filed its Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA"). On June 30, 2009, the Debtor amended its Schedules. A copy of the Schedules, as amended, is attached hereto as Exhibit "B."

On November 4, 2008, the Company filed a number of First Day Motions, including its *Emergency Motion for a Preliminary and Final Order (I) Authorizing Post-Petition Financing on a Secured and Super Priority Basis Pursuant to 11 U.S.C. §§ 105, 361, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 507(b), (II) Granting Other Related Relief and (III) Scheduling a Final Hearing Pursuant to Rule 4001* (the "DIP Financing Motion"), in which the Company sought to obtain seeks interim and final approval to obtain post-petition financing from Kenneth A. May ("DIP Lender") in the form of a non-revolving Line of Credit in the original principal amount of up to Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "DIP Loan"). On November 7, 2008, the Court entered its Interim Order granting authority for the DIP Loan (Dkt. # 037) and on April 2, 2009, the Court entered it Final Order approving the DIP Financing Motion and granting authority for the Debtor to incur the DIP Loan (Dkt. # 116).

Thereafter, the Company filed its Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 U.S.C. §§ 105, 363 and 365 (the "Sale Motion") (Dkt. # 32). The Sale Motion was noticed to all creditors and parties in interest, and on December 10, 2008, the Court granted the Sale

Motion (the "Sale Order")(Dkt. # 070). The Sale Order authorized the sale of substantially all assets of the Company to the Buyer, Kenneth A. May or his designee. The Report of Sale (Dkt. # 076) reflected the December 11, 2008 closing at which the proceeds of $1,290,350.40 were distributed as follows:

1. A promissory note in the amount of $750,000.00 to Stuart M. Irby in satisfaction of the Irby Secured Indebtedness;

2. $440,350.38 to repay the DIP Loan to the Debtor; and

3. $100,000.00 to the Debtor's bankruptcy estate.

The total consideration of $1,290,350.40 was fair and adequate consideration for the assets that were sold, particularly since the sale was not subject to a financing contingency and the sale had only minimum conditions precedent to closing. Pursuant to the Sale Order, the Debtor deposited the $100,000.00 of sales proceeds in its debtor-in-possession checking account where it remains to this day, pending disbursement pursuant to Orders issued by the Bankruptcy Court.

After closing, the Debtor has resolved various claims against the bankruptcy estate. More importantly, the Debtor has continued to pursue the recovery of the Insurance Proceeds related to the fire and tornado of its Southaven, Mississippi facility. RadioShack, Inc. / SCK, Inc. ("SCK") also asserts a claim to a portion of those funds. Although this claim has not been fully resolved at this time, the Debtor believes that the claim will be resolved shortly so that the insurance proceeds can be paid jointly to the Debtor and to SCK pending either a settlement approved by the Bankruptcy Court after notice and a hearing or after an adjudication by the Bankruptcy Court as to the Debtor's rights to these Insurance Proceeds.

- 17 -

On November 6, 2008, the Clerk of the Bankruptcy Court sent a notice to all creditors and parties in interest advising them of the date of the meeting of creditors and also the deadline by which proofs of claim had to be filed: "**Deadline to File a Proof of Claim.** Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline: For all creditors (except a governmental unit): **2/3/09**; For a governmental unit: **5/5/09**." The Bar Date for any person or entity to file proofs of Claim based on prepetition Claims against the Debtor has now passed.

IV.    THE PLAN OF REORGANIZATION
   A.    INTRODUCTION

The Debtor believes that this chapter 11 Plan maximizes the distribution of assets to its creditors, and that creditors will receive as great as or a greater recovery from the estate of the Debtor than the recovery that they would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code or if the case were dismissed.

The Plan is filed simultaneously with this Disclosure Statement in the electronic version, but it is also being filed separately with the Court. The summary of the Plan set forth below is qualified in its entirety by reference to the provisions of the Plan.

Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and shall not, waive, compromise or limit any rights, claims or causes of action in the event the Plan is not confirmed.

   B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN OF REORGANIZATION

One of the key concepts under the Bankruptcy Code is that only claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan. This term is used

- 18 -

throughout the Plan and the descriptions below. In general, an "allowed" Claim or "allowed" Equity Interest simply means that the Debtor agrees, or in the event of a dispute that the Bankruptcy Court determines, that the Claim or Equity Interest, and the amount thereof, is in fact a valid obligation of the Debtor. Section 502(a) of the Bankruptcy Code provides that a timely filed claim or equity interest is automatically "allowed" unless the Debtor or other party-in-interest objects.

Section 502(b) of the Bankruptcy Code, however, specifies certain Claims that may not be "allowed" in bankruptcy even if a proof of claim is filed. For example, Bankruptcy Rule 3003(c)(2) prohibits the allowance of any Claim or Equity Interest that either is not listed on the Debtor's schedules or is listed as disputed, contingent or unliquidated, if the holder has not filed a proof of claim or equity interest before the established deadline.

The Bankruptcy Code requires that, for purposes of treatment and voting, a chapter 11 plan divides the different claims against, and equity interests in, the debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are usually classified together, as are equity interests of a substantially similar legal nature. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the "claims" and "equity interests" themselves, rather than their holders, are classified.

Under a chapter 11 plan of reorganization, the separate classes of claims and equity interests must be designated either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan, and the right to receive under the chapter 11 plan no less value than the holder would receive if the debtor were liquidated in a case under chapter 7 of the Bankruptcy Code. Under Section 1124 of the

- 19 -

Bankruptcy Code, a class of claims or interests is "impaired" unless the plan (i) does not alter the legal, equitable and contractual rights of the holders or (ii) irrespective of the holders' acceleration rights, cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable and contractual rights. Typically, this means that the holder of an unimpaired claim will receive on the later of the consummation date or the date on which amounts owing are actually due and payable, payment in full, in cash, with postpetition interest to the extent appropriate and provided for under the governing agreement (or if there is no agreement, under applicable nonbankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms. Thus, other than its right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been in had the debtor's case not been commenced.

Under the Debtor's Plan, the Claims in Class 1 (Other Priority Claims) and Class 3 (General Unsecured Non-Priority Claims) are impaired, and therefore, the holders of such Claims are entitled to vote to accept or reject the Plan. There are no Class 2 creditors (Secured Claims). Although Class 4 (Equity Interests) is also impaired. Because members of Class 4 will not receive or retain any property under the Plan or on account of their Equity Interests, however, they are not entitled to vote since under the Bankruptcy Code they are deemed to have rejected the Plan.

- 20 -

Consistent with these requirements, the Plan divides the Allowed Claims against, and Allowed Equity Interests in, the Debtor into the following Classes:

| Class | Claims |
|---|---|
| 1 | Other Priority Claims |
| 2 | Secured Claims – None |
| 3 | General Unsecured Non-Priority Claims |
| 4 | Equity Interests |

1. Unclassified Claims - Administrative Expense Claims. Administrative Expense Claims are the actual and necessary costs and expenses of the Debtor's Bankruptcy Case that are allowed under and in accordance with Sections 330, 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code. Such expenses will include, but are not limited to, actual and necessary costs and expenses of preserving the Debtor's estates, actual and necessary costs and expenses of operating the Debtor's businesses, indebtedness or obligations incurred or assumed by the Debtor in Possession during the Bankruptcy Case, compensation for professional services rendered and reimbursement of expenses incurred and any fees or charges assessed by the United States Trustee against the estates of the Debtor under Section 1930 of chapter 123 of title 28 of the Bankruptcy Code.

