**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :
                                                             :
WAREHOUSE 86, LLC,                                           :
                                                             :
              Debtor.                                        :
                                                             :
------------------------------------------------------------ x
```

**Case No. 08-03423-EE**

**Chapter 11**

**OBJECTION OF RADIOSHACK CORPORATION AND SCK, INC. TO THE**
**DISCLOSURE STATEMENT FOR DEBTOR'S CHAPTER 11 PLAN (Dkt. #153)**

RadioShack Corporation and SCK, Inc., formerly SC Kiosks, Inc. (collectively, "SCK"),

as and for their Objection to the Disclosure Statement for Debtor's Chapter 11 Plan (Dkt. #153)

(the "Disclosure Statement"), respectfully represent:

**Background**

1.      The Debtor commenced this case by filing a voluntary petition for reorganization

relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy

Code"), on November 4, 2008 (the "Petition Date").

2.      On December 11, 2008, the Debtor sold substantially all of its assets to Kenneth

A. May for a total consideration of $1,290,350.40, pursuant to the Report of Sale (Dkt. #76).

The Debtor is authorized to manage its remaining assets as a debtor in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor's most significant remaining asset, other than potential Avoidance

Actions[1], are the Insurance Proceeds related to the fire and tornado losses to the Debtor's

Southaven Warehouse. SCK, as sublessor under a sublease with the Debtor and as loss payee

---

[1] Capitalized terms used and not defined herein shall have the meanings given to them in the Disclosure Statement.

under the Debtor's casualty insurance policy, submits that it alone is entitled to the Insurance Proceeds to the extent of its interest therein and that any of the Insurance Proceeds due SCK are not subject to disbursement to any other creditors of the Debtor.  Further, SCK contends that it is entitled to offset the amount owed by the Debtor by the Debtor's Security Deposit.

4.      SCK's claim arose as follows: On June 17, 2003, Industrial Developments International, Inc. ("Industrial"), as Landlord, and Wireless Retail, Inc. ("Wireless"), as Tenant, entered into a Lease Agreement (the "Lease") for certain space located at 481 Airport Industrial Drive, Suite 110, Southaven, Mississippi (the "Southaven Warehouse").

5.      Wireless subsequently assigned its interest in the Lease to SCK.  RadioShack Corporation guaranteed the obligations of SCK, its wholly owned subsidiary, under the Assignment.

6.      Prior to the Petition Date, SCK subleased the Southaven Warehouse, along with certain equipment located therein, to the Debtor, pursuant to an agreement dated and effective as of July 11, 2006 (the "Sublease").

7.      The Debtor paid SCK a security deposit of $35,407.80 (the "Security Deposit"), which SCK is currently holding.

8.      Under the Sublease the Debtor was required to carry and maintain, among other things, fire and casualty insurance and "all risk" property insurance covering all items in the Southaven Warehouse constructed by SCK, including the subleased equipment, in an amount not less than 100% of their full replacement value.  Further, the Debtor was to include SCK as an additional insured or loss payee in all such insurance policies.

9.      On February 5, 2008, a tornado struck the Southaven Warehouse damaging the building, the subleased equipment and other property of SCK.  Then, on February 11, 2008,

- 2 -

while repairing the tornado damaged building, a welding subcontractor caused a fire to erupt resulting in further damage to the Southaven Warehouse, the subleased equipment and other property of SCK.

10.     The Sublease was in full force and effect at the time of both the tornado and the fire.  The Sublease, however, was terminated prior to the Petition Date.

11.     As a result of the tornado and the fire to the Southaven Warehouse, SCK incurred (i) a loss of approximately $2,765,100 and (ii) repair expenses of $59,953.00.

12.     At the time of the tornado and fire losses, the Debtor carried a property insurance policy with Employers Mutual Casualty Company a/k/a EMC Insurance Companies ("EMC") with a limit of $1,000,000.00 (the "Policy").

