IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WAREHOUSE 86, LLC | ) | CASE NO.   08-03423-EE |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |

### DEBTOR'S MOTION TO COMPROMISE AND SETTLE DISPUTED CLAIMS WITH EMPLOYERS MUTUAL CASUALTY INSURANCE COMPANY

Warehouse 86, LLC, the Debtor and debtor-in-possession herein ("Debtor" or "Warehouse 86"), by and through its attorneys, files this Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company ("EMC"), and would show unto the Court the following:

**Introduction**

1. On November 4, 2008 (the "Petition Date"), Debtor filed its Voluntary Petition in this bankruptcy case (the "Bankruptcy Case") under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to manage its assets as Debtor in possession. No trustee or examiner has been appointed in this Bankruptcy Case.

2. An Official Committee of Unsecured Creditors (the "Committee") was appointed in this Bankruptcy Case on November 19, 2008 [Dkt. # 062].



**Jurisdiction and Venue**

3. This Court has jurisdiction over this matter pursuant to 28 U. S. C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. This matter is governed by Rule 2002(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. Prior to February 5, 2008, Debtor operated an on-line auction business. The Debtor leased corporate office and warehouse in Southaven, Mississippi at 481 Airport Industrial Drive, Southaven, Mississippi (the "Location").

5. The Debtor occupied the Location under that certain Sublease with SCK, Inc., f/k/a S.C. Kiosks, Inc. ("SCK").

6. The Debtor was the named insured in that certain commercial property insurance policy numbered 3A2-22-78-08, issued by Employers Mutual Casualty Insurance Company with effective dates from April 15, 2007 to April 15, 2008 (the "Policy"). In accordance with its obligations under the Sublease, SCK also was a named "loss payee" in the Policy with respect to the Location. A copy of the Policy is attached hereto as Exhibit "A".

7. The Policy had a $1,000,000 per occurrence loss limit for personal property loss, but it also have a separate per occurrence loss limit of $50,000 for business income loss, a $10,000 per occurrence loss limit for debris removal, a $25,000 per occurrence loss limit for extra expenses, and a $10,000 per occurrence loss limit for property of third-persons.

8. The Policy was an "all risk" property insurance policy that covered both the Debtor's property as well as the interest of SCK with respect to the leasehold improvements and the Subleased Equipment.

9. On or about February 5, 2008, the Debtor's corporate offices and its primary warehouse and distribution center at the Location were damaged by a tornado. In addition to damage to the building at the Location, the Debtor suffered losses for its owned inventory at the Location and for cleanup and repair expenses related to its inventory, as well as for its personal property, such as its conveyor and racking system, other business personal property, business supplies, and for debris removal. In addition, the Debtor incurred covered losses for business income loss, as well as for extra expenses and claims preparations. In addition to the property owned by the Debtor that was damaged by the tornado, SCK had leased certain conveyors and racking to the Debtor, and a portion of that equipment also was damaged by the tornado. All of these losses suffered by the Debtor were covered under the Policy (collectively, the "Tornado Loss").

10. On or about February 11, 2008, during cleanup operations from the tornado, the Location was further damaged by a fire. In addition to damage to the building at the Location, the Debtor suffered losses for its owned inventory at the Location, as well as for its personal property such as its betterments and improvements and the conveyor and racking system, and for debris removal. In addition, the Debtor incurred business income loss. In addition to the property owned by the Debtor that was damaged by the fire, SCK had leased certain conveyors and racking to the Debtor, and a portion of that equipment also was damaged by the fire. All of these losses suffered by the Debtor were covered under the Policy (collectively, the "Fire Loss").

11. Following extensive negotiations with EMC, the Debtor has secured a settlement of claims for the Tornado Loss and for the Fire Loss for close to the limits of liability of the Policy. EMC has tendered the total amount of $2,099,882.35 (the "Insurance Proceeds") in four

checks made payable to Debtor and SCK, as evidenced by collective Exhibit "B" hereto, as follows:

| Date | Payees | Check Number | Amount |
|---|---|---|---|
| 07/23/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03305822 | $1,060,000.00 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306059 | $979,882.35 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306060 | $50,000.00 |
| 07/22/2009 | Warehouse 86, LLC | H03305808 | $10,000.00 |
| **Total** | | | **$2,099,882.35** |

    12.    Of the Insurance Proceeds represented by Check Number H03305822 for the fire loss, the subcategories and sub-policy limits under which the payments were made were as follows:

    (A)    $1,000,000.00 – payments for personal property losses (policy limits);

    (B)    $50,000 – payments of the sublimits for Business Income loss and Extra Expenses (sub-policy limits); and

    (C)    $10,000.00 – payment for debris removal (sub-policy limits).

