**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

```
------------------------------------------------------------------------ x
                                                                         :   Case No. 08-03423-EE
In re:                                                                   :
                                                                         :   Chapter 11
WAREHOUSE 86, LLC,                                                       :
                                                                         :
             Debtor                                                      :
                                                                         :
------------------------------------------------------------------------ x
```

**RESPONSE OF DEBTOR AND DEBTOR-IN-POSSESSION**
**TO EMERGENCY MOTION OF SCK, INC. AND**
**<u>RADIOSHACK CORPORATION TO APPOINT A TRUSTEE</u>**
**[Dkt. # 266]**

Warehouse 86, LLC, the Debtor and Debtor-in-Possession (the "<u>Debtor</u>"), by its attorneys, files this *Response of Debtor and Debtor-in-Possession to Emergency Motion of SCK, Inc. and RadioShack Corporation to Appoint a Trustee* [Dkt. # 266] (the "<u>Motion</u>"). SCK, Inc., f/k/a SC Kiosks, Inc., and RadioShack Corporation (collectively, "<u>SCK</u>") seek what they even acknowledge to be an "exceptional remedy" of the appointment of a Chapter 11 Trustee for the Debtor in this case solely on the grounds that "valuable avoidance actions may be lost," even though SCK has failed to allege any misconduct or a breach of fiduciary duty whatsoever on the part of the Debtor in this case. As set forth herein, the Motion should be denied.

**<u>Background Facts</u>**

1. By way of background information, Warehouse 86 filed its chapter 11 case on November 4, 2008 (the "<u>Petition Date</u>") [Dkt. # 001]. The Debtor filed its list of 20 largest creditors and its Schedules of Assets and Liabilities ("<u>Schedules</u>") on November 4, 2008 [Dkt. # 002] and its Statement of Financial Affairs ("<u>SOFA</u>") on November 4, 2008 [Dkt. # 003].

2.	On November 19, 2008, the United States Trustee filed its Notice of Appointment of Unsecured Creditors' Committee (the "Committee") [Dkt. # 062]. The members of the committee are Katt Worldwide Logistics, Inc., Overstock.com, Inc., and Thomas Sales & Services, Inc.[1] The Committee continues to function in this bankruptcy case.

3.	On December 10, 2008, the Court entered an Order [Dkt. # 070] approving the sale of substantially all of Warehouse 86's assets to Warehouse 86 Ventures, LLC. One of the Excluded Assets was "All insurance policies, insurance claims, and proceeds of insurance policies owned by Seller [the Debtor]. As reflected by the Report of Sale [Dkt. # 076], the assets were sold for the total consideration of $1,240,350.98.

4.	After the sale of these assets, the Debtor focused its attention to the formulation and filing of a Plan and a Disclosure Statement and the prosecution of its claims under certain insurance policies with Employers' Mutual Insurance Company ("EMC"). On June 30, 2009, the Debtor filed its Plan [Dkt. # 152] and its Disclosure Statement [Dkt. # 153]. With respect to any avoidance actions, Section 5.3 of the Plan provided as follows:

> Section 5.3. Preservation of Avoidance Actions. As of the Effective Date, any Avoidance Actions pursuant to Sections 544, 547, 548 or 549 of the Bankruptcy Code will be preserved for prosecution by, and assigned to, the Creditors' Committee, but only if a majority of the members of the Creditors' Committee affirmatively file with the Court a Notice of Acceptance of Avoidance Causes of Action at least five (5) business days prior to the date first set for the Confirmation Hearing. If accepted by the Creditors' Committee, the Debtor will transfer to the Creditors' Committee all of the rights and powers held by it as Debtor-in-Possession to institute, prosecute, and/or enforce after confirmation any Avoidance Actions which exist in the Debtor's favor as Debtor-in-Possession (which are the same claims or causes of action that exist in the favor of a trustee in bankruptcy) regardless of whether the Debtor has instituted or begun to enforce such claims or causes of action.

---

[1] SCK either was not requested by the United States Trustee to serve on the Committee when it was formed, or it chose not to do so.

5. On August 20, 2009, SCK filed an 11-page Objection to the Disclosure Statement [Dkt. # 177]. The Debtor filed its Response to the SCK Objection to the Disclosure Statement on August 25, 2009 [Dkt. # 179].

6. At the hearing on the Disclosure Statement, the Court entered its Order [Dkt. # 209], holding in abeyance the consideration of, among other things, the approval of the Disclosure Statement "pending the resolution of the Declaratory Judgment Action or until further Order of the Court or upon request of any party." SCK has not requested that this matter be reset for hearing.

7. On August 24, 2010, the Honorable David W. Houston III conducted a mediation of in the Declaratory Judgment Action between SCK and Warehouse 86. At that mediation, the parties settled the adversary proceeding, subject to the approval of this Court after notice and a hearing to all creditors and parties in interest. The parties have not yet filed the settlement motion under Bankruptcy Rule 9019.