(a) United States Trustee Fees. Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable. The amount of these fees is dependent on the amount

- 21 -

of moneys disbursed by the Debtor. The Debtor estimates that these fees will be less than $10,000.00.

(b) Professional Compensation and Reimbursement Claims. Professional compensation and reimbursement claims are all Claims of entities seeking compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review and approve all requests for compensation and reimbursement. The Debtor has incurred approximately $92,500.00 in attorneys' fees through June 30, 2009. The Debtor will set aside a Professional Fees Fund of $125,000.00 from which the Professional Compensation and Reimbursement Claims can be paid. In addition, the Debtor has also paid a $40,000 retainer to its outside accounting firm for post-petition fees and expenses, and the charges of that accounting firm are not expected to exceed the amount of its retainer.

Pursuant to the Plan, holders of Allowed professional compensation and reimbursement claims will be paid in full, in cash, in such amounts as are allowed by the Bankruptcy Court in accordance with the order allowing any such Administrative Expense Claim.

(c) Priority Tax Claims. A Priority Tax Claim is any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code. Presently, the Debtor

- 22 -

anticipates having to pay the priority claim of the Tennessee Sate Tax Commission in the approximate principal amount of $12,250.00 as of the Petition Date, together with accrued interest on all of these claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive on the Effective Date, cash in an amount equal to such Allowed Priority Tax Claim, together with interest at the applicable rate under nonbankruptcy law.

2. Classified Claims.

(a) Class 1 - Other Priority Claims. Other Priority Claims include certain Claims that are granted priority in payment as specified in Section 507(a)(4), (5), (6) or (7) of the Bankruptcy Code, including certain wage, salary and other compensation obligations to employees of the Debtor up to a statutory cap of $10,000 per employee. The Debtor estimates that on the Effective Date, the Allowed Amount of such Claim, which is held by Eric Eilertsen for unpaid salary and a car allowance for the month of July 2008 under 11 U.S.C. § 507(a)(4), is in the amount of $11,500.00.

Class 1 is impaired by the Plan since the sole claimant will be paid only 75% of the principal amount of its Allowed Claim. Each holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan.

Although each holder of an Allowed Other Priority Claim is entitled to receive cash in an amount equal to 100% of such Allowed Other Priority Claim on the Effective Date, or as soon thereafter as is practicable, the holder of an

- 23 -

Allowed Other Priority Claim will be paid only 75% of the principal amount of its Allowed Claim.

(b) Class 2 - Secured Claims. There are no Secured Claims because the Debtor returned to all secured creditors the deposits or the merchandise which comprised the secured portion of their claims. To the extent that any creditor is was listed as a secured creditor or asserts a secured claim, it must resort to its collateral first, and the balance will be deemed to be a Class 3 General Unsecured Claim.

Accordingly, Class 2 is unimpaired by the Plan and no votes will be allowed or counted for any Class 2 Claims.

(c) Class 3 – General Unsecured Claims. General Unsecured Claims include any Claim against the Debtor other than an Administrative Expense Claim, an Other Priority Claim, or a Secured Claim. The Schedules listed General Unsecured Claims in the amount of $2,452,000, and to date, proofs of claims as General Unsecured Claims have been filed in the amount of approximately $5,255,963.48.

Class 3 is impaired by the Plan. It is unknown the extent the holders of such Claims will receive any distribution under the Plan, since they will receive a distribution only from the balance of the $100,000.00 of the Sales Proceeds and from the collection of the Insurance Proceeds after the payment of all administrative and priority claims, as well as the Claims of Class 1, or from the recovery of Avoidance Actions, if any, in the event the Creditors' Committee files its Notice of Acceptance of Avoidance Causes of Action as set forth in

- 24 -

Section IV(I)(6) herein. As a result, each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(d) Class 4 - Equity Interests. Equity Interests include Equity Interests in the Debtor as they existed on or immediately prior to the Effective Date. Class 4 is impaired by the Plan, but because such Interests will not receive any distribution under the Plan and will not receive or retain any property under the Plan or on account of such Equity Interest, such Equity Interests are deemed not to have accepted the Plan. On the Effective Date of the Plan, all existing Equity Interests in the Debtor will be cancelled.

C. MEANS OF IMPLEMENTING THE PLAN

1. Settlement of Claims. Pursuant to Bankruptcy Rule 9019, the Plan, including the classification, distribution and other benefits provided thereunder, constitutes a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.

2. Payment from Debtor-in-Possession Checking Account. As stated previously, the proceeds from the sale of the Debtor's Assets were placed in the debtor-in-possession checking account. Any disbursements of the sales proceeds can be made only pursuant to the order of the Bankruptcy Court. The payments required by this Plan will be made from funds in this account.

D. PLAN PROVISIONS GOVERNING DISTRIBUTION

1. Distribution on Account of Allowed Claims. Distributions in respect of Allowed Claims shall be made on the later of ten (10) days after the Effective Date of the Plan and the date a Claim becomes Allowed, except for the balance of Class 2 Claims,

- 25 -

which will be paid within ten (10) days after all professional fees and expenses have been paid. For purposes of treatment and Distribution under the Plan, all Allowed General Unsecured Claims held by a creditor will be aggregated and treated as a single Claim. Ernest K. Strahan III ("Strahan"), the Chief Financial Officer of the Debtor, will serve as the Disbursing Agent. At the written request of the Disbursing Agent, any creditor holding multiple Allowed General Unsecured Claims will provide to the Disbursing Agent, as the case may be, a single address to which any Distributions shall be sent.

2. Delivery of Distributions. Except as otherwise provided herein, all distributions under the Plan will be made by Disbursing Agent, who will not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Disbursing Agent will be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as necessary and proper to implement the provisions hereof.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim will be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor or Disbursing Agent have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. In the event that

- 26 -

any distribution to any holder is returned as undeliverable, the Disbursing Agent will use commercially reasonable efforts to determine the current address of such holder, but no distribution to such holder will be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution will be made to such holder without interest; provided that such distributions will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property will be returned by the Disbursing Agent and will be available to pay claims according to the priorities established by this Plan, and the Claim of any other holder to such property or interest in property will be discharged and forever barred.

3. Manner of Payment. At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by a check or, at the option of the Disbursing Agent, by wire transfer.

E. PROCEDURES FOR TREATING DISPUTED CLAIMS

1. Objections. Except insofar as a Claim is allowed under the Plan, the Debtor shall be entitled to object to Claims. The Bar Date has passed, and the Debtor must file its objection to any Claims on or before the date of the hearing on this Disclosure Statement.

2. No Distributions Pending Allowance. Notwithstanding any other provision of the Plan, if any portion of an Administrative Expense Claim or Claim is Disputed, at the Debtor's option, no payment or distribution provided in the Plan shall be made on account of such Administrative Expense Claim or Claim or any junior and subordinate

- 27 -

claim unless and until such Disputed Administrative Expense Claim or Claim is resolved and becomes Allowed.