13.     The Policy lists SCK as a loss payee.

14.     On or about July 24, 2009, EMC issued a check in the amount of $1,060,000 for the fire loss to the Debtor's Southaven Warehouse.  The check is payable jointly to SCK and the Debtor.   The check represents the insurance proceeds for business personal property loss of $1,000,000, business income loss of $50,000 and debris removal of $10,000.

15.     On or about August 14, 2009, EMC issued a separate check in the amount of $1,007,400 payable jointly to SCK and the Debtor for the tornado loss to the Debtor's Southaven Warehouse.

16.     By agreement of SCK and the Debtor, the Insurance Proceeds are to be deposited into the registry of the Court.

17.     Pursuant to the Debtor's Schedules, RadioShack and SCK have a secured claim to the Security Deposit, though SCK's interest in the Security Deposit is scheduled as contingent,

unliquidated and disputed.  Additionally, SCK is listed as having a contingent, unliquidated and disputed unsecured nonpriority claim to the "Rent Deposit."

18.     Further, RadioShack is listed in the Schedules as having a contingent, unliquidated and disputed unsecured nonpriority claim to a "Disputed Lease Obligation."

## Applicable Law

19.     A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).  What constitutes adequate information is subjective and made on a case by case basis.  See, e.g., In re Cajun Elec. Power Co-op., Inc., 150 F.3d 503, 518 (5th Cir. 1998) (citing Texas Extrusion Corp. v. Lockheed Corp., 844 F.2d 1142, 1157 (5th Cir. 1988).  The determination of what is adequate information is left to the sound discretion of the court.  Id.

## Objection

20.     SCK contends that in certain material respects the Disclosure Statement fails to provide sufficient information to enable a reasonable investor to make an informed judgment about the Plan, and thus should not be approved.

21.     Specifically, SCK objects to the adequacy of the Disclosure Statement on the following grounds:

(a)     the Disclosure Statement requires all holders of a claim in an impaired Class to which an objection is raised, or whose claim is listed on the Debtor's schedules as unliquidated,

disputed or contingent, to obtain a Court order temporarily allowing such claim for the purpose of voting;

(b)      the Disclosure Statement and the Plan fail to adequately address SCK's interest in the Insurance Proceeds;

(c)      the Disclosure Statement fails to list any potential Avoidance Actions;

(d)      the procedure for the pursuit of Avoidance Actions, under the Disclosure Statement and the Plan, is likely to result in the premature discharge of any Avoidance Actions;

(e)      the Disclosure Statement and the Plan appoint a manager of the Debtor as the Disbursing Agent;

(f)      the Disclosure Statement fails to evidence the claims of insiders of the Debtor;

(g)      the Disclosure Statement and the Plan fail to address escrowing the Insurance Proceeds, which are payable jointly to SCK and the Debtor, with the Court;

(h)      the Disclosure Statement provides that the Insurance Proceeds shall vest in the Disbursing Agent upon Plan confirmation; and

(i)      the Disclosure Statement provides the Debtor a discharge upon Plan confirmation.

22.      *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to Plan confirmation rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, SCK reserves its right to assert such objection, as well as other objections, to Plan confirmation.*

## I.     The Disclosure Statement Wrongly Requires Certain Claimants To Seek Court Authorization To Vote On The Plan

23.      The Disclosure Statement provides in pertinent part:

Any Claim in an impaired Class as to which an objection or request for estimation is pending or which is listed on the Schedules as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an

- 5 -

order of the Bankruptcy Court temporarily allowing such Claim for the purpose of voting on the Plan.

(Disclosure Statement 6)

24.     Whether a claimant is entitled to vote is a matter left to the discretion of the court. In re Goldstein, 114 B.R. 430 (Bankr. E.D. Pa.1990) (citing In re Amarex, 61 B.R. 301 (Bankr. W.D. Okla.1985); In re Goldstein, 114 B.R. 430 (Bankr. E.D. Pa. 1990); In re Coral Petroleum, Inc., 60 B.R. 377 (Bankr. S.D. Tex. 1986); In re Pizza of Hawaii, Inc., 761 F.2d 1374 (9th Cir.1985)).  A claimant should not be precluded from voting on a chapter 11 plan merely because it fails to file a motion for temporary allowance of its claim under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.  See id.