    13.    Of the Insurance Proceeds represented by Check Numbers H03306059 and H03306060 for the tornado loss, the subcategories and sub-policy limits under which the payments were made were as follows:

    (A)    $979,882.35 – payments for all personal property losses (check number H03306059); and

    (B)    $50,000 – payment of the sublimit for Business Income loss (check number H033060600

    14.    The Insurance Proceeds described in paragraphs 12 and 13 above have been endorsed by both the Debtor and SCK and were deposited into the registry of the Court on August 26, 2009 pending determination by the Court of the extent to which each party is entitled to those funds. *See Order Approving Joint Motion of Warehouse 86 LLC and SCK, Inc f/k/a*

*Kiosks, Inc for authority to deposit Insurance proceeds into the registry of the court in contemplation of the filing of a Complaint for Declaratory Judgment,* entered on August 26, 2009 [Dkt. # 184] and the receipts filed by the deputy clerk of the Bankruptcy Court on August 26, 2009 reflecting such deposits.

15.    On November 2, 2009, SCK and RadioShack Corporation filed a Complaint for Declaratory Judgment against Warehouse 86, LLC in this Bankruptcy Case, Adversary Proceeding No. 09-00139 [Dkt. # 197] to determine the rights to the Insurance Proceeds listed above, and that matter is now pending in the Bankruptcy Court.  On December 1, 2009, the Debtor filed its Answer and Defenses to the Complaint [Dkt. # 205].

16.    In addition to the Insurance Proceeds represented by Check Numbers H03305822, H03306059 and H03306060, the Debtor also received Insurance Proceeds represented by Check Number H03305808, in the amount of $10,000.00, which was the sub-policy limits for property of others, which was a payment for the personal property of Eric Eilertsen, a former member of the Debtor, which was located in the office of the Debtor at the Location.  The Insurance Proceeds described in this paragraph has not yet been endorsed by the Debtor and deposited into a separate account pending disbursement by order of the Court, but it is anticipated that it will be so endorsed shortly.

17.    A basic policy in bankruptcy cases is that compromise is favored.  10 Lawrence P. King, *Collier on Bankruptcy,* ¶ 9019.01 at 9019-2 (15th ed. Revised 2005).  Courts have built on this policy by adopting the standards set forth in the United States Supreme Court decision, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  In *TMT*, the Supreme Court held that a compromise would be approved by the bankruptcy court only after it

apprise[s itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Id.* at 424.

18. The Fifth Circuit standard has been stated in *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc.*:

> (1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law,
> (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
> (3) [a]ll other factors bearing on the wisdom of the compromise.

119 F.3d 349 (5th Cir. 1997). *Id.* at 356. These factors have been summarized as requiring the compromise to be "fair and equitable" and "in the best interests of the estate." *TMT*, 390 U.S. at 424; *Cajun Elec.*, 119 F.3d at 355. The Court is not required to conduct a mini-trial or evidentiary hearing to determine the outcome of the dispute being compromised. *Cajun Elec.*, 119 F.3d at 355. If a full evidentiary hearing on the merits of the dispute were required, "[t]here would be no point in compromise; the parties might as well go ahead and try the case." 10 *Collier on Bankruptcy* ¶ 9019.03 at 9019-5. The Court, instead, should be apprised of the relevant facts and law sufficient to make an "informed and intelligent decision . . . .," *Cajun Elec.* 119 F.3d at 355, and determine "whether the settlement 'falls below the lowest point in the range of reasonableness.'" 10 *Collier on Bankruptcy* ¶ 9019.03 at 9019-5.

19. Because the Debtor has secured a consensual settlement of claims for the Tornado Loss and for the Fire Loss in an amount that is very close to the limits of liability of the Policy, it is in the best interest of the Debtor, its creditors and all parties in interest for this settlement to be approved.

WHEREFORE, the Debtor, respectfully requests that this Court will enter an Order approving the terms and conditions of this Motion in all respects, and will grant the Debtor such other relief as it deems just and proper.

Dated: December 2, 2009.

> Respectfully submitted,
>
> WAREHOUSE 86, LLC
>
> By: *s/Stephen W. Rosenblatt*
> STEPHEN W. ROSENBLATT (MB # 5676)
> PAUL M. ELLIS (MB # 102259
> Its Attorneys

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010
Ridgeland, MS 39158-6010
Telephone: (601) 948-5711
Fax: (601) 985-4500
steve.rosenblatt@butlersnow.com

## CERTIFICATE OF SERVICE

I, Stephen W. Rosenblatt, certify that I have this date served, either via electronic filing transmission or United States mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Ronald McAlpin, Esq.
Office of the United States Trustee
Suite 706, A. H. McCoy Federal Building
100 West Capitol Street
Jackson, MS 39269

Marcus M. Wilson, Esq.
Bennett Lotterhos Sulser & Wilson, P.A.
One Jackson Place, Suite 1400
188 East Capitol Street
Jackson, MS 39205-0098

Ms. Teresa M Shipe
Katt Worldwide Logistics, Inc.
4105 South Mendenhall Road
Memphis, TN 38115
tshipe@kattworld.com

Edwin W. Christensen, Esq.
Overstock.com, Inc.
6350 S. 3000 E.
Salt Lake City, Utah 54212
echristensen@overstock.com

Mr. Bobby Thomas
Thomas Sales & Services, Inc.
2300 Sitler St., Bldg. 685
Memphis, TN 38114
bthomas@abcthomas.com

Dated:  December 2, 2009.

                              *s/ Stephen W. Rosenblatt*
                              Stephen W. Rosenblatt

Jackson 4433831v1