## Applicable Law

8. SCK correctly points out that Section 1104(a) of the Bankruptcy Code governs the appointment of a chapter 11 trustee. That section provides in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause
> > . . .
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate ... or

> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

9. SCK acknowledges that the appointment of a trustee in a chapter 11 case is an "extraordinary remedy." *See, e.g.*, *In re Bayou Group, LLC,* 564 F.3d 541, 546-47 (2d Cir. 2009); *In re Sharon Steel Corp.,* 871 F.2d 1217, 1225 (3d Cir.1989); *In re The 1031 Tax Group, LLC,* 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007); 7 *Collier on Bankruptcy*, ¶ 1104.02[2][a].

10. SCK has the burden of proof on its motion to have a chapter 11 trustee appointed "for cause" under 11 U.S.C. § 1104(a)(1), as well to have a trustee appointed as being "in the interests of creditors, any equity security holders and other interests of the estate" under 11 U.S.C. § 1104(a)(2). At least two Circuit Courts of Appeal have concluded the movant must meet prove the need for a trustee by "clear and convincing evidence." *See In re Bayou Group, LLC,* 564 F.3d 541, 546-47 (2d Cir. 2009); *In re G-I Holdings, Inc.,* 385 F.3d 313 (3rd Cir.2004) (movant has the "heavy burden of persuasion, i.e., by clear and convincing evidence"). Most other courts have followed suit. *See In re Sundale, Ltd.,* 400 B.R. 890, 899-900 and 900 n. 8 (Bankr.S.D.Fla.2009) (and citations therein). At least one court has found the appropriate standard to be only a "preponderance of the evidence." *See Tradex Corp. v. Morse,* 339 B.R. 823, 829 (D.Mass.2006). Under either standard, however, SCK has failed to meet its burden on either of the grounds on which it seeks the appointment of a trustee in this case.

11. The law also is clear that there is a strong presumption in favor of allowing a chapter 11 debtor-in-possession to remain in possession. *See, e.g.*, *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 577 (3rd Cir.2003); 7 *Collier on Bankruptcy* ¶ 1104.02[3][b] (15th ed.2006). SCK contends that this presumption applies only to

an operating business and not to a liquidating chapter 11 case (citing no authority for that proposition).

12. Warehouse 86 respectfully disagrees. In fact, one of the cases cited by SCK, *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d. Cir. 1998), indicates otherwise. In *Marvel*, the Court noted that the debtor usually remains in possession throughout reorganization because "current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." Id. at 471. The Court went on to state: "The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization." (*citing Sharon Steel*, 871 F2d. at 1226.) In *Marvel*, however, outside, third-party interests took control over the debtor's management six months after the chapter 11 filing, so the then-current "Johnny-come-lately" management of the debtor-in-possession did not have an extensive familiarity with the company's operations as the Company's prior management. *Id.,* at 471.

13. In the present case, the Disclosure Statement must be approved and the chapter 11 plan must be confirmed. Most importantly, however, the business of claims the objections process must be addressed. If a chapter 11 trustee is appointed, the bankruptcy estate will not only incur additional expenses (both the statutory trustee's fee and additional attorneys' fees in getting up-to-speed on the various issues), but it also will lose the ability to have full access to the management that is most familiar with the Debtor's business and operations.

14. SCK does not allege even a single act of "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" of Warehouse 86 in its Motion. Rather, SCK urges this Court to consider factors other than those specifically

enumerated in section 1104(a)(1) to find "cause." SCK cites *In re Sundale, Ltd.,* 400 B.R. 890 (Bankr. S.D. Fla. 2009) for the principle that the Court may examine "numerous factors in determining whether cause is present." Although SCK lists the six factors considered by the Court in *Sundale*, SCK failed to note that the Sundale court also held that "the level of the acts constituting cause, the conduct, failure to act, or gross mismanagement, or the like, must "[rise] to a level sufficient to warrant the appointment of a trustee." *Id.*, at 900. SCK has not alleged, and cannot establish, any such misconduct on the part of the Debtor-in-possession.