3. Estimation of Claims. The Debtor may request at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any of the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

F. PROVISIONS GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1. Assumption or Rejection of Executory Contracts. The Bankruptcy Code empowers the Debtor to assume or reject their executory contracts and unexpired leases. All executory contracts and unexpired leases that existed between the Debtor and any person or entity will be deemed to be rejected by the Debtor as of the date of this Disclosure Statement, except for any executory contract or unexpired lease that has previously been assumed or rejected pursuant to an order of the Bankruptcy Court.

- 28 -

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 8 of 18
Case 08-03423-ee Doc 153 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Main Document Page 29 of 42
Case 08-03423-ee Doc 153 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Main Document Page 30 of 42

2. *Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.* Entry of the Order approving this Disclosure Statement will constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the foregoing section.

3. *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.* Proofs of claim for damages arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the attorneys for the Debtor on or before the date first set for the hearing on the approval of the Disclosure Statement. In the event that the rejection of an executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, will be forever barred and will not be enforceable against the Debtor.

G. TAX CONSEQUENCES

The tax consequences resulting from Confirmation of the Plan can vary greatly. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local and foreign tax statutes. No specific tax consequence to any creditor is represented, implied, or warranted. Each holder of a Claim or Equity Interest should seek professional tax advice, including the evaluation of recently enacted and pending legislation, because recent changes in taxation are apparently complex and lack authoritative interpretation.

THE DEBTOR ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR EQUITY INTEREST. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISERS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

H. CONDITIONS PRECEDENT TO EFFECTIVE DATE

1. *Condition Precedent to Effectiveness.* The Effective Date will not occur and the Plan will not become effective unless and until the Confirmation Order shall have been entered and shall have become a Final Order.

2. *Waiver of Condition Precedent.* The condition precedent of the Plan may be waived, in whole or in part, by the Debtor. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

3. *Satisfaction of Condition Precedent.* Any actions required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action. In the event that the condition precedent specified has not occurred or otherwise been waived, (i) the Confirmation Order will be vacated, (ii) the Debtor and all holders of Claims and interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtor's obligations with respect to Claims and Equity Interests will remain unchanged and nothing contained in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

- 29 -

- 30 -

I. EFFECT OF CONFIRMATION

1. *Vesting of Assets.* On the Effective Date, the property of the bankruptcy estate of the Debtor shall vest in the Disbursing Agent free and clear of all Claims, Liens, encumbrances, charges and other interests, subject, however, to the obligations as provided in the Plan.

2. *Binding Effect.* Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan and whether or not such holder is entitled to distribution under the Plan.

3. *Discharge of Claims.* The confirmation of the Plan does not discharge the Debtor from any existing debts and Claims asserted against the Debtor as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

4. *Exculpation.* Notwithstanding anything in the Plan to the contrary, as of the Effective Date, neither the Debtor, the Disbursing Agent, the Creditors' Committee, and their respective accountants and attorneys (but, in each case, solely in their capacities as such) will have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Bankruptcy Case, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Bankruptcy Case, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing will not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

The Plan does not provide for broad third-party releases, but rather, limited exculpation for acts during this chapter 11 case. The exculpation neither affects liability for prepetition actions nor absolves any parties from liability for gross negligence or willful misconduct. The Debtor believes the exculpation provision contained in the Plan is appropriate and reasonable.

5. *Injunction or Stay.* Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtor or Debtor in Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against any of the Disbursing Agent, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Disbursing Agent with respect to such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Disbursing Agent or against the property or interests in property of any Disbursing Agent with respect to such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Disbursing Agent or against the property or interests in property of any Disbursing Agent with respect to such Claim, and (v) pursuing any Claim released pursuant to the Plan.

6. *Preservation of Avoidance Actions.* As of the Effective Date, any avoidance actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code will be preserved for prosecution by, and assigned to, the Creditors' Committee for the benefit

- 31 -

- 32 -

of Class 3 Creditors under the Plan, but only if a majority of the members of the Creditors' Committee affirmatively file with the Bankruptcy Court a Notice of Acceptance of Avoidance Causes of Action at least five (5) business days prior to the date first set for the Confirmation Hearing.

7. Headings; Descriptions. The foregoing descriptions are for informational purposes only and are not an admission by, nor prejudice the rights of, the Debtor and/or the Disbursing Agent in all respects. Moreover, the descriptions contained herein and in any schedule provided in connection with the Plan are not exclusive. The inclusion or exclusion of any actions herein or on any such schedule is in no way a waiver of any Claim or cause of action whatsoever and all such Claims or causes of action are reserved and preserved. As of the date hereof, no determination has been made as to whether to pursue any such potential claims or causes of action.

J. RETENTION OF JURISDICTION

The Bankruptcy Court will have exclusive jurisdiction of all matters arising out of, or related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, the following purposes:

1. To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, and the allowance of Claims and Administrative Expense Claims resulting therefrom, and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising our of or relating to the Bankruptcy Case;

2. To determine any and all adversary proceedings, applications and contested matters;

3. To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331, and 503(b) of the Bankruptcy Code;

4. To hear and determine any timely objections to, or requests for estimation of, Disputed Administrative Expense Claims and Disputed Claims, in whole or in part;

5. To resolve disputes as to the ownership of any Administrative Expense Claim, Claim or Equity Interest;

6. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7. To issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

8. To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9. To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

10. To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date or by the Disbursing Agent after the Effective Date for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

11. To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

12. To enforce the automatic stay and to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

13. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

14. To hear and determine any rights, Claims or causes of action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory; and

15. To recover all assets of the Debtor and property of the Debtor's estates, wherever located.

K. MISCELLANEOUS PROVISIONS

1. Tax Reporting Requirements. Each holder of an Allowed Claim that is to receive a distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

2. Modification of Plan. Amendments or modifications of or to the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtor have complied with Section 1125 of the

Bankruptcy Code. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

3. Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void. In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. The Debtor reserves the right to withdraw the Plan with respect to any Debtor and proceed with confirmation of the Plan with respect to any other Debtor. In such event, nothing in the Plan will constitute or be

deemed a waiver or release of any Claims against or Equity Interests in such Debtor withdrawn from the Plan or any other person or to prejudice in any manner the rights of the withdrawn Debtor or any person in any further proceedings involving such withdrawn Debtor.

4. <u>Payment of United States Trustee's Fees</u>. The Debtor's Plan, pursuant to 28 U.S.C. §1930(a)(6), provides payment to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor during the Chapter 11 proceeding. In addition, the Plan provides that the Debtor will make payments to the United Sates Trustee of the appropriate sums required for all disbursements made by the Debtor pursuant to the terms of the proposed Plan, including the payment of post-confirmation quarterly fees required by Section 1129(a)(12) until such time as the case is converted, dismissed or closed by the Bankruptcy Court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Bankruptcy Court.

5. <u>Post-Confirmation Date Professional Fees and Expenses</u>. Pursuant to Section 1129(a)(4) of the Bankruptcy Code, the Debtor's attorneys and accountant shall file applications for compensation with the Bankruptcy Court up to and through the Confirmation Date of the Plan, but may submit an estimated amount of professional fees for the Debtor's attorneys and accountant/Disbursing Agent to conclude this Chapter 11 case through consummation. Only after notice and a hearing and Court approval of the applications will any payments be made to these professionals.