25.     Thus, the Court should not approve the Disclosure Statement if it requires certain claimants to seek temporary allowance of their claims prior to voting on the Plan.

**II.     The Disclosure Statement Fails to Acknowledge SCK's Interest In The Insurance Proceeds**

26.     As mentioned above, SCK is named as a loss payee under the Policy, and the Insurance Proceeds are payable jointly to SCK and the Debtor.  The Insurance Proceeds are for the losses incurred as a result of the tornado and fire at the Southaven Warehouse.  SCK incurred a combined loss of $2,825,053 as a result of the tornado and fire at the Southaven Warehouse. Thus, SCK is entitled to the Insurance Proceeds.

27.     Moreover, SCK, to the extent of its interest in the Insurance Proceeds, is the only creditor of the Debtor entitled to the Insurance Proceeds.  See In re Equinox Oil Co., Inc., 300 F.3d 614 (5th Cir. 2002).  Indeed, to the extent the Insurance Proceeds are payable to SCK, such proceeds are not property of the Debtor's bankruptcy estate.  See id.; see also In re Edgeworth, 993 F.2d 51 (5th Cir. 1993).

28.     While the Disclosure Statement mentions that SCK asserts a claim to the Insurance Proceeds and that they will be paid jointly to SCK and the Debtor (Disclosure Statement 17), the Disclosure Statement does not list SCK's claim to the proceeds in the Schedules.   The Schedules provide that SCK has a contingent, unliquidated and disputed unsecured nonpriority claim to a "Disputed Lease Obligation."  Assuming the "Disputed Lease Obligation" is referring to the Insurance Proceeds, SCK's interest to the Insurance Proceeds is more than a general unsecured claim.   SCK's claim to the Insurance Proceeds should be placed in a secured class by itself, or at least distinguished from the general unsecured claims.

29.     The Court should deny approval of the Disclosure Statement until SCK's claim to the Insurance Proceeds is appropriately set forth in the Schedules.

**III.     The Disclosure Statement Fails To Set Forth Potential Avoidance Actions**

30.     The Disclosure Statement does not list any potential Avoidance Actions. Avoidance actions are assets of the Debtor's bankruptcy estate.  To provide adequate information to all creditors, the Disclosure Statement should set forth all potential Avoidance Actions and the actual or projected realizable value from any recovery therefrom.  See In re U.S. Brass Corp., 194 B.R. 420 (Bankr. E.D. Tex. 1996).

**IV.     The Procedure For Pursuing Avoidance Actions Is Likely To Result In Their Premature Discharge**

31.     Under the Disclosure Statement and the Plan all Avoidance Actions are assigned to the Creditors' Committee for prosecution.  And if the Creditors' Committee does not file a notice of acceptance of the Avoidance Actions at least five business days before the date first set for the hearing to consider confirmation of the Plan, the Avoidance Actions are forever barred. (Disclosure Statement 32-33)

32.     This procedure is objectionable because the Creditors' Committee will probably not pursue any Avoidance Actions given that the committee members have relatively small claims and that, upon information and belief, they have not retained counsel.  (The Creditors' Committee is currently being advised by counsel to the Debtor.   (Disclosure Statement 16)) Consequently, the Avoidance Actions, assets of the bankruptcy estate, are likely to be discharged even before Plan confirmation.

33.     The Disclosure Statement and the Plan must be amended to dismiss the requirement that the Creditors' Committee submit a notice of acceptance of the Avoidance Actions.

## V.     The Disbursing Agent Should Be A Third Party Neutral

34.     The Disclosure Statement proposes to appoint a manager of the Debtor as the Disbursing Agent.  Since insiders of the Debtor have claims against the estate, equity requires that the Disbursing Agent be a third-party neutral.