15.     In *Sundale*, two of the grounds asserted by the creditor for the appointment of a trustee were: (a) the existence of pre-petition voidable preferences or fraudulent transfers; and (b) the unwillingness or inability of management to pursue estate causes of action." SCK infers that this is the basis on which SCK seeks the appointment of a trustee. In *Sundale*, however, the Court found "since the movants have failed to demonstrate the pre-petition transfers were fraudulent, and since the Debtors' decision not to pursue the potential preference yet is not an inappropriate judgment call, I do not find cause to appoint a trustee on these grounds." *Id.,* at 906-07.[2]

16.     Apparently, the sole basis of the Motion for the appointment of a chapter 11 trustee for the Debtor is that the Committee has not elected to date with respect to Avoidance Actions. First, the Debtor points out that it has not been either unwilling or unable to pursue legitimate estate causes of action. Although the Debtor does not believe the Avoidance Actions are viable causes of action, it gave to the Committee under the terms of the Plan [Dkt. # 152]

---

[2] In *Sundale*, the Debtor contended that the creditor's "ill motives" was the reason the motion to appoint a trustee was filed, but the court held that the creditor's motive, at least with respect to a motion to appoint a trustee, was not relevant and was not an impediment to the Court's acting on the motion to appoint a trustee. Although there are instances where a party's motives or bad faith may be relevant or impact that party's ability to seek relief, the Court held, "if the movants have legitimate grounds to seek the relief in the Trustee Motion it is irrelevant that the movants have 'ill' motives that spur them to seek the relief to which they are otherwise legitimately entitled." Any such ill motives "were not an impediment to the relief sought, had the evidentiary burdens been met." *Id.*, at 911.

that was filed on June 30, 2009 (within eight months after the Petition Date), the right to elect whether to pursue these Avoidance Actions. Second, as will be shown herein, there is a reasonable basis for the Committee not having made an election, as was its right under the Plan. In fact, what SCK contends are "valuable avoidance actions" are not so valuable after all.

## The Alleged Avoidance Actions

17. In paragraph 12 of its Motion, SCK lists the following as the "valuable avoidance actions" that the Committee has not elected to pursue:

> 12. Potential avoidance actions include claims for preference transfers to creditors and fraudulent conveyances to insiders. According to Warehouse 86's statement of financial affairs (Dkt. # 3), Warehouse 86 paid about $685,698.09 to creditors within 90 days immediately preceding the commencement of this case, including $50,000.00 to American Express; $59,365.91 to AON Innovative Solutions; $21,189.00 to Overstock.com; $116,060.16 to UPS; and $64,201.49 to Willow Lake Property, LLC. Warehouse 86 paid about $562,955.00 to insiders within one year immediately preceding the commencement of this case.

18. The Debtor will address each of these alleged avoidable preferential transfers:

(a) <u>American Express</u>: After the Debtor made a $50,000 payment on or about August 1, 2008, the Debtor incurred the following charges with American Express so the Debtor could continue to make shipments to its customers via UPS and charge those shipments on its American Express card:

i. August 16, 2008 - $110,279.08
ii. August 16, 2008 - $4,038.82
iii. August 16, 2008 - $1,743.50
iv. August 16, 2008 - $18.43
v. September 16, 2008 - $19,585.29
vi. September 16, 2008 - $160.00
vii. September 16, 2008 - $7,188.89
viii. September 16, 2008 - $29.00
ix. September 16, 2008 - $342.36.

(b) <u>AON Innovative Solutions (The Warranty Group)</u>: The Debtor made two payments to AON Innovative Solutions (The Warranty Group) - $27,113.10 on July 26,

2008 and $32,252.81 on August 3, 2008, for a total of $59,365.91. After the July payment was made, the Warranty Group sold additional goods to the Debtor as follows: August goods - $39,110.52 and September goods - $20,945.97; and October goods - $22,834.99.

(c) Overstock.com: The Debtor made a $21,189.00 payment on or about August 19, 2008 as a cash-on-delivery (COD) or a payment-in-advance (PIA) for goods that the Debtor acquired from Overstock.

(d) UPS: The Debtor made 20 payments to UPS from July 26, 2008 through August 30, 2008 for shipments of goods purchased by the Debtor's customers. The total amount of these payments was $116,060.16. As reflected by the Amended Proof of Claim of UPS [Claim # 27], UPS provided services of $115,057.13 from August 23, 2008 through November 8, 2008.

(e) Willow Lake Property, LLC: This payment, made on August 4, 2008, was for the security deposit for the Lease by Willow Lake Property to the Debtor of a 105,000 square foot office and warehouse located at Corporate Park, 3865 Perkins Road, Memphis, TN 38118, for the Debtor's operations following the tornado and fire at the Debtor's Southaven, MS office and warehouse.

19. SCK also contended that certain transfers to insiders were avoidable transfers. The Debtor will address each of these alleged avoidable transfers to insiders:

(a) W86 Property Holdings, LLC. The Debtor had a lease with W86 Property Holdings, LLC for a 25,000 square foot building in the Indianola Industrial Park, Indianola, MS, under a 5-year lease dated April 15, 2005. The 10 monthly payments of $5,208.00 each paid to W86 Property Holdings, or a total of $53,340.00,

were monthly payments required under the Lease. The Debtor negotiated an early termination of the Lease with W86 Property Holdings, so the Lease was terminated effective July 23, 2008.