- 37 -

6. <u>Dissolution of the Creditors' Committee</u>. Unless the Creditors' Committee gives timely written notice to the attorney for the Debtor of its intention to accept and prosecute any avoidance actions under Chapter 5 of the Bankruptcy Code as more particularly set forth in Section IV(I)(6) above, on the Effective Date, the Creditors' Committee will be dissolved and the members thereof will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Case.

7. <u>No Transfer Tax</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer in anticipation of or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

8. <u>Expedited Tax Determination</u>. The Debtor and the Disbursing Agent are authorized under the Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

9. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the

- 38 -

rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi without giving effect to its principles of conflict of laws.

V. **LIQUIDATION ANALYSIS AND PLAN ALTERNATIVES**

The Debtor believes that the Plan affords creditors and interest holders the greatest potential for maximum realization of its assets, and therefore is in the best interest of creditors and interest holders. The Debtor has considered alternatives to the Plan, such as conversion of the case to a chapter 7 liquidation or requesting that the case be dismissed, but the Debtor believes that these alternatives do not afford creditors as great a realization potential as does this Plan. The increased administrative costs and the delay inherent in a conversion to a chapter 7 weigh against that approach, while a dismissal of the case would cause creditors to lose certain rights they have in this chapter 11 case. As a result, the Plan is really the most viable means of liquidating and distributing the Debtor's assets in an orderly way in accordance with the priorities established by the Bankruptcy Code.

A liquidation analysis in this case is unnecessary because the Debtor is liquidating its assets and dissolving. Set forth below, however, is a summary of the approximate amounts of the remaining assets of the Debtor anticipated to be available for distribution after the anticipated payment is made to the Tennessee Plaintiffs, as well as the approximate amount of the liabilities of the Debtor.

ASSETS:
Cash (DIP Checking Account)        $165,000.00
Insurance Proceeds                 $ To be Determined
Avoidance Claims                   <u>$ unknown and uncertain</u>
Total Assets                       <u>$To be Determined</u>

- 39 -

LIABILITIES:
Administrative Claims              $  150,000.00
Other Priority Claims              $    8,625.00
Secured Claims                     $        0.00
Unsecured Claims                   <u>$3,500,000.00</u>
Total Liabilities                  <u>$3,650,000.00</u>

VI. **BANKRUPTCY LAW CONSIDERATIONS AFFECTING THE DEBTOR**

A. <u>Risk of Non-Confirmation of the Plan of Reorganization</u>. Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate resolicitation of votes. Thus, there is some risk that this Plan will not be confirmed.

B. <u>Non-Consensual Confirmation</u>. As discussed above, in the event any impaired class of Claims or Equity Interests does not accept a plan, the Bankruptcy Court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired Classes.

C. <u>Risk of Non-Occurrence or Delay of the Effective Date</u>. Although the Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

**CONCLUSION**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR TO PROVIDE ADEQUATE INFORMATION TO THE CREDITORS AND EQUITY

- 40 -

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 11 of 18
Case 08-03423-ee  Doc 153  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Main Document  Page 41 of 42
Case 08-03423-ee  Doc 153  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Main Document  Page 42 of 42

SECURITY HOLDERS OF THIS ESTATE IN ACCORDANCE WITH 11 U.S.C. § 1125. IT IS BELIEVED THAT THIS DISCLOSURE STATEMENT PROVIDES INFORMATION OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WILL ALLOW CREDITORS AND EQUITY SECURITY HOLDERS IN EACH AFFECTED CLASS UNDER THE PROPOSED PLAN OF LIQUIDATION TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. CREDITORS AND EQUITY SECURITY HOLDERS, HOWEVER, SHOULD REVIEW CAREFULLY ANY RELEVANT PLEADINGS AND SHOULD ANALYZE CAREFULLY THE PLAN OF LIQUIDATION ITSELF PRIOR TO MAKING ANY DECISION AS TO WHETHER TO VOTE FOR THE PROPOSED PLAN OF LIQUIDATION.

The Debtor hopes and believes that the creditors have gained some understanding of the problems which faced the Debtor prior to the filing of this Chapter 11 case and of the causes which necessitated the filing of this bankruptcy case. The Debtor believes that this Plan represents a plan which complies with all the provisions of Chapter 11 and will provide for the greatest recovery for all of the Debtor's creditors.

WHEREFORE, the Debtor requests the Bankruptcy Court to approve the Disclosure Statement pursuant to 11 U.S.C. § 1125.

This, the 30th day of June, 2009.

    Respectfully submitted,
    WAREHOUSE 86, LLC

    By: /s/ Stephen W. Rosenblatt
    Stephen W. Rosenblatt
    One of Its Attorneys

OF COUNSEL:

Stephen W. Rosenblatt; MB No. 5676
John A. Crawford, Jr.; MB No. 10346
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
Post Office Box 22567
Jackson, MS 39225-2567
Telephone No.: (601) 948-5711
Facsimile: (601) 985-4500

- 41 -

## CERTIFICATE OF SERVICE

I, Stephen W. Rosenblatt, one of the attorneys for the Debtor, certify that I have this day caused a true and correct copy of the Disclosure Statement to be delivered via the means directed by the United States Bankruptcy Court CM/ECF System to the following person:

Ronald H. McAlpin, Esq.
Office of the United States Trustee
Suite 706, A. H. McCoy Federal Building
100 West Capitol Street
Jackson, MS 39269
Ronald.McAlpin@USDOJ.gov

THIS, the 30th day of June, 2009.

    By: /s/ Stephen W. Rosenblatt
    Stephen W. Rosenblatt (MB No. 5676)

Jackson 3601547v.1

- 42 -

Case 08-03423-ee  Doc 153-1  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Exhibit A  Page 1 of 33
Case 08-03423-ee  Doc 152  Filed 06/30/09  Entered 06/30/09 18:11:45  Desc Main Document  Page 1 of 33
Case 08-03423-ee  Doc 153-1  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc Exhibit A  Page 2 of 33
Case 08-03423-ee  Doc 152  Filed 06/30/09  Entered 06/30/09 18:11:45  Desc Main Document  Page 2 of 33

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

In re:

WAREHOUSE 86, LLC     CASE NO. 08-03423-EE
    Chapter 11
Debtor

### DEBTOR'S CHAPTER 11 PLAN

Warehouse 86, LLC (the "Debtor"), through its undersigned counsel, proposes the following Chapter 11 Plan pursuant to the provisions of 11 U.S.C. § 1121(a):

### ARTICLE I.
### DEFINITIONS

A. **Definitions.** The following Definitions apply to the Debtor's Disclosure Statement and Plan of Liquidation and all exhibits which may accompany the same, regardless of whether such terms are capitalized or lower case:

1.1. "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of the Bankruptcy Case Allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor-in-Possession during the Bankruptcy Case, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including without limitation, any fees or charges assessed against the bankruptcy estate under 28 U.S.C. § 1930.

1.2. "Allowed" means, with reference to any Claim against the Debtor, (a) any Claim against any Debtor that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of Claim either (i) as to which no objection has been or is interposed by the Bar Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim; (c) any Claim expressly allowed by a Final Order or under the Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims."

1.3. "Avoidance Actions" means those actions to avoid transfers under Chapter 5 of the Bankruptcy Code.