## VI.     Insiders Of The Debtor Must Evidence Their Claims

35.     The Schedules list certain claims of insiders of the Debtor, which total over $600,000.  The Disclosure Statement should provide evidence of these claims.

## VII.     The Disclosure Statement Does Not Address Escrowing The Insurance Proceeds With The Court

36.     As mentioned herein above, the Insurance Proceeds, which are payable jointly to SCK and the Debtor, are being placed into the registry of the Court, pursuant to the agreement of SCK and the Debtor.  The escrowing of the Insurance Proceeds into the registry of the Court should be set forth in the Disclosure Statement.

## VIII.     The Insurance Proceeds Should Not Vest In The Disbursing Agent On The Effective Date

37.     The Disclosure Statement provides that "[o]n the Effective Date, the property of the bankruptcy estate shall vest in the Disbursing Agent free and clear of all Claims, Liens, encumbrances, charges and other interests." (Disclosure Statement 31)

38.     The above referenced provision of the Disclosure Statement should be rewritten to provide that "[o]n the Effective Date, the property of the bankruptcy estate, *other than the Insurance Proceeds,* shall vest in the Disbursing Agent."

## IX.     The Disclosure Statement Provides The Debtor A Discharge Upon Plan Confirmation

39.     Section 1141(d)(3) of the Bankruptcy Code provides that in a chapter 11 case the debtor may be denied discharge upon confirmation of the plan if (i) the plan provides for the liquidation of all or substantially all of the property of the estate, (ii) the debtor does not engage in business after consummation of the plan, and (iii) the debtor would be denied a in a case under chapter 7.  These elements are satisfied in this case.  And while the Disclosure Statement states that the Debtor is not obtaining a discharge upon confirmation of the Plan (Disclosure Statement 31), the Disclosure Statement provides that the property of the Debtor shall vest in the Disbursing Agent free and clear of all Claims, Liens, encumbrances, charges and other interests other than the obligations under the Plan (Disclosure Statement 31); the Disclosure Statement provides that "[n]otwithstanding anything in the Plan to the contrary, as of the Effective Date, . . . neither the *Debtor* . . . and their respective accountants and attorneys. . . will have or incur any liability for any Claim" (Disclosure Statement 31); and the Disclosure Statement provides that "all persons or entities who have held, hold or may hold Claims against the Debtor or Debtor in Possession will be permanently enjoined, from and after the Effective Date, from (i) commencing . . . any action . . . on any such Claim."   These and other provisions in the

- 9 -

Disclosure Statement suggest that the Debtor is receiving some sort of discharge and must therefore be removed.

WHEREFORE, SCK respectfully requests that the Court (i) deny approval of the Disclosure Statement until the modifications set forth above are made to the Disclosure Statement and the Plan and (ii) grant such other and further relief this Court deems proper and just.

Dated: August 20, 2009

Respectfully submitted,

RADIOSHACK and SCK, INC.

/s/ Marcus M. Wilson
Marcus M. Wilson (MS Bar #7308)
BENNETT LOTTERHOS SULSER
& WILSON, P.A.
One Jackson Place
188 East Capitol Street
Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com

ATTORNEYS FOR RADIOSHACK AND SCK, INC.

## CERTIFICATE OF SERVICE

I, Marcus M. Wilson, do hereby certify that I electronically filed the above and foregoing Objection of RadioShack Corporation and SCK, Inc. to the Disclosure Statement for Debtor's Chapter 11 Plan (Dkt. #153) with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Stephen W. Rosenblatt
Steve.Rosenblatt@butlersnow.com

James A. McCullough
jmccullough@brunini.com

This the 20th day of August 2009.


/s/ Marcus M. Wilson
Marcus M. Wilson (MS Bar #7308)
BENNETT LOTTERHOS SULSER
& WILSON, P.A.
One Jackson Place
188 East Capitol Street
Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com

ATTORNEYS FOR RADIOSHACK AND SCK, INC.