(b) <u>Electronic Technologies, Inc. (ETI)</u>. The Debtor had a lease with ETI for a 15,000 square foot building in the Indianola Industrial Park, Indianola, MS, under a 3-year lease dated July 1, 2004. This lease subsequently was extended through March 31, 2010. The payments to ETI totaling $22,500 were the monthly payments required under the Lease. The Debtor negotiated an early termination of the Lease with ETI, so the Lease was terminated effective July 23, 2008.

(c) <u>Eric Eilertsen</u>. The Debtor paid Eric Eilertsen, its CEO, $85,769.62 in the 12 months preceding the Petition Date. This was $84,500 for monthly guaranteed payments (i.e., salary for a LLC member) and $1,259.62 for expense reimbursements. Eric Eilertsen's duties included developing new business, products sales and service, and investor development.

(d) <u>Paul St. James</u>. The Debtor paid Paul St. James, its CTO (Chief Technical Officer), $145,448.13 in the 12 months preceding the Petition Date. This was $128,000 for guaranteed payments (i.e., monthly salary for a LLC member) and $17,448.13 for expense reimbursements. The primary responsibilities for Paul St. James were development of new processes, refining and customizing existing processes for existing and potential vendors, demonstrations and sales, and investor development.

(e) <u>Joy St. James</u>. The Debtor paid Joy St. James, its Chief Administrative Officer, $130,095.69 in the 12 months preceding the Petition Date. This was $128,000 for monthly guaranteed payments (i.e., salary for a LLC member) and $2,095.69 for

expense reimbursements. The primary area of focus for Joy St. James was customer relations with the retail customer, including product flow and returns, dealing with intermediaries such as e-Bay, and investor development.

(f) <u>Ernest K. Strahan III</u>. The Debtor paid Ernie Strahan, its CFO, $125,168.35 in the 12 months preceding the Petition Date. This was $125,000 for monthly guaranteed payments (i.e., salary for a LLC member) and $168.35 for expense reimbursements. As CFO, Ernie Strahan focused primarily on financial issues of the Debtor, including operations and investor development.

20. If there are any other transfers that the Court would like to be addressed, the Debtor will do so.

21. In all aspects of this chapter 11 case, the Debtor-in-possession has been open and transparent in its dealing with its creditors and with the Court. All transfers made by the Debtor to its trade creditors within the applicable preference period were listed in the SOFA that was filed on the Petition Date, and the SOFA has been available for examination and inspection for nearly two years. Similarly, all transfers made to insiders within a year of the Petition Date also were fully disclosed in the SOFA to the Court and all creditors and parties in interest.

22. The Debtor's Plan, filed on June 30, 2009, more than 15 months ago, removed the Debtor from any decision-making authority and granted the decision of whether to pursue Avoidance Actions to the Committee. SCK cannot now, at this late date, fault the Debtor and seek the "extraordinary remedy" of the appointment of a chapter 11 trustee simply because the Committee has not elected to pursue Avoidance Actions, especially when there does not appear to be a substantial basis for such Avoidance Actions.

WHEREFORE, the Debtor respectfully requests that this Court deny the Motion of SCK and grant the Debtor such other and further relief as this Court deems just and proper.

Dated:  October 19, 2010.

                                Respectfully submitted,

                                WAREHOUSE 86, LLC

                                By: *s/Stephen W. Rosenblatt*
                                    STEPHEN W. ROSENBLATT (MB # 5676)
                                    CHRISTOPHER R. MADDUX (MB # 100501)
                                    ITS ATTORNEYS

<u>CERTIFICATE OF SERVICE</u>

I, Stephen W. Rosenblatt, certify that I have this date served, via electronic filing transmission or electronic mail, a true and correct copy of the above and foregoing pleading to the following persons:

    Ronald McAlpin, Esq.
    Office of the United States Trustee
    Suite 706, A. H. McCoy Federal Building
    100 West Capitol Street
    Jackson, MS 39269
    Ronald.McAlpin@USDOJ.gov

    Marcus M. Wilson, Esq.
    Lee Watt, Esq.
    Bennett Lotterhos Sulser & Wilson, P.A.
    190 East Capitol Street, Suite 650
    Jackson, MS  39201
    mwilson@blswlaw.com
    lwatt@blswlaw.com

    Ms. Teresa M. Shipe
    Katt Worldwide Logistics, Inc.
    4105 So. Mendenhall Road
    Memphis, TN 38115
    tshipe@kattworld.com

Edwin W. Christensen, Esq.
Overstock.com, Inc.
6350 S. 3000 E.
Salt Lake City, Utah 54212
echristensen@overstock.com

Mr. Bobby Thomas
Thomas Sales & Services, Inc.
2300 Sitler St., Bldg. 685
Memphis, TN 38114
bthomas@abcthomas.com

THIS, the 19th day of October, 2010.

                              *s/ Stephen W. Rosenblatt*
                              STEPHEN W. ROSENBLATT

Jackson 5674285v1