1.4. "Ballot" means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

1.5. "Bankruptcy Code" or the "Code" means Title 11 of the United States Code as amended and effective from time to time, as applicable to this Bankruptcy Case.

1.6. "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Chapter 11 case and all

-1- 

-2-

08-03423-ee  Dkt 160-1  Filed 07/14/09  Entered 07/14/09 18:13:07  Page 12 of 18

Case 08-03423-ee   Doc 153-1   Filed 06/30/09   Entered 06/30/09 18:49:18   Desc Exhibit A    Page 3 of 33
Case 08-03423-ee   Doc 152   Filed 06/30/09   Entered 06/30/09 18:11:45   Desc Main Document    Page 3 of 33

adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over this Bankruptcy Case.

1.7. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from time to time.

1.8. "Business Day" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9. "Buyer" means Warehouse Ventures 86, LLC, a Delaware limited liability company, which purchased certain Assets of the Company for the total consideration of One Million Two Hundred Ninety Thousand Three Hundred Fifty and 38/100 Dollars ($1,290,350.38) pursuant to the terms of the Sale Order

1.10. "Cash" means legal tender of the United States of America.

1.11. "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.12. "Chapter 11 Case" means the bankruptcy case which the Debtor commenced with a voluntary petition under Chapter 11 on November 4, 2008, and is pending in this Court in the case styled "In Re: Warehouse 86, LLC, Case No. 08-03423-EE."

1.13. "Claim" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.14. "Claimant" means the holder of a "Claim."

1.15. "Class" means the category of holders of claims or interests which are substantially similar to other claims or interests in such class, in which category has been segregated for treatment as part of this plan pursuant to Section 1122 of the Bankruptcy Code.

-3-

1.16. "Collateral" means any property or interest in property of the estate of the Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.17. "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in this bankruptcy case pursuant to Section 1102(a) of the Bankruptcy Code.

1.18. "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.19. "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.20. "Confirmation Order" means the order or orders of the Bankruptcy Court, confirming the Plan.

1.21. "Contingent Claim" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

1.22. "Creditor" is defined in Section 101(9) of the Bankruptcy Code and is the holder of one or more Claims.

1.23. "Debt" means liability on a Claim.

-4-

1.24. "Debtor" means Warehouse 86, LLC.

1.25. "Debtor in Possession" means the Debtor in its capacity as debtor in possession in the Bankruptcy Case under Sections 1107(a) and 1108 of the Bankruptcy Code.

1.26. "DIP Financing Order" means that Order entered by the Bankruptcy Court on November 7, 2008, styled *"Order Granting Emergency Motion for a Prelimina7y and Final Order (I) Authorizing Post-Petition Financing on a Secured and Super Priority Basis Pursuant to 11 U.S.C. §§ 105, 361, 363, 364 and 507(b), (II) Granting Other Related Relief and (III) Scheduling a Final Hearing Pursuant to Rule 4001"* [Docket No. 34], which granted Kenneth A. May ("DIP Lender") in the form of a non-revolving Line of Credit in the original principal amount of up to Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "DIP Loan") secured by a Superpriority Lien (as defied below) on all property of Debtor's estate of any and every nature, characterization or description whatsoever, including without limitation, all accounts, equipment, general intangibles, chattel paper, instruments, documents, cash, inventory, and all other personal property of the bankruptcy estate of Debtor, but not including any recovery actions of any of Debtor's estate under Chapter 5 of the Bankruptcy Code.

1.27. "Disbursing Account" means that certain checking account established by the Debtor at Bank of America in which the Sales Proceeds were deposited and from which the Sales Proceeds could be disbursed only upon further Order of the Court, after notice and a hearing to creditors and parties in interest.

1.28. "Disbursing Agent" means the Debtor.

1.29. "Disclosure Statement" means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be

-5-

amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.30. "Disclosure Statement Order" means the order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.31. "Disputed" means, with reference to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under Section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a proof of claim exceeds the amount of the Claim scheduled by the Debtor as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

1.32. "Effective Date of the Plan" or "Effective Date" means a Business Day selected by the Debtor on or after the Confirmation Date, but not later than thirty (30) days after the entry of the Final Order, on which (a) no stay of the Confirmation Order is in effect, and (b) the conditions precedent to the effectiveness of the Plan shall have been satisfied or waived.

-6-

08-03423-ee   Dkt 160-1   Filed 07/14/09   Entered 07/14/09 18:13:07   Page 13 of 18
Case 08-03423-ee   Doc 153-1   Filed 06/30/09   Entered 06/30/09 18:49:18   Desc Exhibit A   Page 7 of 33
Case 08-03423-ee   Doc 152   Filed 06/30/09   Entered 06/30/09 18:11:45   Desc Main Document   Page 7 of 33

1.33. "Equity Interest" means an equity interest in the Debtor existing on or immediately prior to the Effective Date.

1.34. "Filing Date" means November 4, 2008, the date the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

1.35. "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.36. "General Unsecured Claim" means any Claim for which no property of the Debtor or the Debtor's estate serves as security or collateral, and it also includes that portion of an Undersecured Claim in excess of the value of the Collateral securing the Claim. It also consists of the Claims for unsecured debts, liabilities, and demands or any character whatsoever owed by the Debtor, including, without limitation, all Claims noted on the Schedules filed

-7-

herein, all amendments hereto, and all Claims by persons having actual and/or constructive notice or knowledge of this Chapter 11 proceeding.

1.37. "General Unsecured Creditor" means a person, corporation, partnership or other entity that holds a General Unsecured Claim against the Debtor.

1.38. "Impaired Claim" means any class of claims or interests under the Plan unless the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. A Claim is an Impaired Claim unless it meets one of the exceptions specified in Section 1124 of the Bankruptcy Code.

1.39. "Insurance Proceeds" means those proceeds the Debtor receives from that certain insurance policy with Employers Mutual Insurance Companay (Policy No. 3A2-22-78-08) for damages suffered by the Debtor at its warehouse and office in Southaven, MS (i) on February 5, 2008 from a tornado which hit this facility, and (ii) six days later, on February 11, 2008, from a fire to that facility that started during the repair and cleanup operation while a subcontractor was removing dangerous sections of the roof structure that had been damaged by the tornado.

1.40. "Lien" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.41. "Local Bankruptcy Rules" means the Local Bankruptcy Rules for the Bankruptcy Court, as amended from time to time.

1.42. "Net Sales Proceeds" means the $100,000 net proceeds to the bankruptcy estate from the sale of the Assets pursuant to the Sale Order, as reflected in the Report of Sale filed with the Court (Docket No. 76) on December 17, 2008.

1.43. "Priority Claim" means a Claim entitled to priority in payment as specified in Section 507(a)(1)-(10) of the Bankruptcy Code.

-8-

1.44. "Petition Date" means November 4, 2008, which is the date the Debtor filed its Chapter 11 Petition for Relief under Chapter 11 of the Bankruptcy Code.

1.45. "Plan" and "Plan of Liquidation" means this Plan of Liquidation, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.46. "Priority Tax Claim" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.47. "Property of the Estate" is defined in Section 541 of the Bankruptcy Code.

1.48. "Pro Rata" means, with reference to any distribution on account of any Allowed Claim in any class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such class.

1.49. "Purchase Price" means the total consideration of One Million Two Hundred Ninety Thousand Three Hundred Fifty and 38/100 Dollars ($1,290,350.38) paid by the Buyer for substantially all of the Assets of the Debtor as reflected in the Report of Sale filed with the Court (Docket No. 76) on December 17, 2008.

1.50. "Sale Order" means that certain Order entered by the Bankruptcy Court dated December 10, 2008, styled *"Order Granting Debtor's Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 U.S.C. §§ 105, 363 and 365* (Docket No. 070), which authorized the Debtor to sell certain assets to the Buyer.

-9-

1.51. "Schedules" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Case, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.52. "SCK" means SCK, Inc., a Delaware corporation.

1.53. "Secured Claim" means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.54. "Secured Creditor" means those creditors who possess valid and perfected liens against any property of the Debtor, including, but not limited to, creditors holding fully secured claims and undersecured claims.

1.55. "Undersecured Claim" means a secured claim in an amount which is greater than the value of the collateral securing the claim.

1.56. "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

B.  **Interpretation; Application of Definitions and Rules of Construction.** The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to

-10-

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 14 of 18

Case 08-03423-ee  Doc 153-1  Filed 06/30/09  Entered 06/30/09 18:49:18  Desc
Exhibit A  Page 11 of 33
Case 08-03423-ee  Doc 152  Filed 06/30/09  Entered 06/30/09 18:11:45  Desc Main
Document  Page 11 of 33

the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect any provisions of the Plan.

### ARTICLE II.
### PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1. <u>Administrative Expense Claims</u>. Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable. Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor in Possession shall be paid in full on the Effective Date.

(a) <u>United States Trustee Fees</u>. With respect to amounts due to the Office of the United States Trustee, the Debtor shall pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) within ten (10) days of the Effective Date. The Debtor shall timely pay to the United States Trustee, any and all post confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court. At this time, the Debtor is current on these fees owed to the United States Trustee.

(b) <u>Professional Compensation and Reimbursement Claims</u>. The Debtor's professionals seeking an award by the Bankruptcy Court of compensation for services

-11-

rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file within fifteen (15) days of the Confirmation Order becomes a Final Order their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the Order relating to or Allowing any such Administrative Expense Claim on the Effective Date.

(c) <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive on the Effective Date, Cash in an amount equal to such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. To the extent any Allowed Priority Tax Claim is not so paid, it will be paid in full upon confirmation of the Plan, pursuant to 11 U.S.C. § 1129(a)(9)(A), on the Effective Date.

### ARTICLE III.
### CLASSIFICATION OF CLAIMS

3.1. <u>Classification of Claims</u>. The following table designates the classes of Claims against and Equity Interests in the Debtor and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

-12-

| Class | Designation | Claimants | Impairment | Entitled to Vote |
|---|---|---|---|---|
| Class 1 | Allowed Other Priority Claims | Yes | Impaired | Yes |
| Class 2 | Secured Claims | No | N/A | N/A |
| Class 3 | General Unsecured Claims | Yes | Impaired | Yes |
| Class 4 | Equity Interests | Yes | Impaired | No (deemed to reject) |

### ARTICLE IV.
### GENERAL PROVISIONS OF THE PLAN AND PROVISIONS FOR ALTERING THE RIGHTS OF CREDITORS AND SPECIFYING THE TREATMENT OF EACH CLASS

4.1. <u>Allowed Other Priority Claims (Class 1)</u>.

(a) <u>Impairment and Voting</u>. Class 1 is impaired by the Plan. Each holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan. A former member and employee of the Debtor, Eric Eilertsen, has a claim for unpaid wages, salaries or commissions and a car allowance for July 2008, in the total amount of $11,500. Eilertsen sold his interest in the Debtor to another member of the Company in July 2008. All other members of the Company who deferred their July compensation because of the cash flow problems the Company was having at that time have agreed to have their unpaid wages, salaries or commissions treated as unsecured claims.

(b) <u>Distributions</u>. Although each holder of an Allowed Other Priority Claim is entitled to receive Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Allowed Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable, the Debtor proposes to pay Class 1 claims only 75% of the principal amount of its allowed amount, or $8,625.00.

-13-

4.2. <u>Secured Claim (Class 2)</u>.

(a) <u>Impairment and Voting</u>. There are no Class 2 claims.

Each consignment creditor either agreed to let the Buyer sell the remaining consigned goods under a new contract or has accepted the return of its consigned goods to satisfy its claim to the extent such claim was s secured claim. Consequently, no consignment creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed for any consignment claim.

Each utility creditor has either offset the entire amount of its security deposit, or it has had the account assumed or has had a new account established by the Buyer. Consequently, no utility creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed for any utility account.

Each landlord creditor has either offset the entire amount of its security deposit for each lease that the Debtor has or will reject, or it has had the lease assumed or has had entered into a new lease with the Buyer. Consequently, no landlord creditor holds a Secured Claim against the Debtor, but is a General Unsecured Class 3 Creditor with respect to any unpaid balance owed under any lease.

The claim of Stuart M. Irby, a secured creditor who held a security interest in substantially all of the Debtor's assets, has been satisfied from the proceeds of the sale as provided by the Sale Order.

Any creditor otherwise classified as a "secured creditor" in the Schedules or which filed a secured claim will be treated as an Unsecured Creditor under this Plan to

-14-

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 15 of 18
Case 08-03423-ee Doc 153-1 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Exhibit A Page 15 of 33
Case 08-03423-ee Doc 152 Filed 06/30/09 Entered 06/30/09 18:11:45 Desc Main Document Page 15 of 33

the extent that it has an Allowed Claim and any distributions will be permitted as Class 3 Claims.

(b) <u>Distributions</u>. There are no distributions to creditors in Class 2 because there are no unsecured creditors.

4.3. <u>General Unsecured Creditors (Class 3)</u>.

(a) <u>Impairment and Voting</u>. Class 3 is impaired by the Plan. Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. These allowed claims will be paid Pro Rata, but only to the extent of any remaining funds in the Disbursing Account after the payment in full of the following: (i) all Administrative Expense Claims set forth in Section 2.1 above; (ii) a reserve for Administrative Expense Claims to be incurred until the Bankruptcy Case is closed; and (iii) the Claims of Class 1 and 2. In addition, unless not accepted by the Creditors' Committee as specifically set forth in Article V, Section 5.3 hereof, all Avoidance Actions, if any, are transferred to and may be prosecuted by the Creditors' Committee for the benefit of Class 3 creditors under this Plan. If not timely accepted by the Creditors' Committee, as specifically set forth in Article V, Section 5.3 hereof, any Avoidance Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code are hereby released.

4.4. <u>Equity Interests (Class 4)</u>.

(a) <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Because the holder of any Equity Interest will not receive or retain any property under the Plan or on account of such Equity Interest, such Equity Interests are deemed not to have accepted

-15-

the Plan. Therefore, the holders of any Equity Interest are not entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Within ninety (90) days after the Effective Date, all existing Equity Interests in the Debtor will be extinguished and retired and the Debtor shall be dissolved. Holders of Equity Interests will receive no distributions under the Plan.

### ARTICLE V.
### MEANS OF IMPLEMENTATION

5.1. <u>Sources of Payments</u>. The are three primary sources of payments by which the Plan will be funded: (1) moneys remaining in the Debtor's account at the time of the sale of substantially all of its assets to the Buyer (the "Operating Fund Balance"); (2) the Sales Proceeds; and (3) the net amount of any Insurance Proceeds the Debtor may receive.

5.2. <u>Disbursing Account</u>. Pursuant to the Sale Order, the Debtor placed the Sales Proceeds in a Debtor-in-Possession account which moneys, except as set forth in the Sale Order, could be disbursed only upon further Order of the Court, after notice and a hearing to creditors and parties in interest. This fund also contained the Operating Fund Balance. The Insurance Proceeds, when collected will also be placed in this Disbursing Account. The Debtor shall fund payments to Creditors under this Plan from the Disbursing Account.

5.3. <u>Preservation of Avoidance Actions</u>. As of the Effective Date, any Avoidance Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code will be preserved for prosecution by, and assigned to, the Creditors' Committee, but only if a majority of the members of the Creditors' Committee affirmatively file with the Court a Notice of Acceptance of Avoidance Causes of Action at least five (5) business days prior to the date first set for the Confirmation Hearing. If accepted by the Creditors' Committee, the Debtor will transfer to the

-16-

Creditors' Committee all of the rights and powers held by it as Debtor-in-Possession to institute, prosecute, and/or enforce after confirmation any Avoidance Actions which exist in the Debtor's favor as Debtor-in-Possession (which are the same claims or causes of action that exist in the favor of a trustee in bankruptcy) regardless of whether the Debtor has instituted or begun to enforce such claims or causes of action.

### ARTICLE VI.
### FEASIBILITY OF THE PLAN

6.1. <u>Feasibility</u>. Because the Debtor anticipates havinng sufficient moneys in the Disbursing Account after the payment of administrative and priority claims, to pay the Claims of Class 1 in full and to pay a portion of the Claims of Class 3 to the extent of any remaining funds in the Disbursing Account after the payment in full of the Claims of Class 1, and because all existing Equity Interests in the Debtor (Class 4) will be extinguished and retired and the Debtor shall be dissolved, the Plan is feasible and there is no feasibility issue.

### ARTICLE VII.
### PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

7.1. <u>Voting of Claims</u>. Each holder of an Allowed Claim in an impaired class of Claims that is entitled to vote on the Plan pursuant to Article III and Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan.

7.2. <u>Nonconsensual Confirmation</u>. If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both.

7.3. <u>Distributions on Account of Allowed Claims</u>. Distributions with respect to Allowed Claims shall be made on the later of: (i) the date provided in Article IV; or (ii) the date

-17-

a Claim becomes allowed. All Allowed Claims in a particular class held by a creditor shall be aggregated and treated as a single Claim. Any creditor holding multiple Allowed Claims shall provide to the Debtor a single address to which any distribution shall be sent. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

7.4. <u>Disbursing Agent</u>. Ernest K. Strahan, the Chief Financial Officer for the Debtor, shall act as the Disbursing Agent under this Plan. Unless otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of his duties. The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as necessary and proper to implement the provisions hereof.

7.5. <u>Delivery of Distributions</u>. Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. In the event that any distribution to any

-18-

08-03423-ee Dkt 160-1 Filed 07/14/09 Entered 07/14/09 18:13:07 Page 16 of 18
Case 08-03423-ee Doc 153-1 Filed 06/30/09 Entered 06/30/09 18:49:18 Desc Exhibit A Page 19 of 33
Case 08-03423-ee Doc 152 Filed 06/30/09 Entered 06/30/09 18:11:45 Desc Main Document Page 19 of 33

holder is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall be returned by the Disbursing Agent to the Debtor and shall be distributed to such Classes in the priorities set forth herein, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

7.6. Manner of Payment. At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or, at the option of the Disbursing Agent, by wire transfer.

### ARTICLE VIII.
### PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN

8.1. Objections to Claims. Except insofar as a Claim is allowed under the Plan, the Debtor and the Committee shall be entitled to object to Claims. The Bar Date has passed, and the Debtor and the Committee reserves the right to file any objection to any Claims on or before the date of the hearing on the Disclosure Statement.

8.2. No Distributions Pending Allowance. Notwithstanding any other provision of the Plan, if any portion of an Administrative Expense Claim or a Claim is Disputed, at the Debtor's option, no payment or distribution provided in the Plan shall be made on account of such Administrative Expense Claim or Claim unless and until such Disputed Administrative Expense Claim or Claim is resolved and becomes Allowed.

8.3. Estimation of Claims. The Debtor may request at any time that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section

-19-

502(c) of the Bankruptcy Code regardless of whether any of the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

### ARTICLE IX.
### PROVISIONS GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1. Assumption or Rejection of Executory Contracts. The Bankruptcy Code empowers the Debtor to assume or reject their executory contracts and unexpired leases. All executory contracts and unexpired leases that existed between the Debtor and any person or entity will be deemed to be rejected by the Debtor as of the Filing Date, except for any executory contract or unexpired lease that has previously been assumed pursuant to an order of the Bankruptcy Court.

9.2. Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. Entry of the Order approving this Disclosure Statement will constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the foregoing section.

-20-

9.3. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. Proofs of claim for damages arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the attorneys for the Debtor on or before ten (10) days after the date first set for the hearing on the approval of the Disclosure Statement. In the event that the rejection of an executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, will be forever barred and will not be enforceable against the Debtor.

### ARTICLE X.
### CONDITIONS PRECEDENT TO EFFECTIVE DATE

10.1. Condition Precedent to Effectiveness. The Effective Date will not occur and the Plan will not become effective unless and until the Confirmation Order shall have been entered and shall have become a Final Order.

10.2. Waiver of Condition Precedent. The condition precedent of the Plan may be waived, in whole or in part, by the Debtor. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.3. Satisfaction of Condition Precedent. Any actions required to be taken on the Effective Date will take place and will be deemed to have occurred simultaneously, and no such action will be deemed to have occurred prior to the taking of any other such action. In the event that the condition precedent specified has not occurred or otherwise been waived, (i) the Confirmation Order will be vacated, (ii) the Debtor and all holders of Claims and interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) the Debtor's obligations with respect to Claims and Equity Interests will remain unchanged and nothing contained in the Plan will

-21-

constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

### ARTICLE XI.
### EFFECT OF CONFIRMATION

11.1. Vesting of Assets. On the Effective Date, the Debtor, their properties and interests in property, and their operations will be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the estates of the Debtor will vest in the Disbursing Agent free and clear of all Claims, Liens, encumbrances, charges and other interests, but specifically subject to the obligations of the Debtor and the Disbursing Agent as provided in the Plan.

11.2. Binding Effect. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan will bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan and whether or not such holder is entitled to distribution under the Plan.

11.3. Discharge of Claims. The confirmation of the Plan does not discharge the Debtor of any existing debts and Claims, as provided by Section 1141(d)(3)(A) of the Bankruptcy Code.

11.4. Exculpation. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, neither the Debtor, the Disbursing Agent, the Creditors' Committee, and their respective accountants and attorneys (but, in each case, solely in their capacities as such) will have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Bankruptcy Case, the formulation, dissemination, confirmation, consummation or administration of the Plan, property

-22-

to be distributed under the Plan or any other act or omission in connection with the Bankruptcy Case, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing will not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence. The Plan does not provide for broad third-party releases, but rather, limited exculpation for acts during this chapter 11 case. The exculpation neither affects liability for prepetition actions nor absolves any parties from liability for gross negligence or willful misconduct.

   11.5. _Injunction or Stay_. Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against the Debtor or Debtor in Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against any property of the Debtor or against the Disbursing Agent, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any property of the Debtor or against the Disbursing Agent with respect to such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any property of the Debtor or against the Disbursing Agent with respect to such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or the Disbursing Agent with respect to such Claim, and (v) pursuing any Claim released pursuant to the Plan.

-23-

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

   12.1. _Tax Reporting Requirements_. Each holder of an Allowed Claim that is to receive a distribution under the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

   12.2. _Modification of Plan_. Amendments or modifications of or to the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtor have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided: (i) the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

   12.3. _Revocation or Withdrawal of the Plan_. The Debtor reserves the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date. If the Debtor revokes or

-24-

withdraws the Plan in whole prior to the Confirmation Date, then the Plan will be deemed null and void. In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. The Debtor reserves the right to withdraw the Plan with respect to any Debtor and proceed with confirmation of the Plan with respect to any other Debtor. In such event, nothing in the Plan will constitute or be deemed a waiver or release of any Claims against or Equity Interests in such Debtor withdrawn from the Plan or any other person or to prejudice in any manner the rights of the withdrawn Debtor or any person in any further proceedings involving such withdrawn Debtor.

   12.4. _Payment of United States Trustee's Fees_. The Debtor's Plan, pursuant to 28 U.S.C. §1930(a)(6), provides payment to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor during the Chapter 11 proceeding. In addition, the Plan provides that the Debtor will make payments to the United Sates Trustee of the appropriate sums required for all disbursements made by the Debtor pursuant to the terms of the proposed Plan, including the payment of post-confirmation quarterly fees required by Section 1129(a)(12) until such time as the case is converted, dismissed or closed by the Court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.

   12.5. _Professional Fees and Expenses_. Pursuant to Section 1129(a)(4) of the Bankruptcy Code, the Debtor's attorneys and accountant shall file applications for compensation with the Bankruptcy Court from the date through which their last application covers up to and

-25-

through the Confirmation Date of the Plan, but may submit and have the Court approve an estimated amount of professional fees for the Debtor's attorneys and accountant to conclude this Chapter 11 case through the consummation of the Plan and the closing of the Bankruptcy Case. Only after notice and a hearing and Court approval of the applications will any payments be made to any of these professionals.

   12.6. _Dissolution of the Creditors' Committee_. Unless the Creditors' Committee gives timely written notice to the attorney for the Debtor of its intention to accept and prosecute any Avoidance Actions under Chapter 5 of the Bankruptcy Code as more particularly set forth in Article V, Section 5.3 above, on the Effective Date, the Creditors' Committee will be dissolved and the members thereof will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Bankruptcy Case.

   12.7. _No Transfer Tax_. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer in anticipation of or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

   12.8. _Expedited Tax Determination_. The Debtor and the Disbursing Agent are authorized under the Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all

-26-

08-03423-ee    Dkt 160-1    Filed 07/14/09    Entered 07/14/09 18:13:07    Page 18 of 18

Case 08-03423-ee    Doc 153-1    Filed 06/30/09    Entered 06/30/09 18:49:18    Desc
                                  Exhibit A    Page 27 of 33
Case 08-03423-ee    Doc 152    Filed 06/30/09    Entered 06/30/09 18:11:45    Desc Main
                                  Document    Page 27 of 33

taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

12.9. Substantial Consummation. Upon completion of payments to the creditors under this Plan will be deemed substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code. Upon full consummation, an appropriate Order will be entered closing the case as set out in this Plan.

12.10. Final Report. Following confirmation, a final report will be filed in accordance with Bankruptcy Rule 2015.

12.11. Severability of Plan Provisions. In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

12.12. Cancellation of Equity Interests. On the Effective Date, (a) all existing Equity Interests shall, without further act or action by any party, be cancelled, annulled and extinguished, and any certificates representing such cancelled, annulled and extinguished Equity Interests shall be null and void; and (b) the Debtor shall be deemed dissolved. As soon following the Effective Date as practicable, on behalf of the Debtor, the Disbursing Agent is authorized: (i) to execute and file, or cause to be executed and filed, such articles or certificates of dissolution,

-27-

and such other documents as are necessary to effect, complete or evidence its dissolution under the applicable laws of the States of Arizona, Tennessee and Mississippi, and (ii) to file any required, final federal, state and local tax returns, and to take such other action as shall be necessary or appropriate to effect a final determination of any amounts of federal, state or local taxes owed by the Debtor.

12.13. Removal of Officers and Directors. On the Effective Date, any then-currently serving directors, officers, managers or other members of any governing body of the Debtor will be removed from any office, directorship, or any other position held by any such person with the Debtor and will be relieved of any further duties or obligations with respect to the Debtor, except as specifically provided in the Plan to wind up the affairs of and to accomplish the dissolution of the Debtor.

12.14. Authority of Disbursing Agent to Wind up Affairs of Debtor. The Disbursing Agent will be authorized to execute, deliver, file and record such contracts, instruments, assignments, conveyances, bills of sale, releases, indentures, certificates and any other agreement or document and take such action reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without the need for further action by the board of directors or other managing body of the Debtor.

12.15. Headings; Descriptions. The foregoing descriptions are for informational purposes only and are not an admission by, nor prejudice the rights of, the Debtor and/or the Disbursing Agent in all respects. Moreover, the descriptions contained herein and in any schedule provided in connection with the Plan are not exclusive. The inclusion or exclusion of any actions herein or on any such schedule is in no way a waiver of any Claim or cause of action whatsoever and all such Claims or causes of action are reserved and preserved. As of the date

-28-

hereof, no determination has been made as to whether to pursue any such potential claims or causes of action.

12.16. Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi without giving effect to its principles of conflict of laws.

12.17. Exhibits/Schedules. All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

12.18. Notices. All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Warehouse 86, LLC, addressed to:

Warehouse 86, LLC
Post Office Box 16692
Jackson, MS 39236

With a copy to:

Stephen W. Rosenblatt
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
Post Office Box 2257
Jackson, MS 39225-2567
Telecopy No.: (601) 985-4500
Telephone No.: (601) 985-4504
Email: steve.rosenblatt@butlersnow.com

-29-

### ARTICLE XIII
### JURISDICTION OF BANKRUPTCY COURT

13.1. Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Reorganization Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to this Chapter 11 case;

(b) To determine any and all adversary proceedings, applications and contested matters, including but not limited to, litigation with respect to the disputed claims or claims of the Debtor against any third parties;

(c) To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331 and 503(b) of the Bankruptcy Code;

(d) To hear and determine any timely objections to, or requests for estimation of disputed Administrative Expense Claims and disputed Claims, in whole or in part and otherwise resolve disputes as to Administrative Expense Claims;

(e) To resolve disputes as to the ownership of any Administrative Expense Claim or Claim;

(f) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

-30-